UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LEON ST. CLAIR NATION,

08-CV-_____

Plaintiff,

**ORDER TO SHOW CAUSE
FOR PRELIMINARY
INJUNCTION**

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER,

Defendants.
-----------------------------------------------------------------X

Upon the affidavit of Leon St. Clair Nation, sworn to the 22nd of January, 2008,

the Declaration of Gregory Chillino, declared to on January 23, 2008, and upon a copy of

the Complaint hereto annexed, it is

ORDERED, that the above-named defendants show cause before a motion term of

this Court, at Room ___, United States Courthouse, 500 Pearl Street, in the City, County

and State of New York, January ___, 2008, at __ o'clock in the ____ noon thereof, or as

soon thereafter as counsel may be heard, why an order should not be issued pursuant to

Rule 65 of the Federal Rules of Civil Procedure enjoining the Defendants during the

pendency of this action from:

(1) Prohibiting Plaintiff, pursuant to Section 26-124 (c) of the New York City

Administrative Code, from filing any application or document with the New

York City Department of Buildings;

(2) publicizing, in any manner or form, any prohibition or proposed prohibition of

Plaintiff under Section 26-124 (c) of the New York City Administrative Code;

and it is further;

(3) taking any action that treats Plaintiff, or any application or document submitted by Plaintiff, in a separate or disparate manner than that of any other licensed architect or engineer; and,

(4) for such other and further relief as to this Court may seem just and proper.

ORDERED, that personal service of a copy of this order and the annexed affidavit and declaration upon the defendants or their counsel on or before ___ o'clock in the ____ noon, January ___, 2008, shall be deemed good and sufficient service thereof.

Dated: New York, New York
        January ____, 2008

Issued:

_____
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEON ST. CLAIR NATION                                    08-CV-_____

                Plaintiff,                    **EMERGENCY
                                                          DECLARATION OF
                                                          GREGORY CHILLINO**

        -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER,
                     Defendants.
-------------------------------------------------------------------X

     I, Gregory Chillino, pursuant to 28 U.S.C. Section 1746, declare as follows:

     1.     I am an attorney with the law firm of Stuart A. Klein. I admitted to

practice in the State of New York and the United States District Court, Southern and

Eastern Districts.

     2.     I submit this declaration in support of Plaintiff's Order to Show Cause to

enjoin Defendants from prohibiting the filing of any application or document by Plaintiff

with the New York City Department of Buildings, pursuant to Section 26-124(c) of the

New York City Administrative Code.

     3.     As discussed more fully in the accompanying Memorandum of Law in

Support of the Preliminary Injunction, Defendants' application of this provision of law to

the Plaintiff not only prevents the Plaintiff from conducting any future business, but

prohibits the Plaintiff from filing any document relating to the approximately 200

pending applications before the Department of Buildings.

     4.     As stated in the accompanying affidavit of Plaintiff, this prohibition

immediately and irreparably harms not only his ability to earn a livelihood, but also

jeopardized the livelihoods of the approximately ten employees employed by Plaintiff's firm.

5.      As the financial hardship imposed on Plaintiff is so severe, and grows more dire each day, it is respectfully requested that this matter be handled on an emergency basis.

6.      On January 23, 2008, at approximately 3:10 p.m., I called Ms. Louise Moed, an advocate for the New York City Law Department. Mr. Klein was previously instructed by Department of Buildings General Counsel Mona Sehgal to contact the New York City Law Department directly should his firm be seeking any injunctive relief regarding the Plaintiff. Mr. Klein previously spoke directly to Ms. Moed who informed him to contact her regarding any motion seeking injunctive relief for the Plaintiff.

7.      Ms. Moed was not in, however, her voice mail message stated that she would be checking her messages. I left Ms. Moed a message informing her that we intended to seek a hearing for a preliminary injunction against the Defendants on the morning of January 24, 2008. As of the writing of this declaration, I had not received a return telephone call.

8.      No prior application has been made for the relief requested herein.


I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 23, 2008


_____
Gregory Chillino

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

LEON ST. CLAIR NATION                                           08-CV-_____

                 Plaintiff,                    **AFFIDAVIT OF LEON
                                                               ST. CLAIR NATION**

             -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER
                Defendants.
-----------------------------------------------------------------------X

LEON ST. CLAIR NATION, being duly sworn, deposes and says:

1.     I am a Professional Engineer, License No. 065052, duly licensed by the New

York State Department of Education since 1988.

2.     I am a principal of the engineering firm of JNS Engineers, PC. The firm employs

approximately ten persons.

3.     I have been practicing engineering in the City of New York for over

twenty years.

4.     Over the past few years, I have filed approximately 300 applications per year with

the New York City Department of Buildings ("DOB"). Almost all of my business

is conducted in New York City and, thus, requires filings with DOB.

5.     I have reviewed both DOB Commissioner Lancaster's final determination as well

as the recommendation of Administrative Law Judge Kara Miller following a

hearing on DOB's charges at the New York City Office of Administrative Trials

and Hearings ("OATH."). I believe that the determination to revoke my

privileges to file under limited review procedures was erroneous, and I am

appealing that determination in the appropriate New York State legal proceedings.

6.      None of the charges against me involved any threat to public safety whatsoever. Two of the charges involved the alleged inauthenticity of photographs of curbs. I had submitted the photographs to DOB as part of applications for approval of minor work on the curbs. I was never charged with doing the work improperly or unsafely; in fact, DOB signed off on the work itself, and the allegedly "doctored" areas of the photos did not involve the work on the curbs. The third charge stated that I had used an improper form of application for work on a two-story building; I stated at the OATH hearing, and continue to state, that I used the proper form of application based on a professional review of the information available to me at the time of filing.

7.      Two of the three incidents charged occurred more than three years ago.

8.      Judge Miller dismissed all charges relating to intentional misconduct. Her recommendation and report stated only that I had been negligent, a finding that I dispute and that I am challenging in my appeal in New York state court.

9.      By letter dated January 15, 2008, I was informed by DOB Commissioner Lancaster that, in her decision on Judge Miller's report, she was revoking my ability to file any application or other document whatsoever with DOB, effective immediately, pursuant to Section 26-124(c) of the New York City Administrative Code.

10.     The papers in which DOB charged me with offenses did not mention Section 26-124(c).

11.     Section 26-124(c) was never mentioned by DOB attorneys or by Judge Miller at my OATH hearing.

12. As nearly all of my practice is conducted in New York City, the penalty imposed by Commissioner Lancaster will render JNS Engineers PC insolvent, and will lead to irreparable financial harm to myself and my employees.

13. Furthermore, as I will not be able to file documents pertaining to the approximately 200 applications I have pending before DOB, I will be liable for immeasurable civil damages for breach of contract and other actions relating to my inability to complete this work. These applications will have to be superseded by other design professionals who will have to be paid in advance. This situation automatically thrusts each of these applications into potential civil litigation between the client and myself, possibly delaying completion of these jobs for years.

14. I live in New York City and all of my professional contacts are in New York City. Further, my clientele is based largely on the Hassidic and Caribbean communities, two communities located mainly in New York City. Reestablishing my practice outside of New York City may be impossible.

15. Were an injunction not to be granted against this penalty, the livelihoods of me, my practice, and my employees would be immediately and irreparably harmed. On the other hand, were this injunction to be granted, DOB would suffer no harm at all. Under the terms of the determination that I am challenging in state court, I cannot file limited review applications; all work that I file with DOB must undergo full DOB review. As DOB would be reviewing all of my work, and as DOB has the power to reject any application or document that does not comply

with the New York City Building Code, Zoning Resolution, or other law, DOB

would suffer no harm were this injunction to be granted.

_____
Leon St. Clair Nation

Sworn to before me this

22nd day of January, 2008

NOTARY PUBLIC

**CHRISTOPHER M. SLOWIK**
Notary Public, State of New York
No. 02SL6173097
Qualified in Kings County
Commission Expires August 20, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LEON ST. CLAIR NATION

Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER,

Defendants.
------------------------------------------------------------------X

08-CV-_____

**DECLARATION OF
GREGORY CHILLINO**

I, Gregory T. Chillino, pursuant to 28 U.S.C. Section 1746, declare as follows:

1.      I am an attorney for the law firm of Plaintiff in the above-captioned matter.  Before entering private practice, I was formerly employed by the New York City Department of Buildings ("DOB") as an investigative attorney and Director of Prosecutions.  Stuart A. Klein, Esq., the principal of the firm, was formerly Inspector General and acting General Counsel of DOB.  The practice of our firm practice consists, to a great extent, in dealing with matters before DOB including disciplinary actions.

2.      On or about December 18, 2006, DOB served the Plaintiff with a Petition and Notice of Charges (annexed hereto as Exhibit A) alleging violation of the Rules of the City of New York ("RCNY") Section 21-02(b). Both the Petition and the accompanying Exhibit A stated that DOB was seeking revocation of the Plaintiff's self-certification and Directive 14 privileges upon a finding that the charges were sustained. No mention or notice was given regarding a prohibition from all filing with DOB. Pursuant to RCNY 21-02 (e), which was in effect at this time, the most extreme penalty Plaintiff would face would be a revocation of his limited review privileges which he could seek re-instatement for after one year.

3.     Along with Stuart A. Klein, Esq., I represented the Plaintiff at the hearings held before the Office of Administrative trials and Hearings ("OATH") on May 21, 22, and 29, 2007. On or about October 26, 2007, OATH Judge Kara Miller issued her report and recommendation to DOB Commissioner Lancaster (report and recommendation annexed hereto as Exhibit B).

4.     By letter dated December 4, 2007, Commissioner Lancaster issued her determination adopting Judge Miller's Recommendation and revoking Plaintiff limited review privileges (letter annexed hereto as Exhibit C).  The letter also contained an invitation for the Plaintiff to submit to Lancaster an explanation as to why Lancaster should not apply the New York City Administrative Code ("AC") Section 26-124 (c) to Plaintiff, prohibiting him form filing any application of document with DOB.

5.     Annexed as Exhibit D is a copy of Chapter 542 of the Laws of New York, 2007 which proposed the act to amend the AC and add provision 26-124(c). The prior subsection (c) became subsection (d) and the new subsection (c) instituted a new penalty by which Lancaster could prohibit an engineer from filing any application or document with DOB.

6.     As the law only became effective August 15, 2007, years after the misconduct alleged against Plaintiff and months after the hearing for violation of RCNY 21-02 took place, upon information and belief, Mr. Klein immediately contacted DOB Inspector General John Woods, who prosecuted the case before OATH.  Mr. Woods referred the matter to Stephen Kramer, DOB's Senior Counsel.   Mr. Klein informed Mr. Kramer that Lancaster's retroactive application of 26-124(c) to Plaintiff would be unconstitutional.  Mr. Klein further informed Kramer that such an application would be a

draconian penalty as: the Plaintiff had filed thousands of applications with DOB without any discipline either from DOB or the State Education Department who has jurisdiction over Plaintiff's engineer's license; that Plaintiff had not been found guilty of any intentional misconduct, but of mere negligence relating mainly to curb correction work posing no threat to public safety whatsoever; and that that DOB had never applied this severe penalty to any other architect or engineer, despite far more egregious misconduct.

6.      Upon information and belief, Mr. Kramer called Mr. Klein a few days thereafter and extended the time for Plaintiff to make the submission. Mr. Kramer personally informed Mr. Klein that the Commissioner did not want to review constitutional arguments regarding an ex post fact application of law. Our firm was directed to discuss why, under the circumstances of the case, and given Plaintiff's record, application of the law was unwarranted.

7.      By letter dated January 2, 2008, Mr. Klein made the submission to Commissioner Lancaster (letter annexed hereto as Exhibit E). While briefly mentioning that application of the law would be ex post facto, pursuant to Kramer's direction, Mr. Klein refrained from making a legal argument on the issue.

8.      By letter dated January 15, 2008, Commissioner Lancaster applied AC Section 26-124(c) to Plaintiff, effective immediately, prohibiting Plaintiff from filing any application or document with DOB for two years (letter annexed as Exhibit F). Commissioner Lancaster faulted Plaintiff's letter for failing to cite to statutes or case law supporting the constitutional argument. Thus, after following the direction of Lancaster's Senior Counsel, Lancaster used the failure to argue the constitutional issue as a basis for prohibiting Plaintiff from filing.

9.    Both from the letter of January 2, 2008, and through conversations of me and Mr. Klein with two of her highest ranking staff, Lancaster was aware that application of AC Section 26-124 (c) was unconstitutional. Despite said warnings, she knowingly and intentionally applied the provision retroactively.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 23, 2008


_____
Gregory T. Chillino

# EXHIBIT A

OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS
CITY OF NEW YORK:  COUNTY OF NEW YORK
-------------------------------------------------------X
Patricia J. Lancaster, F.A.I.A.                         :
**Commissioner, Department of Buildings**  :
**280 Broadway**                                       :
**New York, NY 10007**                            :          **AMENDED PETITION**
                                                                  :
            *- against -*                                :
                                                                  :
**Leon St. Clair Nation**                            :
**Professional Engineer #065052**           :
**JNS Engineers PC**                                :
**152 East 88th Street**                            :
**Brooklyn, New York 11236**                  :
-------------------------------------------------------X

**TO THE OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS:**

    Vittoria Fariello, Investigative Attorney, of counsel to Patricia Lancaster, the

Commissioner of the Department of Buildings ("Buildings"), states that:

1.  I am the Investigative Attorney assigned to the instant case.

2.  This Amended Petition and the Charges and Specifications attached thereto as
    Exhibit A are submitted pursuant to OATH Rules of Practice, Chapter I, Sub-
    chapter § 1-23 and Sub-chapter § 1-25.

3.  I respectfully request that this Court recommend the revocation of Respondent's
    self-certification privileges and Directive 14 privileges upon a finding that the
    attached Charge and Specifications have been substantiated.


Dated: March 15, 2007


                                       _____
                                       VITTORIA FARIELLO
                                       Investigative Attorney
                                       New York City Department of Buildings
                                     Special Investigative Unit
                                     83 Maiden Lane, 4th Floor
                                     New York, N.Y.  10038
                                     (212) 825-7315

CC:    Stuart A. Klein, Esq., Attorney for Respondent

## EXHIBIT A

The Rules of the City of New York §21-02(b) ("Grounds for Exclusion."), grants the Commissioner of the Department of Buildings the power to exclude a registered architect or licensed professional engineer from the Department of Buildings' (the "Department") Professional Certification of Applications and Plans" process (Operations Policy and Procedure Notice 2/95) (a/k/a "self-certification") and participation in procedures for limited supervisory review of plans and applications pursuant to Directive 14 of 1975, upon a finding that the registered architect or licensed professional engineer committed misconduct identified within that section. Respondent professional engineer is hereby charged with the following:

**CHARGE #1:** RCNY §21-02(b)(3): The architect or engineer has knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by law or the Department or willfully impeded or obstructed such filing, or induced another person to do so.

**Specification #1:** On or about December 16, 2004, Respondent or his agent submitted doctored photographs to the Department of Buildings ("Buildings") in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York.

**Specification #2:** On or about February 15, 2005, Respondent or his agent submitted doctored photographs to Buildings in connection with a Builder's Pavement Plan for 91-99 South 3rd Street, Brooklyn, New York.

**Specification #3:** On or about June 21, 2006, Respondent or his agent submitted a "Plan/Work Report For PC Filing" to Buildings that falsely represented an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location.

**Specification #4:** On or about July 20, 2006, Respondent or his agent submitted "Site Plan, Floor Plans and Notes" to Buildings that falsely represented an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location.

**Specification #5:** On or about December 21, 2006, Respondent or his agent submitted a "Post Approval Amendment" to Buildings that falsely represented fire damage to an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location.

# EXHIBIT B



## THE CITY OF NEW YORK
## OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS
40 RECTOR STREET   •   NEW YORK, NEW YORK 10006 -1705
212-442-4900  •  FAX  212-442-8910  •  TDD  212-442-4939
NYC.GOV/OATH  •  KMILLER@OATH.NYC.GOV

ROBERTO VELEZ
CHIEF ADMINISTRATIVE LAW JUDGE

KARA  J.  MILLER
ADMINISTRATIVE LAW JUDGE
212-442-4934

October 26, 2007

Patricia J. Lancaster, FAIA
Commissioner
Department of Buildings
280 Broadway
New York, New York 10007

> Re:  *Department of Buildings v. Fekete and Nation,*
> OATH Index No. 1118-19/07

Dear Commissioner Lancaster:

The above referenced disciplinary proceeding was referred to me to hear and report. The record of this proceeding, including my report and recommendation, is enclosed for your review and final decision.

Respondents are entitled to comment on the report and recommendation prior to your final action. By copy of this letter, I am instructing respondents' counsel, should he wish to comment on my report prior to your final determination, to contact your office immediately in order to ascertain when you will require comments to be submitted.

Upon taking final action in this matter, please have your office send a copy of your decision to the Office of Administrative Trials and Hearings so that we may complete our files.

Very truly yours,

Kara J. Miller
Administrative Law Judge

XJM:sc

Enc.

cc:   Vittoria Fariello, Esq.
Stuart A. Klein, Esq.

RECEIVED
NOV 0 5 2007
BY: ------------------

# *Dep't of Buildings v. Fekete*

OATH Index No. 1118-19/07 (Oct. 26, 2007)

Consolidated proceeding brought against an expediter and an engineer. Petitioner seeks to revoke respondent expediter's registration for submitting "doctored" photographs in conjunction with two builder's pavement plans. In addition, petitioner seeks to rescind respondent engineer's certification privileges for certifying the accuracy of the two sets of altered photographs and an alteration application that falsely represented an existing two-story structure rather than the one-story structure that was actually at the location. ALJ finds that respondent engineer's self-certification privileges should be rescinded. ALJ further finds that the Department failed to meet its burden with respect to respondent expediter and recommends that the charges against him be dismissed.

## NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS

*In the Matter of*
### DEPARTMENT OF BUILDINGS
*Petitioner*
*- against -*
### HERSHEY FEKETE and LEON ST. CLAIR NATION
*Respondents*

## REPORT AND RECOMMENDATION

**KARA J. MILLER**, *Administrative Law Judge*

This proceeding was referred by petitioner, the Department of Buildings, pursuant to title 1, sections 31-01 and 21-02 of the Rules of the City of New York, and section 27-140.1 of the Administrative Code. The Department is seeking to revoke respondent Hershey Fekete's expediter registration and exclude respondent Leon St. Clair Nation from participating in the self-certification process, which permits limited supervisory review of applications and plans pursuant to Directive 14-75.

Respondent Fekete was charged with submitting doctored or altered photographs to the Department in connection with the Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York and 91-99 South Third Street, Brooklyn, New York (ALJ Ex. 1). Respondent Nation is

-3-

carefully reviewing petitioner's direct case, I find that the proof was more than sufficient to establish a prima facie case. Accordingly, respondents' motions to dismiss are denied.

## ANALYSIS

Section 27-140.1(a) of the Administrative Code requires a person to be registered with the Department prior to submitting or seeking approval of applications and plans. Respondent Fekete is currently registered with the Department as an expediter. As an expediter, he is hired by architects, developers, contractors, and homeowners to serve as a liaison between them and the Department. He submits and files plans, negotiates approvals and obtains permits (Tr. 425). Respondent Fekete is charged with violating sections 31-01(a)(2, 3, 5, 6) of Title 1 of the Rules of the City of New York for fraudulent dealings; gross negligence, incompetence, misrepresentation or misconduct relating to being an expediter; poor moral character that adversely reflects upon his fitness to be an expediter; and knowingly or negligently making false filings with the Department with respect to two properties (ALJ Ex. 1).

Respondent Nation is a licensed engineer, who pursuant to Directive 14-75, may self-certify applications and plans to obtain permits with limited examination or scrutiny by the Department. The objective of self-certification is to speed up the process. It allows for an expedited approval process and faster issuance of permits so that construction will not be adversely affected by processing delays (Tr. 264). Respondent Nation is charged with violating section 21-02(a)(3) of Title 1 of the Rules of the City of New York by knowingly or negligently making false or misleading statements or knowingly or negligently falsifying submissions with respect to three properties (ALJ Ex. 2).

Respondents have been charged with submitting fraudulent documents or photographs to the Department with respect to three different properties in Brooklyn, New York. For the sake of clarity, each property will be discussed individually.

-5-

authenticity of the photographs, an objection was placed on the face of the folder and the file was left with the Deputy Commissioner for further action (Tr. 158-59).

Sometime in the Spring of 2005, Mr. Gallagher was on his way to examine another site for the Department when he happened to drive by Lynch Street. Remembering his suspicions about the photographs, he decided to see if respondents' submissions were representational of the building. When he arrived at the location, he was surprised to see that the building was quite different than the photographs. The most striking difference was that the building had a flight of seven stairs leading up to the front entrance, while the submitted photographs depicted the front entrance at ground level. In addition, the sidewalk had a trench along the building line in which several garbage cans were stowed next to security and ventilation grates for a basement window. The trench, the window and the grates are not present in the photographs. Mr. Gallagher reported the discrepancies to the Department. Ed Curtis, an Investigative Inspector for the Department, went to 11 Lynch Street on April 1, 2005, to photograph the actual facade of the building and document the difference (Pet. Exs. 7A-E). Both Mr. Gallagher and Mr. Curtis attested to the fact that the building was accurately depicted in the photographs taken by Mr. Curtis and that the building at 11 Lynch Street actually had a front stoop, with an entrance at the top of the flight of stairs (Pet. Exs. 6A-F, 7A-E; Tr. 67, 76-77, 79-80).

Mr. Gallagher testified that if respondents had submitted photographs which correctly and accurately represented the front of the building, they would have demonstrated that the building was not in compliance with the Building Code. Since 11 Lynch Street is a multiple dwelling, the entrance must be handicap accessible. A flight of seven stairs would be an impediment to someone confined to a wheelchair from entering or exiting the building on their own accord (Tr. 90-91).

Both respondents acknowledged that they never went to 11 Lynch Street to inspect the site nor made any other attempts to determine the accuracy of the photographs. Each asserted that they are not required to visit the site before certifying and/or submitting documents to the Department. Instead they passed on the blame for the altered photographs to the owner of the building.

Respondent Nation testified that he did not take the photographs, nor did he go to the site prior to submitting them. The photographs were given to him by respondent Fekete. He testified that he went to respondent Fekete's office to review them, as well as documents for other properties.

-7-

that in his opinion, based on his many years of experience in both the public and private sector, an expediter never has to visit a building site and an engineer seldom has to inspect the site prior to submitting plans (Tr. 308-09).

With respect to respondent Fekete, the Department failed to establish that he had actual knowledge that the photographs had been altered. Although it tried to portray him as a mastermind behind this duplicitous scheme, this was nothing more than an unsupported theory. The Department's suspicions are not proof of a conspiracy to defraud and are an insufficient basis upon which to sustain a charge of misconduct under the Administrative Code. *See Fire Dep't v. Loscuito*, OATH Index No. 509/06, at 20 (June 14, 2006); *see also, Fire Dep't v. Berardi*, OATH Index No. 350/04 (Sept. 7, 2004); *Transit Auth. v. Dugger*, OATH Index No. 794/91 (May 14, 1991).

The Department argued that even if respondent Fekete did not know that the photographs were doctored, he should have known that they were. It is undisputed that respondent Fekete reviewed the photographs before forwarding them to respondent Nation for evaluation and certification. Respondent Fekete, however, credibly testified that he did not notice that the photographs had been altered when he examined them. Instead of looking at the facade of the building, he was focused on the pavement. Unlike Mr. Gallagher, respondent Fekete is not a licensed architect and does not have the same experience or expertise. While it was readily apparent to Mr. Gallagher, an accomplished architect, that the photographs had been doctored, it might not have been so apparent to respondent Fekete. Furthermore, he was relying on respondent Nation's professional engineering review of the documents before they were certified.

The Department contended that respondent Fekete's expediter registration should be revoked simply by virtue of the fact that he submitted the documents and the documents are fraudulent. In support of its position, the Department relied on three prior expediter registration revocation cases decided by this tribunal. In *Department of Buildings v. Krasznoi*, OATH Index No. 409/00 (Jan. 12, 2000), *Department of Buildings v. Morel*, OATH Index No. 562/00 (June 12, 2000), and *Department of Buildings v. Jennings*, OATH Index No. 561/00 (Nov. 30, 2000), the judges recommended revocation based on the submission of documents containing a forged engineer's signature and seal. Respondent expediters were found to be incredible. The respondents were unable to insulate themselves from liability by claiming that they never knew or met the engineers

-9-

*Jennings*, 561/00, at 6.  Although Mr. Gallagher acknowledged that there is nothing in the Building Code or Department policy notices that requires an expediter or an engineer to visit a particular site or actually take submitted photographs, he explained that licensed engineers are bound by a professional code (Tr. 131, 154, 170, 172, 225, 227, 262, 264).

Section 29.3(a)(3) of the Rules of the New York State Board of Regents, provides that unprofessional conduct for an engineer includes, "certifying by affixing the licensee's signature and seal to documents for which the professional services have not been performed by, or thoroughly reviewed by, the licensee." 8 NYCRR § 29.3 (Lexis 2007).  The Department argued that it has an expectation that a licensed engineer participating in the self-certification program will abide by the provisions set forth in this professional code.

In addition to the professional standards set forth in the Rules of the Board of Regents, the National Society of Professional Engineers has published a Code of Ethics for Engineers which states in general, that "the services provided by engineers require honesty, impartiality, fairness and equity, and must be dedicated to the protection of the public health, safety and welfare." (Pet. Ex 2, at 1).  This ethics code, sets forth as a rule of practice that "engineers shall not affix their signatures to any plans or documents dealing with subject matter in which they lack competence, nor to any plan or document not prepared under their direction and control." (Pet. Ex 2, at 2)

Prior to making submissions under the Department's self-certification program, a professional's certification form provided by the Department must be executed by a licensed architect or engineer.  The certification form, which is signed and sealed by the engineer, reads,

> I hereby state that I have exercised a professional standard of care in certifying that the filed application is complete and in accordance with applicable laws, including the rules of the Department of Buildings, as of this date.  I am aware the Commissioner will rely upon the truth and accuracy of this statement. . . . I further realize that any misrepresentation or falsification of the facts made knowingly or negligently by me, my agents or employees, by others with my knowledge, will render me liable for legal and disciplinary action by the Department of Buildings and other appropriate authorities, including termination of participation in the professional certification procedures at the Department of Buildings.

(Pet. Ex. 4).

-11-

judgment. In contrast, respondent Nation was evasive and vague. He had a cavalier attitude and unabashedly acknowledged that he only took a minute or two to review the photographs.

As a licensed engineer, prior to certifying a document for services that he did not perform, respondent Nation is professionally and ethically required to thoroughly review it. Since neither he nor his agents/employees actually performed engineering services in connection with the pavement at 11 Lynch Street, respondent Nation was obligated to thoroughly review the BBP before attesting to its accuracy. A thorough review would have required him to take more than two minutes to evaluate the photographs.

If he had done a professional review by taking the time necessary to examine the photographs, surely as a licensed engineer with nearly twenty years of experience, he would have detected that the photographs were suspicious. He would have observed that the garbage cans appeared to have been added into the photographs and were suspended or floating above the sidewalk, the bricks in the facade did not match and appeared to be floating, and the garbage cans had chains suspended in mid-air without being attached to anything. Even if he was unable to determine exactly what was wrong with the photographs, he should have been alerted to the fact that he or one of his agents/employees needed to go to the site to verify their accuracy. It is difficult to believe that a licensed professional attesting to the accuracy of a photograph would be willing to certify it when he has never been to the site, does not know who took the picture, and spent less then two minutes reviewing the photograph.

Respondent Nation failed to exercise the degree of care that a licensed professional of ordinary prudence would have exercised under the same circumstance. Simply stated, he acted negligently. Respondent Nation should have known that there was something wrong with the photographs. It is clear that he failed to even conduct a minimal evaluation which would have led him to conclude that the photographs had been altered. In addition, since respondent Nation did not perform or supervise the underlying work in the photographs, either he or his agent/employee should have gone to the site to ensure that the work was properly done prior to certifying the photographs. Thus, he failed to exercise a professional standard of care. *See Dep't of Buildings v. Pettit*, OATH Index No. 190/02 (July 30, 2002) (architect's use of limited supervisory review for a construction

-13-

Shortly thereafter, on February 15, 2005, respondent Fekete submitted another photograph to demonstrate that the catch basin had been replaced with a larger catch basin (Pet. Ex. 12A). In addition, the curb no longer covered the catch basin and the curb cut had been repaired, leaving a solid curb face from the sidewalk to the street. When Mr. Gallagher received this photograph only a week or two after his rejection of the prior photograph, he became suspicious. He explained that replacement of the catch basin requires an approval from the Department of Environmental Protection. It would take approximately six to eight weeks to get such an approval and several days to complete the work (Tr. 107, 110-11, 240-41).

After Mr. Gallagher compared the February 15, 2005 photograph (Pet. Ex. 12A) to the photograph submitted several weeks earlier (Pet. Ex. 12B), it became apparent that the February 15, 2005 photograph had been altered. The backgrounds of the two photographs are virtually identical with the exception of the catch basin and curb face, both photos have the same cars parked in the same locations on the street, the same amount of moisture along the curb line, the same garbage and debris in the street, and even a pedestrian on the opposite side of the street standing in the same exact location, in the same exact position, wearing the same exact outfit.

The most striking and obvious similarity in the photographs that immediately draws one's attention is a unique car parked closest to the catch basin. It is either a late 1960s or early 1970s, mustard-colored, four-door Dodge sedan with a black roof and a missing hubcap on the rear driver side tire, with the same license plate. The similarities are so obvious and the differences so minor in the two photographs, that when they were submitted into evidence, I had thought counsel had made a mistake and given me two copies of the same photograph.

The only differences in these two photographs when compared side-by-side is that in the February 15, 2005 photograph, the catch basin is larger and a different color, the curb face does not have a cutout, and the gravel and debris depicted in the prior submitted photograph lying to the right of the catch basin is not present. In both photographs, however, a crushed plastic soda bottle remains lying on the ground slightly to the right and in front of the catch basin. A side by side comparison

-15-

compare them. Nothing in particular about the February 15, 2005 photograph stood out as being unusual. It appeared to be legitimate (Tr. 434-35, 440-41).

The Department charged the respondents with either knowingly or negligently submitting doctored photographs in connection with the BPP for this property. It argued that respondents had knowledge of the altered photographs or an opportunity through reasonable diligence to acquire such knowledge. The Department also contended that respondents' submission of the fraudulent photograph for 91-99 South Third Street on February 15, 2005, was part of a scheme designed to defraud the Department.

Respondents denied colluding and perpetrating a fraud on the Department. Respondents further denied knowing that the photographs were doctored or acting negligently in reviewing them prior to submission. Although they acknowledged that they never went to the site or took the photographs, they argued that they were under no professional or legal obligation to do so.

As discussed earlier, the Department failed to establish a standard of care for expediters. Moreover, it was never proven that an expediter is obligated to go to a site or actually take the photographs that he submits to the Department. However, unlike the photographs for 11 Lynch Street, which may have required some expertise to determine that they were altered, these photographs when compared side by side are obviously fraudulent. An ordinary lay person could easily have detected that the photographs were altered. Had respondent Fekete had both photographs simultaneously in his possession, he would had to have realized, even upon a cursory review, that they had been altered.

Nevertheless, respondent Fekete credibly testified that he no longer had possession of the prior photograph because he had already submitted it to Mr. Gallagher and it was in the Department's file. He does not keep copies of the photographs that he submits to the Department on behalf of his clients. Taking into consideration the volume of his business and the number of photographs that he forwards to the Department, it is unrealistic to expect respondent Fekete to remember that the background of a photograph given to him approximately three weeks earlier was identical to the February 15, 2005 photograph. Therefore, I find that he did not knowingly or negligently submit a doctored photograph to the Department on February 15, 2005.

-17-

falsely representing in an alteration application that an existing two-story structure was located at 150 29th Street, when in actuality it was only a one-story structure (ALJ Ex. 2).

Juan Cotto testified that 150 29th Street is located directly behind his house, where he has resided since 1966. He is very familiar with 150 29th Street, which has a four-story building located on the front portion of the property. In 1978, after returning home from a year in the Marines, Mr. Cotto noticed that a one-story, cinder block shack had been erected in the rear portion of the property, behind the four-story building. He initially thought that this new structure was being used for storage, but later discovered that someone was residing there (Tr. 207-09).

In November 2006, Mr. Cotto observed construction workers working on the cinder block building. He was surprised when he saw the workers framing a second floor with metal studs because, at first, he had thought that they were only repairing the roof. Mr. Cotto was unhappy that his neighbors were adding a second floor to the existing one-story structure because it would block his view. He called the Department to file a complaint and took several photographs to document the progress of the construction work (Pet. Exs. 16A-D; Tr. 209-11).

Based on Mr. Cotto's complaint, the Department conducted an investigation, which included reviewing all of the documents related to the construction project that had been previously filed with the Department. The Department discovered that on or about July 20, 2006, respondent Nation or his agent/employee had submitted an alteration application for 150 29th Street, which included the Plan/Work Report for PC Filing and the Site Plan, Floor Plans and Notes (Pet. Exs. 13, 14). Both submissions indicated that the owner planned on making alterations to an already existing two-story building.

Both the Plan/Work Report for PC Filing and the Site Plan, Floor Plans and Notes were self-certified by respondent Nation and accepted under Directive 14-75 by Bajda Krzysztof, a plans examiner in the Department's Brooklyn office. As discussed above, Directive 14-75 permits licensed architects and engineers to submit self-certified plans and applications for an expedited review, thereby speeding up the approval process and minimizing construction delays. Under this directive, the Department does not go to the site to conduct an inspection nor does it do an in-depth examination of the submitted documents. Since the Department is only doing a cursory review of

-19-

obtaining a limited review of the application by the Department, there are tax benefits to claiming that the project merely involved alterations to an existing second floor, rather than the construction of an entirely new floor (Tr. 124).

Respondent Nation testified that he never went to the site, asserting that he was under no professional or legal obligation to do so. Mr. Dennis, respondents' expert, agreed that respondent Nation was not obligated to go to the site before certifying the ALT 2. When asked about his own practices, however, Mr. Dennis stressed that he always does a diligent inquiry on any project that he puts his name on and that his general practice is to go to the site to better assess the situation. Mr. Dennis explained that he is distrustful of developers, builders and contractors because he has been lied to in the past (Tr. 323, 342-343). Similarly, Mr. Gallagher testified that during the 20 years that he was in private practice he always went to the site to evaluate the situation before certifying applications or plans (Tr. 125).

Respondent Nation contended that he did a sufficient review of the alteration application before certifying it. He testified that he reviewed the plans, an asbestos report and the I-Card for the premises (Tr. 367-68, 422). I found respondent Nation's testimony incredible. He was evasive and vague. For the most part, he was non-responsive and appeared disdainful of the entire proceeding. Respondent Nation has an obvious stake in the outcome of this hearing, providing him with a clear motivation to overstate what his review entailed. His testimony that he researched this property online and examined the I Card was unpersuasive, since he failed to provide proof of his research efforts or even testify as to what information it yielded.

The ALT 2 filed by respondent Nation for 150 29th Street indicates that there is an already existing two-story structure on the premises. Respondent Nation contended that the asbestos report issued by Shaul Singer, an asbestos investigator, corroborated that there was an existing two-story structure (Resp. Ex. H). This report, however, is rebutted by Mr. Cotto's credible testimony and the photographic evidence documenting the progress of the construction (Pet. Exs. 16A-D). Mr. Cotto, a private citizen, voluntarily appeared at this tribunal to testify in this matter. He had never met respondent Nation before and had no interest in the outcome of this proceeding. Indeed, Mr. Cotto appeared somewhat unclear as to the actual purpose of the hearing. His testimony was straightforward, without embellishment or exaggeration. Thus, I must conclude that the asbestos

-21-

his employee and he did not know the draftsman's professional qualifications or training. This is in direct violation of the Code of Ethics for Engineers, which requires engineers not to affix their signature to any plan not prepared under their direction and control (Pet. Ex. 2). Upon reviewing these plans, respondent Nation had a professional and ethical obligation to determine their accuracy by visiting the site himself or dispatching an employee under his supervision to the premises, prior to self-certifying the plans as being in compliance with the Building Code and other applicable laws and regulations. Had he gone to the site, it would have become obvious that the existing structure had only one story.

Accordingly, I find that respondent Nation negligently submitted a Plan/Work Report for PC Filing and a Site Plan, Floor Plans and Notes in connection with an alteration application for 150 29th Street, Brooklyn, New York, which falsely indicated that there was an existing two-story structure at that location.

Finally, respondent Nation was charged with submitting a Post Approval Amendment to Buildings that falsely represented fire damage to an existing two-story building at 150 29th Street (ALJ Ex. 2). There was no evidence or testimony presented with respect to this charge. As such, this charge should be dismissed for the Department's failure to meet its burden.

## **FINDINGS AND CONCLUSIONS**

1.  The Department failed to establish by a preponderance of credible evidence that respondent Fekete knowingly or negligently submitted doctored photographs in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York.

2.  The Department failed to establish by a preponderance of credible evidence that respondent Fekete knowingly or negligently submitted doctored photographs in connection with a Builder's Pavement Plan for 91-99 South Third Street, Brooklyn, New York.

3.  The Department failed to establish by a preponderance of credible evidence that respondent Nation knowingly submitted doctored photographs in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York.

-23-

e only common link with respect to each of these properties and false submissions to the De      ent is respondent Nation.  Respondent Nation has demonstrated that he has no sense of p      ional responsibility or propriety and that he cannot be relied upon to properly exercise his       sional judgment within the self-certification process.  *See Dep't of Buildings v. Petit*, OATH ‹ No. 190/02 (July 30, 2002).

Respondent Nation's disregard for public safety and lack of integrity brings into question wnether he is actually fit to be licensed by the Board of Regents as an engineer.  At the very minimum, he should not be permitted to continue participating in the Department's self-certification program.  It is a privilege that should be reserved for ethical, honest, trustworthy, and diligent professionals, which respondent has proven himself not to be.  Accordingly, I recommend that respondent Nation be excluded from participation in the Department's limited supervisory review procedures.

With respect to respondent Fekete, I find that the Department failed to meet its burden in establishing that he knowingly or negligently made false submissions.  Therefore, I recommend that the charges against respondent Fekete be dismissed.

Kara J. Miller
Administrative Law Judge

October 26, 2007

SUBMITTED TO:

**PATRICIA LANCASTER, FAIA**
*Commissioner*

APPEARANCES:

**VITTORIA FARIELLO, ESQ.**
**JOHN WOODS, ESQ.**
**MARK ASSA, ESQ.**
*Attorneys for Petitioner*

**STUART KLEIN, ESQ.**
*Attorney for Respondents*

# EXHIBIT C

# <sub>NYC</sub> BUILDINGS

Patricia J. Lancaster, FAIA
Commissioner

Executive Offices
280 Broadway 7th Floor
New York, NY 10007

212 566 3111
212 566 3754 fax
comm.db@buildings.nyc.gov

December 4, 2007

Mr. Leon St. Clair Nation
Geezman Company
93 Court Street
Brooklyn, NY 11201

Dear Mr. Nation:

I have completed my review of the Report and Recommendation of OATH case 1115-19/07, dated October 26, 2007 of Administrative Law Judge Kara J. Miller, who was designated to conduct a hearing on charges and specifications that were served upon you on December 19, 2006. I have further reviewed the transcript of the hearing held on May 21, 22, and 23 of 2007 before Judge Miller.

In her October 26, 2007 Report and Recommendation, Judge Miller found that you negligently submitted false photographs and documents to the Department of Buildings for three properties and recommended that you be excluded from participation in the Department's limited supervisory review procedures. A copy of Judge Miller's Report and Recommendation is enclosed.

I hereby adopt Judge Miller's Report and Recommendation and findings of fact and find you guilty in accordance with her recommendation. Accordingly, I hereby revoke your professional certification privileges including those under Directive 14 of 1975, effective immediately.

Administrative Code §26-124 (c) as amended, authorizes the Commissioner of the Department of Buildings to refuse to accept any application or other document bearing the signature of someone who has been found to have intentionally or negligently submitted false documents to the Department. You are hereby directed to submit in writing within ten business days of the date of this letter any reasons why I should not impose this further sanction.

Very truly yours,

Patricia J. Lancaster, FAIA
Commissioner

Enclosure

# EXHIBIT D

**CHAPTER TEXT:**

LAWS OF NEW YORK, 2007

CHAPTER 542

AN ACT to amend the administrative code of the city of New York and the education law, in relation to filings by persons who have negligently or knowingly made false statements in documents submitted to the department of buildings of the city of New York and filings architects or professional engineers whose licenses have been revoked or suspended or who have been placed on probation

Became a law August 15, 2007, with the approval of the Governor. Passed by a majority vote, three-fifths being present.

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

Section  1. Subdivision c of section 26-124 of the administrative code of the city of New York is relettered subdivision d and a  new subdivision c is added to read as follows:
c.  In addition to any other penalty provided by law, the commissioner may refuse to accept any application or other document submitted  pursuant to or in satisfaction of any requirement of this chapter or of chapter  one of title twenty-seven of this code or any rule or regulation of any agency promulgated thereunder that bears the signature of any person who has been found, after a hearing  at  the office  of  administrative trials and hearings pursuant to the department's rules, to have knowingly  or negligently made a false statement or to have knowingly or negligently falsified or allowed  to be falsified  any  certificate,  form, signed statement, application, report or certification of the correction of a violation required under the provisions of this chapter or of chapter  one of title twenty-seven of this code or any rule or regulation of any agency promulgated thereunder.

§ 2. Subdivision 4 of section 6507 of the education law is amended by adding a new paragraph e-1 to read as follows:
e-1.  Compile  and  make  available to the New York city department of buildings in electronic form: (i) a list of all architects  and professional  engineers  currently licensed by and registered with the department; (ii) a list of  all  architects  and professional  engineers who currently  hold  limited permits issued by the department, together with the conditions and limitations applicable to each such  limited permit; and  (iii)  a  list  of  all architects and professional engineers whose licenses have been revoked or suspended by the board of regents  of the state  of  New York or who are currently on probation, together with the date of revocation or the date and duration of suspension or probation, as  applicable.  The  New  York  city  department of buildings

CHAP. 542                                       2

shall not accept plans or other documents submitted in  connection  with
applications  for work permits under articles ten through seventeen of
subchapter one of chapter one of title twenty-seven of the administrative
code of  the city of New York by any person representing that he or she is
an architect or professional engineer without verifying, by means  of
such lists,  that  such person meets the qualifications established by law
to practice as an architect or professional engineer in New York state.

EXPLANATION--Matter in *italics* is new; matter in brackets [—] is old
law to be omitted.

§ 3. Subdivision (d) of section 27-140.1 of the administrative code
of the city of New York is relettered subdivision (e) and a new
subdivision (d) is added to read as follows:
(d) The department shall not accept plans or other documents
submitted in  connection  with  applications  for  work permits under
articles ten through seventeen of this subchapter by any person
representing that  he or  she  is  an architect or professional engineer
without verifying, by means of lists compiled and made available by the
New York state department of education pursuant to paragraph e-1 of
subdivision four  of section  sixty-five hundred seven of the education
law, that such person meets the qualifications established by law to
practice as an  architect or professional engineer in New York state.

§ 4.  Nothing set  forth in this act shall be construed to limit
the power of the New York city commissioner of  buildings  to  adopt
rules, consistent  with  state and local law, that set forth additional
grounds for limitation of the filing  privileges  of  or  otherwise
sanctioning architects  and  professional engineers who have been
determined after a hearing to have knowingly or negligently submitted
applications, plans or  other documents  to  the New York city
department of buildings that contained false information or were not in
compliance with all  applicable provisions of law or who have otherwise
demonstrated incompetence or a lack of knowledge of applicable law or
standards.

§ 5. This act shall take effect immediately.

The Legislature of the STATE OF NEW YORK **ss**:
Pursuant to the authority vested in us by section 70-b of the Public
Officers Law, we hereby jointly certify that this slip copy of this
session law was printed under our direction and, in accordance with
such section, is entitled to be read into evidence.

JOSEPH L. BRUNO                          SHELDON SILVER
**Temporary President of the Senate**       **Speaker of the Assembly**

# EXHIBIT E

# STUART A. KLEIN

## ATTORNEY AT LAW

99 MADISON AVENUE • 11TH FL, NEW YORK, N.Y. 10016
TELEPHONE: (212) 564-7560  ·  TELEFAX: (212) 564-7845

STUART A. KLEIN, ESQ.

WRITER'S DIRECT NUMBER
(212) 564-7560 EXT. 11

January 2, 2008

Commissioner Patricia Lancaster, FAIA
NYC Department of Buildings
280 Broadway, 7th Floor
New York, NY 10007

> **RE:    Leon St. Clair Nation, Professional Engineer**
>         **OATH Index No. 07-1119**

Dear Commissioner:

I am writing in response to a letter dated December 4, 2007, in which it was suggested that you may apply the terms of Administrative Code Section 26-124, as recently amended, to acts performed by Mr. Nation prior to amendment of that section. As I have stated to members of your staff, I believe that said Code provision is a penalty, and any *ex post facto* application to acts committed prior to the effective amendment date would be unconstitutional. Further, I believe that Administrative Judge Miller's finding of negligence was wrong on both the law and facts, and Mr. Nation will challenge said finding in the appropriate tribunal.

I hereby submit that Section 26-124 should not, and legally cannot, be used as a means to rescind Mr. Nation's ability to file applications with your agency. Mr. Nation has been licensed as an engineer in New York State since 1988.  He has filed hundreds of applications with your agency in more than twenty years of practice in New York City. Prior to his recent difficulties, Mr. Nation has never been censured either by your agency or the State Education Department in any way. Mr. Nation is considered by his peers to be professional in all aspects of his practice.  His office supports more than ten families. The vast majority of his work is performed in New York City and imposition of this penalty would, in effect, have the same result as taking away his license to practice engineering.

Commissioner Patricia Lancaster, FAIA
January 2, 2008
Page 2

In the above-referenced action, Judge Miller found Mr. Nation not guilty of the more serious allegations of poor moral character and fraudulent dealings. Judge Miller determined that Mr. Nation was negligent regarding three applications he had filed. I will address these findings individually with regard to each of these three applications, as follows:

## 150 29th Street, Brooklyn

Judge Miller determined that Mr. Nation was negligent in failing to physically visit the job site to determine that an alteration type 1 application should have been filed, instead of the alteration type 2 application that Mr. Nation did file. I remind you that Mr. Nation did not merely rely upon the representations of the draftsman when reviewing the plans. Mr. Nation testified that he relied upon the I-Card that was incorporated into the previous 1946 DOB filing. I ask that you review said document, which was produced by your agency during discovery proceedings. The I-card clearly identifies a "two-story building at rear of the premises." In addition to this representation, an asbestos report submitted by a Certified Asbestos Investigator identified the presence of asbestos at the 2nd story and roof area of the premises at issue. Thus, Mr. Nation did not shirk his professional duty, but, in fact, relied upon multiple sources that the existing conditions at the site were correct. To the extent that Mr. Nation may have neglected any duty, it was due to his reliance upon these sources, an error Mr. Nation has learned from.

## 11 Lynch Street, Brooklyn

Judge Miller found that Mr. Nation should have noticed that the photographs submitted with this application were inaccurate, in that the garbage cans pictured were, were "floating," as per the description of John Gallagher, and the stoop did not meet requirements for wheelchair access. In so finding, Judge Miller failed to address two important points. First, Mr. Nation was not the applicant of record for the New Building application related to the premises. He was the applicant only for the Builders Pavement Plan ("BPP"). Thus, Mr. Nation had no duty to determine the accuracy or quality of the work performed on the building itself, or on any feature of the building, such as the stoop.[1] It is uncontested that Mr. Nation did not take the BPP photographs himself. Second, Mr. Nation testified that he examined the photographs to determine the quality of the work <u>on the curb only</u>, which appeared to be satisfactory. Virtually all of Judge Miller's analysis regarding Mr. Nation's alleged failure to perform a professional review reflects the inaccuracies in the photographs relating to the building itself, not the curb (<u>see</u> Miller determination, page 11).

---

[1] See Miller determination, page 5. Judge Miller cites to Mr. Gallagher's testimony that had respondents submitted photographs "which correctly and accurately represented the front of the building, they would have demonstrated that the building was not in compliance with the Building code. Since 11 Lynch Street is a multiple dwelling, the entrance must be handicap accessible." Mr. Gallagher's testimony, and Judge Miller's reliance on it, ignores the crucial fact that Mr. Nation was not the applicant for the building itself and thus, had no duty or motive to involve himself in its construction in any way. Almost all of Mr. Gallagher's testimony relied upon by Judge Miller (pages 4 and 5) refer to inaccuracies in the building itself, not the pavement in front of the building which was the subject of Mr. Nation's application.

Commissioner Patricia Lancaster, FAIA
January 2, 2008
Page 3

## 99 South 3rd Street, Brooklyn

It is curious that Judge Miller, when positively assessing the credibility at trial of expediter Hershey Fekete,[2] noted that Mr. Fekete's failure to notice inconsistencies between two sets of photographs for this address was understandable, as he had viewed the two sets of photographs at different times and had never had an opportunity to compare them: "Fekete credibly testified that he no longer had possession of the prior photograph because he already submitted it to Mr. Gallagher and it was in the Department's file." See Miller determination, page 15.

Mr. Nation also testified that he never had both sets of photos in his possession at the same time and did not have an opportunity to compare one to the other. This is crucial in that DOB's case depended on Mr. Nation's alleged failure to notice that certain peripheral items in the photographs, such as parked cars, pedestrians, and litter, had not changed from one set of photographs to the next. Nevertheless, Judge Miller missed or merely ignored Mr. Nation's testimony in her determination.

## Conclusion

A prohibition of the kind authorized by Section 26-124 is severe and should rarely be applied. Mr. Nation's practice is reliant upon his ability to perform work in New York City. A father of two, Mr. Nation surely would be financially ruined should his ability to file any applications with your agency be prohibited. The inability to file using the limited review privileges is in itself a severe penalty. To put Mr. Nation out of business for acts of mere negligence, the conditions of which are clearly mitigated by the facts, would be an extreme and unwarranted penalty. Mr. Nation testified that since becoming aware of the allegations, he has changed his practice regarding reviewing photographs not personally taken by him. See May 29, 2007 transcript, page 399.

To my knowledge, this penalty has never before been imposed, even though many engineers and architects have been found guilty of far more egregious acts.[3] Judge Miller found Mr. Nation to have been merely negligent, and none of the disputed issues

---

[2] Mr. Fekete was tried concurrently with Mr. Nation at OATH, Index No. 07-1118, on substantially similar charges arising out of the same applications. Judge Miller recommended that all charges against Mr. Fekete be dismissed.

[3] Certainly you are aware of a number of design professionals who practice in Brooklyn that have been repeatedly named as egregiously violating DOB procedures, and whose conduct has resulted in actual harm to the public, yet they have not been subject to the imposition of 26-124. Further, they are a myriad of plumbers, electricians, and other licensees whose acts directly affected public safety, yet, despite your authority to revoke their licenses, you agreed to impose far less severe penalties. In this context, to impose 26-124 to the negligent acts committed by Mr. Nation appears draconian. In addition, clearly your own plan examination staff negligently either approves or disapproves conditions on a regular basis, yet in my 40 years of working for and against your agency, I am unaware of any plan examiner being disciplined for his or her mere negligence.

Commissioner Patricia Lancaster, FAIA
January 2, 2008
Page 4

involved a threat to public safety.[4]  Both John Gallagher and Cornelius Dennis, a former employee of DOB for over twenty years, admitted that there is no obligation for an engineer to visit a site.  Further, Mr. Gallagher testified that more than 50% of all audits of professionally certified applications result in objections.  If mere negligence is the standard by which the imposition of Section 26-124 will be imposed, dozens, if not hundreds, of design professionals could potentially lose all rights to file applications with your agency[5].

Finally, the imposition of Section 26-124 to the facts of this case would be contrary to public policy.  As admitted by Mr. Gallagher, a BPP is a relatively minor application.  If your agency forces design professionals to visit every site, even for alteration type 2 and 3 applications, and to find every conceivable error or inconsistency in every document or photo not taken or drafted personally by them, a costly burden will be added to each alteration, and construction in New York City will slow to a crawl.

As previously stated, Mr. Nation is the principal of an engineering firm that supports ten families, whose livelihoods will also be affected by your decision. I ask for your consideration in not applying Section 26-124 to Mr. Nation.

Sincerely,

Stuart A. Klein, Esq.

---

[4] I remind you that certificates of occupancy were issued to both buildings after these photos were submitted. Any failure on the part of Mr. Nation would pale in comparison to the failures of the DOB inspectors who performed the CO inspections for the two New Building applications. However, to my knowledge, no inspector has been disciplined for any such failure.

[5] A review of the disciplinary actions taken by the New York State Education Department's Office of Professional Discipline website indicates that design professionals who committed far more egregious acts, some including crimes involving moral turpitude, were allowed to keep their licenses, and, in most cases, received no actual suspension.  Mr. Nation, despite having been merely negligent, would uniquely be singled out for this harsh prohibition which would lead to financial ruin.

# EXHIBIT F



**Patricia J. Lancaster, FAIA**
Commissioner

Executive Offices:
280 Broadway, 7th Floor
New York, NY 10007

212.566.3111
212.566.3784 fax
comm-dob@buildings.nyc.gov

January 15, 2008

Stuart A. Klein, Esq.
99 Madison Avenue, 11th Floor
New York, New York  10016



Dear Mr. Klein:

As you are aware, Office of Administrative Trials and Hearings ("OATH") Administrative Law Judge Kara Miller, in her October 26, 2007 Report and Recommendation, found that Mr. Nation, a licensed professional engineer who had been participating in the Department's professional certification program, had negligently submitted false documents to the Department of Buildings on three separate occasions.   After review of Judge Miller's report, as well as the transcript of the trial held on May 21, 22 and 29 of 2007, I sent a letter to Mr. Nation on December 4, 2007, stating that I was adopting Judge Miller's recommendations and revoking his professional certification privileges.   In that same letter, I allowed a period of 10 days, which was extended at your request, for Mr. Nation to submit in writing any reasons why I should not, pursuant to Administrative Code § 26-124(c), as recently amended, refuse to accept any application or other document bearing his signature.

I received your letter dated January 2, 2008.   Your letter, while contending that Administrative Code § 26-124(c) would be unconstitutional in its application to the current case, does not cite any statute or case law that supports your contention.

As Judge Miller found, Mr. Nation was aware or should have been aware that attesting to the accuracy of plans and photographs that he did not prepare, without either visiting the sites involved or taking any other steps to determine the documents' accuracy, was negligent and violated professional standards of conduct.   Your argument that the "borough pavement plan" involved in two of the applications is a "relatively minor application" ignores Mr. Nation's repeated indifference to professional standards of care.   This argument also ignores Judge Miller's finding that Mr. Nation negligently submitted false documents in connection with an Alteration Type 2 application concerning an enlargement of a house.

Stuart A. Klein, Esq.
January 15, 2008
Page Two

In these circumstances, refusing to accept any application or other document bearing the signature of Mr. Nation, pursuant to Administrative Code § 26-124(c), is an appropriate remedial measure to protect the public from the harm associated with his pattern of negligent conduct with respect to submissions to the Department of Buildings.  While I have the authority under § 26-124(c) to refuse permanently to accept documents from Mr. Nation, because this remedy was not in place when Mr. Nation committed these acts, I will exercise my discretion to refuse to accept documents bearing Mr. Nation's signature for two years, effective immediately.  At the conclusion of this two year period, Mr. Nation will be allowed to submit applications and other documents bearing his signature. However, his ability to file applications and other documents will then be subject to a three year probationary period.  If during that probationary period Mr. Nation intentionally or negligently files any other false applications or documents with the Department, I reserve the right to further suspend or revoke his ability to file documents with the Department.

It should be noted, in addition, that when the above-mentioned suspension ends, the revocation of Mr. Nation's professional certification privileges as referenced in the December 4, 2007 letter, will still remain in full force and effect.

Very truly yours,

Patricia J. Lancaster, FAIA
Commissioner

CC: Leon St. Clair Nation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEON ST. CLAIR NATION,

08-CV-00862

                            Plaintiff,

                    -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER,
                            Defendants.
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY AND PERMANENT INJUNCTION**


**Stuart A. Klein, Esq.**
**99 Madison Avenue, 11th Floor**
**New York, NY 10016**
**(212) 564-7560**
**Attorneys for Plaintiff**
*Leon St. Clair Nation*

# TABLE OF CONTENTS

Preliminary Statement ....................................................................................................1

BACKGROUND .............................................................................................................6

    Plaintiff's License ........................................................................................................6

    Applicable DOB Rules, Regulations and Procedures.................................................7

    Relevant Laws .............................................................................................................8

    The AC Section 26-124 (c) Amendment ....................................................................9

ARGUMENT..................................................................................................................11

    I. Plaintiff Is Entitled To A Preliminary Injunction................................................11

    II. Legislation is Not Retroactive Absent a Clear Intent That it Be So Applied ......12

    III. Amended AC Section 26-124(c) Establishes A New Penalty And Is Thus Not Remedial in Nature ................................................................................................................13

    IV. The Amended Provision Is Inapplicable To The BPP Applications ...................17

    V. Application Of The Amended Provision Was *Ex Post Facto* And Thus Unconstitutional..18

    VI. Defendant Lancaster's Intentional Act is Actionable Under 42 U.S.C 1983 ......23

    CONCLUSION...........................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

Bell v. Burson, 402 U.S. 535 (1971) .................................................................15
Bronx Household Faith v. Bd. of Educ. of City of New York, 331 F.3d 342 (2d Cir. 2003) .......11
Buccino v. Continental Assur. Co., 578 F.Supp. 1518 (S.D.N.Y. 1983) ....................13
Doe v. Pataki, 120 F.3d 1263 (2d Cir. 1997)..............................................18, 19
Fernandez-Vargas v. Gonzales, 126 S.Ct. 2422, (2006)..........................................12
Garcia v. Dept. of Educ. of the City of New York, No. 102974/2007, 2007 WL 4334781 (Sup.
    Ct. N.Y. County Nov. 15, 2007).................................................................14, 15
Helwig v. United States. 188 U.S. 605 (1903) .........................................................19
Cummings v. Missouri, 71 U.S. 277 (1866)..............................................................19
Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963).................................................20
Lusk v. Village of Cold Spring, 475 F.3d 480 (2d Cir. 2007).......................................11
Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577 (1998). ....................13
People v. Oliver, 1 N.Y.2d 152 (1956).......................................................................21
United States v. Ward, 448 U.S. 242 (1980) ............................................................20
Walters v. Metropolitan Educ. Enter., Inc., 519 U.S. 202 (1997) ..........................14

**Statutes**

2007 N.Y. Laws 542 .....................................................................................................23
N.Y. City Admin. Code 26-124(c) ....................................................................... passim
N.Y. City Admin. Code 27-140...........................................................1, 7, 18, 25
N.Y. City Admin. Code 27-214...........................................................................2, 8
N.Y. EDUC. LAW 6510 .............................................................................7, 16
N.Y. EDUC. LAW 6503 ...............................................................................................6
N.Y. EDUC. LAW 6504 ...............................................................................................6
N.Y.C. CHARTER 1048 ...............................................................................................3

**Other Authorities**

DOB Directive 14 of 1975..................................................................................2, 8
DOB Operations Policy and Procedure Notice ("PPN) 1/04.....................................8
DOB Operations Policy and Procedure Notice ("PPN") 6/97...........................1, 7, 17
DOB Operations Policy and Prodedure Notice ("PPN") 2/95......................................8
Walter F. Witt, Jr., Vested Rights in Land Uses – A View from the Practitioner's Perspective, 21
    Real Prop., Prob. & Tr. J. 317, 320 (1986).........................................................16

**Rules**

1 RCNY 13-11 ...........................................................................................................3, 8
1 RCNY 21-01 ...........................................................................................................9, 16
1 RCNY 21-02 .................................................................................................... passim

**Constitutional Provisions**

U.S. CONST. amend. XIV.............................................................................16, 17, 18, 24
U.S. CONST. art. 1, § 10 ...............................................................................................23

Plaintiff Leon St. Clair Nation ("Plaintiff") submits his memorandum of law in support of his motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for an order of a preliminary injunction preventing Defendants City of New York, Department of Buildings ("DOB"), and Commissioner Patricia J. Lancaster ("Lancaster") from prohibiting Plaintiff from filing any applications with DOB pursuant to New York City Administrative Code Section 26-124(c).

## Preliminary Statement

Plaintiff is a Jamaican immigrant who obtained a Professional Engineer's license from the New York State Department of Education ("NYSDOE")[1] in 1988 and has held same in good standing ever since. Plaintiff is the principal of JNS Engineers P.C., an engineering firm with approximately ten employees, the practice of which is conducted almost entirely in the City of New York. As such, Plaintiff derives the vast majority of his income from submitting applications for building permits and approvals to DOB. Plaintiff has filed thousands of applications with DOB throughout his years of practice and, until the recent controversy, has never been disciplined by either DOB or NYSDOE. Pursuant to Section 27-140 of the New York City Administrative Code ("AC"), all applications and plans must be filed with DOB by either a Professional Engineer or a Registered Architect (both licenses are issued by NYSDOE).

Plaintiff was the applicant for two Builder's Pavement Plan ("BPP") applications filed with DOB for properties at 91-99 South 3rd Street, Brooklyn, New York and 11 Lynch Street, Brooklyn, New York, on August 27, 2004 and November 18, 2004, respectively. BPPs are applications for minor corrective work to pavement and curbs in front of a building.[2] When DOB issues a New Building permit for construction of an entirely new structure, it also requires that a BPP be submitted as an ancillary filing, although the same architect or engineer need not

---

[1] NYSDOE is the state agency charged with the issuance and jurisdiction over engineering licenses. NYSDOE is the only agency with the authority to revoke an engineering license.

[2] See DOB Operations Policy and Procedure Notice ("PPN") 6/97; AC Section 27-214.

submit both filings.  Although NB applications were pending for the buildings at both 91-99

South 3rd Street and 11 Lynch Street, Plaintiff was not the applicant for the NB application at

either address, and had absolutely no involvement with or responsibility for the buildings under

construction at either address.  His sole responsibility, in both cases, was for the BPP for the

curbs outside the buildings.

Plaintiff was also the applicant for an application filed on June 21, 2006 to renovate an

existing two-story structure at 150 29th Street, Brooklyn, New York.

DOB has two limited review procedures which allow an applicant to expedite DOB

approval of applications:

1) Directive 14, available for minor applications not requiring a new certificate of

occupancy, and which receive a limited review by DOB examiners; and

2) professional certification, which can be used for any DOB application, and under

which DOB conducts no prior review at all, relying instead on the representation of a

Professional Engineer or Registered Architect, under seal, that the application complies with all

applicable laws, rules, and regulations.

On or about December 18, 2006, DOB served administrative charges against Plaintiff,

alleging that he had violated Title 1, Section 21-02 of the Rules of the City of New York

("RCNY") in that he had allegedly "knowingly or negligently made false or misleading

statements or knowingly or negligently falsified or allowed to be falsified any certificate, form,

signed statement, application or report filed with the Department [of Buildings]."  DOB alleged

that Plaintiff had submitted photographs in conjunction with the BPP applications at 91-99 South

3rd Street and 11 Lynch Street which had been allegedly "doctored" (see charging instruments,

annexed hereto as Exhibit A).

2

On January 10, 2007, DOB amended its charges against Plaintiff to add another allegation, pursuant to 1 RCNY § 21-02, that Plaintiff had filed inaccurate plans for the application for the renovation of the two-story structure at 150 29th Street.

1 RCNY § 21-02 was promulgated in 1991. The most extreme penalty imposed under that rule is revocation of a Professional Engineer's privilege to file under DOB's limited review procedures. Pursuant to 1 RCNY § 21-02(e), an engineer whose privileges have been revoked may seek re-instatement after one year[3]. The burden is on DOB to establish why re-instatement would not be warranted.

A hearing on DOB's charges against Plaintiff was held before the New York City Office of Administrative Trials and Hearings ("OATH") on May 21, 22, and 29, 2007. On or about October 26, 2007, OATH Administrative Law Judge Kara Miller issued a Report and Recommendation to DOB Commissioner Lancaster (see report and recommendation, annexed hereto as Exhibit B).[4] Judge Miller dismissed all charges of intentional misconduct by Plaintiff, but found him to have been negligent. Judge Miller recommended that his limited review privileges be revoked[5].

By letter dated December 4, 2007, DOB Commissioner Lancaster adopted Judge Miller's recommendation and revoked Plaintiff's limited review privileges (see letter, annexed hereto as Exhibit C). The letter contained a declaration that the Commissioner was considering the

---

[3] 1 RCNY 21-02 was amended in February 2007, and section (e) was omitted. However, DOB charged Plaintiff under the prior version of the rules, despite amending their charges after February 2007. Thus, the only penalty Plaintiff was on notice of was the revocation of his limited review privileges, with possible re-instatement after one year. As 1RCNY 21-02 was amended prior to the final version of the charges, yet DOB chose to charge Plaintiff on the previous version of 21-02, whether the charges ever stated a cause of action will be challenged in an Article 78 proceeding.

[4] OATH is the administrative tribunal charged with conducting adjudicatory hearings for New York City agencies. N.Y.C. CHARTER § 1048 et seq. Following a hearing at OATH on charges proffered by DOB, the OATH judge issues a report and recommendation to the commissioner of DOB, who then makes a final determination based thereon. 1 RCNY § 13-11.

[5] Both Judge Miller's determination and DOB Commissioner Lancaster's adoption of it will be challenged via a state Article 78 proceeding to be filed contemporaneously with this action.

3

invocation of Section 26-124(c) of the New York City Administrative Code ("AC") to prohibit

Plaintiff from filing any applications with DOB at all, using any filing protocols whatsoever.

The letter invited Plaintiff to submit to Commissioner Lancaster a written statement as to why

the application of AC § 26-124(c) would be unwarranted in his case.

Upon receipt of the above-referenced letter, counsel for Plaintiff contacted both DOB

Inspector General John Woods[6] and DOB Senior Counsel Stephen Kramer. Counsel informed

both DOB representatives that as AC 26-124(c) had not been enacted until August 2007, or

roughly three years after the alleged misconduct had taken place, retroactive application of the

provision would be unconstitutional. By agreement, Mr. Kramer extended Plaintiff's time to

submit a statement to DOB. Mr. Kramer further instructed Plaintiff's counsel that Plaintiff's

statement should not contain any legal argument regarding whether application of the provision

was unconstitutional. Mr. Kramer expressly stated that all that the Commissioner wanted to see

in Plaintiff's statement were statements concerning the equities of the case, i.e. arguments as to

why the contemplated penalty would be unwarranted given the facts of Plaintiff's case.

Plaintiff's counsel submitted a statement in the form of a letter dated January 2, 2008 to

Commissioner Lancaster (see letter, annexed hereto as Exhibit E). As per Mr. Kramer's

direction, counsel did not fully brief the constitutional issue, but did mention that application of

AC § 26-124 (c) would constitute an *ex post facto* law and was otherwise unconstitutional.

By letter dated January 15, 2008, Commissioner Lancaster informed Plaintiff that she

was applying AC § 26-124(c) for a period of two years, thus revoking his rights to submit any

sort of application or document to DOB whatsoever, effective immediately (see letter, annexed

hereto as Exhibit F). The letter further stated that, although Plaintiff's letter had stated that it

---

[6] Mr. Woods oversees DOB's Buildings Special Investigations Unit which conducted the underlying investigation and prosecuted the administrative charges.

would be unconstitutional for Commissioner Lancaster to invoke AC § 26-124(c), Plaintiff's counsel had failed to cite to any statutes or case law to support this position.[7]

AC Section 26-124(c) was enacted in August 2007, years after the alleged misconduct was committed by Plaintiff, and well after notice of the charges under RCNY 21-02 had been served.  Thus, at the time of the alleged misconduct, Plaintiff had not been on notice that he could be stripped of any right to file any sort of application with DOB whatsoever – a penalty that would essentially eradicate his thriving engineering practice.  Section 26-124(c) did not amend a previous section of law, but itself established the prohibition as a new penalty.[8] Commissioner Lancaster's knowing and deliberate application of this provision to misconduct committed prior to the provision's enactment was both *ex post facto* and otherwise unconstitutional as violative of Plaintiff's due process rights.  The fact the Plaintiff's counsel alerted DOB as to the unconstitutionality of the penalty, both in the January 2, 2008 letter to Commissioner Lancaster and in telephone consultations with DOB's chief legal officers, and that DOB and Commissioner Lancaster nevertheless went ahead and imposed the penalty, demonstrates the knowing, intentional, and deliberate character of Commissioner Lancaster's actions in violating Plaintiff's civil rights.

This memorandum demonstrates that:

(i)    Defendants retroactive application of the enacted provision constituted an *ex post facto* law, *See* Points II,V, respectively, *infra*;
(ii)   The enacted law established a new penalty and was in no way remedial; *See* Point III, *infra*;
(iii)  The enacted provision of law was inapplicable to Plaintiff's submission of photos to be incorporated into the two BPP applications, *See* Point IV, *infra*;

---

[7] The very premise that the Commissioner of a mayoral agency would act unconstitutionally against a citizen, and then "blame the victim" by citing the purported inadequacy of the citizen's letter asking her not to do so, is in and of itself shocking to the conscience.  Public officials presumably do not need to be spoon-fed constitutional arguments in order to restrain themselves from violating the United States Constitution.
[8] The former 26-124 (c) is now subsection (d).

(iv)    Defendants conduct violated Plaintiff's rights under the United States and New York Constitutions, and the New York State Civil Rights Law, *See* Points V, VI, respectively, *infra;*

(v)    Commissioner Lancaster's action were an intentional deprivation of Plaintiff's rights and actionable pursuant to 42 U.S.C. Section 1983, *See* Point VI, *infra;*

(vi)    Plaintiff is entitles to injunctive relief because he is likely to prevail on the merits, is suffering irreparable injury, and the balancing of hardships favors Plaintiff, *See* Point I, *infra;*

## BACKGROUND

### Plaintiff's License

Professional engineers in New York State are licensed, regulated, and disciplined by the NYSDOE, as are other licensed professionals such as physicians, nurses, pharmacists, psychologists, accountants, and architects.  Section 6503 of the New York State Education Law states as follows:

> Admission to the practice of a profession (1) entitles the licensee to practice the profession as defined in the article for the particular profession, (2) entitles the individual licensee to use the professional title as provided in the article for the particular profession, and (3) subjects the licensee to the procedures and penalties for professional misconduct as prescribed in this article (emphasis added).

Education Law Section 6504 states: "Admission to the practice of the professions (licensing) and regulation of such practice shall be supervised by the board of regents (section sixty-five hundred six) and administered by the education department (section sixty-five hundred seven), assisted by a state board for each profession (section sixty-five hundred eight)."

Under NYSDOE's rules and regulations, before the license of a Professional Engineer or other licensee can be revoked, the licensee is entitled to a full range of due process safeguards. These include: notice of charges; an appearance, with counsel, before a hearing panel, consisting of three or more members, at least two of whom must be members of the applicable state board for the profession; a review of the hearing panel's determination by the Board of Regent's

6

review committee, consisting of three members, at least one of whom shall be a regent, at which
meeting the licensee may appear with counsel; and a determination on the record made by the
review committee, which, if contrary to the hearing panel's determination, remands the matter
back to the hearing panel for another hearing. See N.Y. EDUC. LAW § 6510 (McKinney's 2006).

Plaintiff obtained Professional Engineer's license No. 065052 from NYSDOE in 1988.
He is the principal of JNS Engineers, P.C., an engineering firm employing approximately ten
persons. Since receiving his license, Plaintiff has practiced almost exclusively in New York City
and has filed thousands of applications with DOB. Pursuant to AC Section 27-140, applications
for approval of plans for new buildings or alterations must be submitted by licensed architects or
engineers. Thus, almost all of Plaintiff's practice relies upon his ability to file with DOB.

### Applicable DOB Rules, Regulations and Procedures

Pursuant to DOB's rules and procedures, there are four types of construction
applications:

- New Building (NB): for the construction of an entirely new structure;

- Alteration Type 1: for alteration work of such major scope that a new certificate of
  occupancy for the building is required; and

- Alteration Types 2 and 3: for minor alterations not requiring a new certificate of
  occupancy.

A BPP is an application for reconstruction or repair of sidewalk, curb, and a portion of
the street in front of a building or property. See DOB PPN# 6/97, AC Section 27-214. It can
either be filed alone as an Alteration Type 3 application, or as part of an NB or an Alteration
Type 1 application. In the latter instance, BPP need not be, and often is not, filed by the same
architect or engineer as the related NB or Alteration Type 1 application. In the instant case, for

the 91-99 South 3rd Street and 11 Lynch Street addresses, Plaintiff was the applicant for the BPP's only, for work on the curbs outside of the buildings; he had absolutely no involvement with the corresponding NB applications for the structures themselves.

Pursuant to DOB Directive 14 of 1975, a limited review procedure was established, under which DOB expedites approval of Alteration Type 2 and Type 3 applications by subjecting the applications to only a cursory review.

In 1995, DOB released PPN #2/95, which established a professional certification procedure under which applicants may receive expedited approval of applications of all types by certifying to DOB that he has exercised a professional standard of care when drafting or reviewing the plans and related applications. PPN #2/95 required DOB to perform a random audit of 20% of these applications.[9]  In 2004, DOB instituted PPN #1/04, which amended #2/95 in respects not relevant to the instant controversy. Thus, PPN #1/04 was the professional certification policy in effect at the time the two BPP applications were filed. The two BPPs at issue in this controversy, filed by Plaintiff for 91-99 South 3rd Street, Brooklyn, New York and 11 Lynch Street, Brooklyn, New York, on August 27, 2004 and November 18, 2004 respectively, were professionally certified Alteration Type 3 applications. The Alteration Type 2 application filed for 150 29th Street was not professionally certified, but was filed pursuant to Directive 14.

## Relevant Laws

The rules establishing OATH's jurisdiction to hold hearings regarding administrative charges brought by DOB are found in Title 1, Section 13-11 of the Rules of the City of New York ("RCNY"). Pursuant to 1 RCNY § 13-11, the presiding administrative law judge conducts the hearing and submits a report and recommendation to the Commissioner of DOB. The DOB

---

[9] DOB is currently reviewing all such applications, although it continues to expedite approvals.

Commissioner then makes a final determination based on the report of the administrative law judge.

At the time of the alleged misconduct by Plaintiff, DOB's sole jurisdiction over Plaintiff's ability to file applications with the agency was found in 1 RCNY §§ 21-01 and 21-02. After a hearing at OATH, the DOB Commissioner had the authority to revoke the privilege of a Professional Engineer to use DOB's limited review procedures. Under those sections of law, the Commissioner had absolutely no authority to prevent an engineer from filing applications with DOB under its normal review procedures. Under 1 RCNY § 21-01, after one year, the engineer could apply for re-instatement. If an engineer applied for re-instatement of his or her privileges, DOB bore the burden to show why his or her privileges should not be reinstated.[10]

## The AC Section 26-124 (c) Amendment

At the time Plaintiff committed the alleged misconduct, AC Section 26-124 read as follows:

> § 26-124. False statements in certificates, forms, written statements, applications, reports or certificates of correction.
>
> a. Any person who shall knowingly make a false statement or who shall knowingly falsify or allow to be falsified any certificate, form, signed statement, application, report or certification of the correction of a violation required under the provisions of this code or any rule or regulation of any agency promulgated thereunder, shall be guilty of a misdemeanor and upon conviction thereof, shall be punished by a fine of not less than one thousand dollars nor more than five thousand dollars, or by imprisonment not to exceed six months, or both.
>
> b. Such person shall also be liable for a civil penalty of not less than one thousand dollars

---

[10] 1 RCNY § 21-02 was promulgated in 1991, four years before DOB ever established its professional certification procedures. Plaintiff was originally charged under 1 RCNY § 21-02 in December 2004. The Rule was amended in February 2007. DOB amended its charges in March 2007 but failed to charge Plaintiff under the amended rules. In his Article 78 action in New York state court, Plaintiff challenges DOB's charges as failing to state a cause of action. However, relevant here is the fact that the Rule as changed in 2007 made no mention of professional certification. The Rule as amended added the language "professional certification" to the limited review privileges that could be revoked. Clearly, had DOB thought the prior Rule to cover professional certification, adding the language to the amended version would have been unnecessary. Thus, as Plaintiff was charged under the prior version of 21-02, it may very well be found that Commissioner Lancaster unlawfully revoked Plaintiff's professional certification privileges.

nor more than five thousand dollars which may be recovered in a proceeding before the environmental control board. In any such proceeding which relates to a false statement in a certification filed pursuant to section 26-126.2, if an inspection made within six months after the filing of the certification finds a condition constituting a violation which is the same as the condition described in the notice of violation with respect to which such certification was filed, there shall be a rebuttable presumption that the condition described in such notice of violation continued and is the same condition found in the inspection.

c. The provisions of this section shall apply with respect to any certificate, form, signed statement, application or report submitted to a not-for-profit corporation performing services on behalf of the department pursuant to article twenty-seven of subchapter one of chapter one of title twenty-seven of the code.

Thus, at both the time that Plaintiff allegedly committed the misconduct in 2004, and at the time that DOB served the charges, AC § 26-124(c) applied to intentional false filings by not only architects and engineers, but by any person. The penalties were limited to a criminal misdemeanor and a civil penalty. There was no notice of any prohibition that could result in derogation of the professional privileges of a Professional Engineer in his or her dealings with DOB.

On or about August 15, 2007, AC Section 26-124 was amended as follows:

Section 1. Subdivision c of section 26-124 of the administrative code of the city of New York is relettered subdivision d and a new subdivision c is added to read as follows:

c. In addition to any other penalty provided by law, the commissioner may refuse to accept any application or other document submitted pursuant to or in satisfaction of any requirement of this chapter or of chapter one of title twenty-seven of this code or any rule or regulation of any agency promulgated thereunder that bears the signature of any person who has been found, after a hearing at the office of administrative trials and hearings pursuant to the department's rules, to have knowingly or negligently made a false statement or to have knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application, report or certification of the correction of a violation required under the provisions of this chapter or of chapter one of title twenty-seven of this code or any rule or regulation of any agency promulgated thereunder.

Prior to August 15, 2007, no architect or engineer had notice that he or she could be punished for simple negligence by losing his or her ability to file applications with DOB – a sanction that effectively prohibits an engineer or architect from practicing his or her trade in New York City.

## ARGUMENT

### I. Plaintiff Is Entitled To A Preliminary Injunction

To be entitled to a preliminary injunction, a plaintiff must demonstrate "1) that it will be irreparably harmed if an injunction is not granted, and 2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balancing of hardships decidedly in its favor." Lusk v. Village of Cold Spring, 475 F.3d 480, 485 (2d Cir. 2007); Bronx Household Faith v. Bd. of Educ. of City of New York, 331 F.3d 342, 348-349 (2d Cir. 2003).

The Court should grant the preliminary injunction. As stated by Plaintiff in his affidavit, he will be irreparably harmed by the instantaneous loss of income, the inability to obtain new business and compete in New York City (where he has cultivated his practice for twenty years), and the substantial losses that will follow because of his inability to complete hundreds of applications for which he has already contracted.

The fact that the actions of Commissioner Lancaster and DOB are so unambiguously unconstitutional on their face shows that plaintiff is likely to succeed on the merits.

As the deprivation of Plaintiff's constitutional rights is at issue, and the ongoing viability of an entire engineering firm would be destroyed by the acts of Defendants, the questions going to the merits are clearly sufficiently serious.

The balancing of equities completely favors the Plaintiff. If Defendants are not enjoined, Plaintiff's firm will be driven out of business very quickly, depriving not only Plaintiff and his

11

family of their means of support, but also adversely affecting Plaintiff's ten employees and their families. Plaintiff also currently has approximately 200 pending applications before DOB. The civil liability Plaintiff will face for failure to complete these applications for which he has contracted is currently difficult to quantify, but certainly substantial. On the other hand, DOB faces no harm whatsoever if the injunction is granted. DOB has the authority to review every application filed with it, and has the further authority to deny or revoke any individual application that fails its audit. DOB currently has a program by which it automatically reviews all professionally certified applications. Thus, there is no harm whatsoever to DOB should the injunction be ordered.

## II. Legislation is Not Retroactive Absent a Clear Intent That it Be So Applied

As stated by the United States Supreme Court in Fernandez-Vargas v. Gonzales, 126 S.Ct. 2422, 2427-2428 (2006):

> Statutes are disfavored as retroactive when their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, supra, at 280, 114 S.Ct. 1483. The modern law thus follows Justice Story's definition of a retroactive statute, as "tak[ing] away or impair[ing] vested rights acquired under existing laws, or creat[ing] a new obligation, impos[ing] a new duty, or attach[ing] a new disability, in respect to transactions or considerations already past," Society for the Propagation of the Gospel v. Wheeler, 22 F.Cas. 756, 767 (No. 13,156) (CCNH 1814). Accordingly, it has become "a rule of general application" that "a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." United States v. St. Louis, S.F. & T.R. Co., 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435 (1926) (opinion for the Court by Brandeis, J.).

The amended provision at issue, AC § 26-124(c), contains no language whatsoever indicating a retroactive intent; thus, intent for it to apply retroactively cannot be inferred.

12

Furthermore, application of 26-124(c) in Plaintiff's case impaired rights which Plaintiff possessed when he acted, increased his liability for past conduct, imposed new duties, took away his vested rights, and attached a new disability.

## III. Amended AC Section 26-124(c) Establishes A New Penalty And Is Thus Not Remedial in Nature

Although remedial statutes can sometimes be applied retroactively, the amended provision is by no means remedial. Rather, it establishes a new penalty. "[S]tatutes which create a cause of action where none previously existed, or which create new liabilities or obligations, have generally been applied only prospectively." Buccino v. Continental Assur. Co., 578 F.Supp. 1518, 1527 (S.D.N.Y. 1983).

Labeling the amended provision "remedial" despite the new and more severe penalty does not, of course, make it "remedial". "Classifying a statute as "remedial" does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to "supply some defect or abridge some superfluity in the former law" Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577 (1998).

Commissioner Lancaster, in a press release dated October 26, 2007, referred to the provisions enactment as intended to "further deter abuses" and "disrupt the business models of those who intentionally or carelessly put the public at risk" Lancaster's own language clearly indicates that the intent of the amendment was to penalize and is evidence that her application of the amended provision to Plaintiff indicates an intentional deprivation of Plaintiff's rights.

Furthermore, labeling the provision remedial defies the plain language meaning of the word. According to Miriam Webster's Dictionary, "remedial" is defined as "intended as a remedy." Conversely, the same dictionary defines "penalty," in relevant part, as follows:

1: the suffering in person, rights, or property that is annexed by law or judicial decision to the commission of a crime or public offense 2: the suffering or the sum to be forfeited to which a person agrees to be subjected in case of nonfulfillment of stipulations 3 a: disadvantage, loss, or hardship due to some action

"Words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" Walters v. Metropolitan Educ. Enter., Inc., 519 U.S. 202, 207 (1997) (citing Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 388 (1993)). Clearly, under the dictionary definitions cited here, the prohibition provided by the amended provision is intended to punish wrongdoers.[11] As there is no indication that the legislative intent was anything but punitive,[12] and the plain language itself indicates that it is punitive, the provision is clearly punitive in nature and thus could not legally have been applied retroactively.

Plaintiff's case is analogous to the facts of Garcia v. Dept. of Educ. of the City of New York, No. 102974/2007, 2007 WL 4334781 (Sup. Ct. N.Y. County Nov. 15, 2007). In that case, the court found that demotion of a teacher was not remedial action, "as demotion takes the job away, as opposed to rehabilitating the person until he or she can fulfill the demands of the job." Garcia, 2007 WL 4334781 at *4. In the instant case, prohibiting the Plaintiff from filing any document or application whatsoever, and, in effect, summarily destroying his livelihood and practice, does not rehabilitate the Plaintiff.[13] By contrast, the penalty imposed by 1 RCNY § 21-02 is rehabilitative, in that it imposes the sanction of prohibiting him or her from taking

---

[11] It cannot seriously be argued that the provision intends to remedy a failure to establish a proper penalty in the New York City Administrative Code. As previously stated, DOB promulgated an amendment to 1 RCNY § 21-02 in February 2007, just a few months before the instant amendment was passed. Any correction as to penalties available regarding misconduct applicable to engineers was addressed in this amendment.

[12] In fact, the first line of the provision states "In addition to any other *penalty* provided by law" (emphasis added).

[13] Although Lancaster only applies the prohibition for a two-year period, as stated in Plaintiff's affidavit, his practice will be thoroughly destroyed within weeks if an injunction is not ordered. The two-year period in no way mitigates the penalty, as subsequent to the two-year prohibition, Lancaster imposes a three-year probation for which she can prohibit all future filings without a hearing. Thus, should Plaintiff somehow survive the two-year term of prohibition, and settle all inevitable lawsuits, after expending countless finances into reestablishing his practice, it can again be taken away at Lancaster's whim, setting off a new set of lawsuits.

advantage of DOB's limited review procedures, but allows him or her to apply for reinstatement

of those privileges after one year, and enables him or her to continue to practice in the meantime.

See 1 RCNY § 21-02 (e). Here, prohibition, much like demotion of a teacher in Garcia, offers no

remedial benefit and merely acts as a draconian penalty.

Even if the enacted provision were, *arguendo,* found to be remedial, it still would be

unconstitutional as applied to Plaintiff as derogative of his vested right to practice his trade and,

therefore, violative of his due process rights:

> Once licenses are issued, as in petitioner's case, their continued possession may become
> essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state
> action that adjudicates important interests of the licensees. In such cases the licenses are
> not to be taken away without that procedural due process required by the Fourteenth
> Amendment. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d
> 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This
> is but an application of the general proposition that relevant constitutional restraints limit
> state power to terminate an entitlement whether the entitlement is denominated a 'right'
> or a 'privilege.' Bell v. Burson, 402 U.S. 535, 539 (1971).

The Bell case involved the simple expedient of a state driver's license, and the United States

Supreme Court held that a Georgia motorist's license could not be taken away without

procedural due process.  The doctrine espoused in Bell applies with manifestly greater force in

Plaintiff's case, where the right at issue is a professional privilege based on a license for which

Plaintiff underwent years of rigorous study, and upon which Plaintiff justifiably relied in

building a professional practice.  As detailed *supra,* New York State Education Law section 6510

et seq. provides an exhaustive series of procedural safeguards before a license can be revoked,

including notice and several rounds of hearings, many of which involve review by professionals

holding the same license as the accused.  In the instant case, Commissioner Lancaster and DOB

took the drastic step of constructively revoking Plaintiff's licensure without the slightest due

process whatsoever.  At the time of the alleged wrongdoing three years ago, and during the

15

disciplinary proceedings brought by DOB before OATH, Plaintiff had notice only that his alleged wrongdoing might result in loss of his privileges to use DOB's limited review procedures as per 1 RCNY §§ 21-01 and 21-02. He had no notice whatsoever that Commissioner Lancaster might use AC § 26-124(c) to destroy any privileges he has to practice in New York City at all. Furthermore, the three-day OATH trial, before an administrative law judge who was not herself a Professional Engineer, did not remotely approach the panoply of due process protections afforded to licensees in state proceedings. In fact, Plaintiff was not even told at his OATH trial that he might suffer such a penalty. It is difficult to see how he might have been so apprised, as AC § 26-124(c) did not yet exist.

Plaintiff has enjoyed his right to practice engineering in New York City for over twenty years, and has filed literally thousands of applications with DOB without the slightest hint of wrongdoing. He has justifiably built his career, practice, and livelihood on this right. The doctrine of vested rights derives from the Due Process Clause of the Fourteenth Amendment, and involves the concept of "fundamental fairness" which is essential to the very concept of justice. See Walter F. Witt, Jr., Vested Rights in Land Uses – A View from the Practitioner's Perspective, 21 Real Prop., Prob. & Tr. J. 317, 320 (1986).

Plaintiff's right to practice engineering in New York City under AC § 27-140 is a vested right which cannot be taken away without due process. Commissioner Lancaster's application to Plaintiff of AC § 26-124(c) constructively destroys that right. The actions of Commissioner Lancaster and DOB based upon a statute which was not in existence at the time either of Plaintiff's alleged wrongdoing or his trial, taken without any procedural safeguards akin to those used by the body issuing Plaintiff's license in the first place, constitute a violation of Plaintiff's

16

rights under the Due Process Clause of the Fourteenth Amendment. Thus, *arguendo,* even if AC § 26-124(c) is deemed "remedial," it cannot be applied retroactively.

Lancaster's prohibition takes away this vested right without due process and thus, falls into that category of statutes which, even if remedial, cannot be applied retroactively.

## IV. The Amended Provision Is Inapplicable To The BPP Applications

The express language of the amended AC § 26-124(c) applies to engineers found to:

> have knowingly or negligently made a false statement or to have
> knowingly or negligently falsified or allowed to be falsified any
> certificate, form, signed statement, application, report or certification of
> the correction of a violation <u>required under the provisions of this chapter
> or of chapter one of title twenty-seven of this code or any rule or
> regulation of any agency promulgated thereunder</u> (emphasis added).

The photographs alleged to have been "doctored" by Plaintiff were not required by any provision of chapter 26 or 27 of the AC, or any rule or regulation of any agency promulgated thereunder. The requirement of the submission of photos was established only under DOB PPN #6/97, which is not a rule or regulation of DOB legally promulgated as per this section, but rather is merely an internal DOB memorandum providing guidance to applicants. As such, Plaintiff's alleged misconduct was not pursuant to any requirement of either chapter 26 or 27 or of any other rule or regulation. In fact, DOB's own expert witness testified at trial that the requirements of PPN # 6/97 are no longer followed, and that he was unsure as to what DOB's established policy currently is.[14]

---

[14] In fact, it was established during Plaintiff's OATH trial that the PPN required only 35 mm photos and DOB regularly accepts digital photos which are clearly capable of being manipulated.

17

## V. Application Of The Amended Provision Was *Ex Post Facto* And Thus Unconstitutional

Defendants' retroactive application of the provision was *ex post facto*. The United States

Constitution's prohibition against *ex post facto* laws applied to those laws which are penal or

criminal in nature. In <u>Doe v. Pataki</u>, 120 F.3d 1263 (2d Cir. 1997), the Second Circuit defined

punishment, as it relates to ex *post facto* laws, as follows:

> "Punishment"-along with its many cognates and synonyms, for instance, "penal," "punitive," "penalty," and "criminal"-is an imprecise concept with meanings that vary depending on the purpose for which the concept is defined. A standard dictionary definition states that to "punish" is to "impose a penalty (as of pain, suffering, shame, strict restraint, or loss) upon for some fault, offense, or violation." *Webster's Third New International Dictionary* 1843 (1993). Somewhat less circular but perhaps no more illuminating definitions can be found in the legal literature, *see, e.g.,* Note, *Toward a Constitutional Definition of Punishment,* 80 Colum. L.Rev. 1667, 1678-81 (1980) ("Punishment is the deprivation of legal rights in response to a prior offense for the purpose of deterrence and social condemnation."), and the philosophical literature, *see, e.g.,* Joel Feinberg, *The Expressive Function of Punishment, reprinted in The Philosophy of Law* 636 (4th ed.1991) ("Punishment is a conventional device for the expression of attitudes of resentment and indignation, and of judgments of disapproval and reprobation, either on the part of the punishing authority himself or of those in whose name the punishment is imposed.") (quotations omitted). For the precise purpose of determining whether a retroactively imposed burden constitutes "punishment" within the meaning of the Ex Post Facto Clause, the Supreme Court has instructed that we should focus our attention on the twin purposes to be served by this constitutional prohibition. First, the Clause ensures that legislative acts "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." <u>Weaver v. Graham</u>, 450 U.S. 24, 28-29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Second, the Clause erects a barrier to legislative abuses in the form of arbitrary or vindictive legislation directed against disfavored groups. <u>See Miller v. Florida,</u> 482 U.S. 423, 429, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987).

18

Doe, 120 F.3d at 1272-73.  Although not criminal, AC § 26-124(c) is clearly penal in nature, as it inflicts punishment, as do subsections (a) and (b) AC § 26-124 (criminal misdemeanor and civil financial penalty, respectively).  In fact, AC § 26-124(c) expressly states: "in addition to any other *penalty* provided by law" (emphasis added).

In Helwig v. United States. 188 U.S. 605 (1903), the United States Supreme Court held:

> Although the sum imposed by reason of undervaluation may be simply described as 'a further sum' or 'an additional duty,' if it is yet so enormously in excess of the greatest amount of regular duty ever imposed upon an article of the same nature, and it is imposed by reason of the action of the importer, such facts clearly show it is a penalty in its intrinsic nature, and the failure of the statute to designate it as a penalty, but describing it as 'a further sum,' or 'an additional duty,' will not work a statutory alteration of the nature of the imposition, and it will be regarded as a penalty when by its very nature it is a penalty. It is impossible, judging simply from its language, to hold this provision to be other than penal in its nature.

As in Helwig, any attempt to label AC § 26-124(c) as other than a penalty would not change the inherent penal nature of the provision.

In Cummings v. Missouri, 71 U.S. 277 (1866), the United States Supreme Court found:

> The disabilities created by the constitution of Missouri must be regarded as penalties-they constitute punishment. We do not agree with the counsel of Missouri that 'to punish one is to deprive him of life, liberty, or property, and that to take from him anything less than these is no punishment at all.' The learned counsel does not use these terms-life, liberty, and property-as comprehending every right known to the law. He does not include under liberty freedom from outrage on the feelings as well as restraints on the person. He does not include under property those estates which one may acquire in professions, though they are often the source of the highest emoluments and honors. The deprivation of any rights, civil or political, previously enjoyed, may be punishment, the circumstances attending and the causes of the deprivation determining this fact.

19

> Disqualification from office many be punishment, as in
> cases of conviction upon impeachment. Disqualification
> from the pursuits of a lawful avocation, or from positions
> of trust, or from the privilege of appearing in the courts, or
> acting as an executor, administrator, or guardian, may also,
> and often has been, imposed as punishment.

Moreover, in <u>United States v. Ward</u>, 448 U.S. 242 (1980), the United States Supreme Court

stated that "where Congress has indicated an intention to establish a civil penalty, we have

inquired further whether the statutory scheme was so punitive either in purpose or effect as to

negate that intention." The Court turned to the factors it had established in <u>Kennedy v.

Mendoza-Martinez</u>, 372 U.S. 144 (1963):

> Whether the sanction involves an affirmative disability or
> restraint, whether it has historically been regarded as a
> punishment, whether it comes into play only on a finding of
> scienter, whether its operation will promote the traditional
> aims of punishment-retribution and deterrence, whether the
> behavior to which it applies is already a crime, whether an
> alternative purpose to which it may rationally be connected
> is assignable for it, and whether it appears excessive in
> relation to the alternative purpose assigned are all relevant
> to the inquiry, and may often point in differing directions.

<u>Ward</u>, 448 U.S. at 247, fn 7. [15] The factor most closely related to the instant controversy is

whether "it appears excessive in relation to the alternative purpose assigned." Even if

Defendants were to allege a remedial effect for AC § 26-124(c), the penalty is still extreme.

Under laws already in existence at the time of passage of AC § 26-124(c), an engineer convicted

of knowingly making false statements stands to lose his or her limited review privileges under 1

RCNY § 21-02; faces conviction on a criminal misdemeanor, with up to six months

imprisonment and a penalty of up to five thousand dollars under AC § 26-124 (a); and an

additional civil penalty of up to five thousand dollars under AC § 26-124(b). If an engineer is

merely negligent in making false statements, he or she of his limited review privileges under 1

---

[15] The <u>Ward</u> court did not necessarily consider the list of Martinez factors to be exhaustive or dispositive. <u>Id</u>.

RCNY § 21-02. Depending on the nature of an engineer's practice, loss of privileges under 1 RCNY § 21-02 might put him or her at a competitive disadvantage and add to his or her cost of doing business by forcing him or her to undergo more lengthy approval processes at DOB. This penalty more than fits an act of mere negligence.

DOB's expert witness at Plaintiff's OATH hearing testified that <u>over 57%</u> of DOB's audits of professionally certified applications result in objections, whereby DOB rejects part of an application because the architect or engineer did not comply with a law, rule, or regulation.[16] Clearly, an architect or an engineer must have been negligent, at the very least, in order to engender an objection, and yet over half of all DOB applications raise objections. As there is no statue of limitations on administrative actions, DOB Commissioner Lancaster, if allowed to apply AC § 26-124(c) retroactively, could put any architect or engineer ever disciplined by OATH out of business in New York City indefinitely, for the slightest indiscretion, no matter how long ago committed, despite the fact that the architect or engineer would not have had notice of such a potential penalty at the time of the negligence or wrongdoing. This is the essence of an *ex post facto* penalty, and it is thus a deprivation of constitutional rights.[17]

The basis for this reasoning is rather obvious. As stated in <u>People v. Oliver</u>, 1 N.Y.2d 152 (1956):

> The rule recognizes that people guide their affairs in the light of existing laws and that it would be unfair to defeat the expectations, rights and liabilities arising under those laws by subsequent retroactive changes. Particularly in the area of criminal law, statutes which condemn an act innocent when done, or increase the punishment for previously

---

[16] It must be noted that Plaintiff was found negligent for failing to notice "doctored" areas in photographs that were peripheral and tangential. The photographs supported Plaintiff's BPP applications for work done to curbs at two Brooklyn locations. DOB never alleged that the photographs incorrectly showed the condition of the curbs themselves; in fact, DOB signed off on the jobs based on the photographs. The allegedly "doctored" areas involved buildings and streets to either side of the curbs themselves.

[17] U.S. CONST. art. 1, § 10. Although AC § 26-124(c) is a provision of the New York City Administrative Code, it was enacted by the New York State Legislature. 2007 N.Y. Laws 542 (see Exhibit D).

committed crimes, have always been regarded as oppressive and prohibited, as ex post facto laws, by the Federal Constitution. (U. S. Const., art. I, § 10).

The most extreme penalty Plaintiff was on notice of facing when he allegedly committed the negligent acts was revocation of his limited review privileges with possible re-instatement for one year. He thus "guided his affairs in light of the existing laws."[18]

Defendants have deprived and continue to deprive Plaintiff of his right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by discriminating against Plaintiff in their application of the laws of the City of New York. No other engineer or architect disciplined by Defendants have had this amended provision applied to them. DOB lists all its disciplinary actions against architects and engineers on its public Web site.[19] DOB has not applied this severe sanction to any other architect or engineer, despite the fact that some have admitted to wrongdoing of far greater severity, including acts which directly threaten the safety of the public generally.[20] Commissioner Lancaster claims the authority to apply this provision retroactively, and it is disturbing that no other architect or engineer has been subjected to this provision except Plaintiff. Thus, Plaintiff has been treated in a separate and distinct manner from all other architects and engineers licensed in the State of New York. This separate and unequal treatment if a violation of Plaintiff's right to equal protection of the laws.

---

[18] Plaintiff had no notice that 26-124(c) would be applied, as it had not been enacted. It is entirely possible that an who did not, as a matter of course, use DOB's limited review procedures conceivably might not challenge a charge under 1 RCNY § 21-02 and might choose to default. Such an engineer would now face the prospect of being put out of business, contrary to his or her understanding. Clearly this draconian result was not the intention of the legislature.

[19] See http://www.nyc.gov/html/dob/html/licenses/pera.shtml.

[20] There was possibility of any harm to the public resulting from Plaintiff's alleged misconduct. In fact, the BPPs received final approval from DOB before Plaintiff's hearing even began.

## VI. Defendant Lancaster's Intentional Act is Actionable Under 42 U.S.C 1983

As stated previously, Commissioner Lancaster's own language used in her press release indicates that she and DOB intended AC § 27-140(c) to be a penalty. Counsel for Plaintiff informed the Inspector General and Senior Counsel of DOB that *ex post facto* application of the section was unconstitutional. Furthermore, Plaintiff expressly stated the same in his January 2, 2008 letter to Commissioner Lancaster. Nevertheless, Lancaster retroactively applied the provision and prohibited Plaintiff from filing any application with her agency. Thus, under color of law, Lancaster intentionally deprived Plaintiff of his constitutional right to due process. As such, she is personally liable for all available remedies under that provision of law.

## CONCLUSION

For the foregoing reasons, Plaintiff request that the Court issue a preliminary and permanent injunction on the terms set forth on the attached proposed order, and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
    January 22, 2008

Stuart A. Klein, Esq.
Attorney for Plaintiff
99 Madison Avenue, 11th Floor
New York, NY 10016
Telephone: (212) 564-7560
Facsimile: (212) 564-7845

23