UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LEON ST. CLAIR NATION

                Plaintiff,

             -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER,
                Defendants.
-------------------------------------------------------------------X

08-CV- 00862

**REPLY TO THE
DECLARATION OF
LOUISE MOED IN
OPPOSITION TO
PLAINTIFF'S MOTION
FOR A PRELIMINARY
INJUNCTION**

       Plaintiff Leon St. Clair Nation, (hereinafter "Plaintiff"), by the undersigned attorneys,

replies to the allegations incorporated in the Defendants' Declaration in Opposition to Plaintiff's

Motion for a Preliminary Injunction, Declaration of Stephen P. Kramer, and the accompanying

Memorandum of Law and exhibits.

### Defendants' Claim that *Ex Post Facto* Applies Solely to Criminal Statues is Erroneous

       1.      As stated in Plaintiff's moving papers, the doctrine of *ex post facto* applies not

only to criminal statutes, but to any statue that imposes a penalty.  In Helwig v. United States,

188 U.S. 605 (1903), the Court stated that "the failure of the statute to designate it as a penalty,

but describing it as 'a further sum,' or 'an additional duty,' will not work a statutory alteration of

the nature of the imposition, and it will be regarded as a penalty when by its very nature it is a

penalty. It is impossible, judging simply from its language, to hold this provision to be other than penal in its nature." The statute in question was found to be in the nature of an *ex post facto* penalty, and it was in the nature of an administrative regulation.[1] See also U.S. v. Ward, 448 U.S. 242, 248-249 (1980) ("where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention"); Doe v. Pataki, 120 F.3d 1263 (2d Cir. 1997).

## Application of *Landgraf v. USI Film Products* To The Instant Case Favors Plaintiff

2.    Defendants cited to Landgraf v. USI Film Products, 511 U.S. 244 (1994), upon which Plaintiff relies as well. Whether or not this Court agrees that civil statutes can be *ex post facto*, the reasoning of Landgraf supports Plaintiff's position that the legislation at issue cannot be applied retroactively. The United States Supreme Court held in Landgraf: "The presumption against statutory retroactivity is founded upon elementary considerations of fairness dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly" (emphasis added). See also Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result"); People v. Oliver, 1 N.Y.2d 152 (1956) ("People guide their affairs in the light of existing laws and that it would be unfair to defeat the expectations, rights and liabilities arising under those laws by subsequent retroactive changes").

---

[1] The facts in Helwig dealt with a dispute between an importer and the customs service over the valuation of an importation of wood pulp. The "penalty" was the addition of a 2% charge to a customs fee for every 1% of the difference in claims valuations. Id. It beggars logic that Defendants' action in seeking to deny Plaintiff his livelihood would not in the nature of a "penalty," when an assessment of a few hundred or a few thousand dollars in an administrative proceeding would be a "penalty."

3.      As retroactivity is so strongly disfavored under both Federal and New York State law, the issue then becomes whether there is a clear legislative intent to apply the statute retroactively. The statute itself, New York City Administrative Code ("AC") 26-124(c), contains no such express language, nor any language from which retroactivity can be implied. Even though Defendants worked collaboratively with the state legislature in enacting the provision and thus had access to the full legislative history, Defendants failed to cite to any legislative history supporting retroactive application of the penalty contained. Instead, Defendants argue, unpersuasively, that since the language of the statute states that it can be applied "as an additional penalty[2]," retroactive applicability is justified by "the clear wording of the statute" (Def. Memo. of Law, p. 6). However, it is a matter of plain construction of common language to point out that that whether or not a penalty is deemed to be *additional* has no bearing whatsoever on whether or not is to be applied *retroactively;* to observe that a new statutory penalty is an increase or a furtherance of an existing one says absolutely nothing at all about whether or not the new penalty is to be applied to deeds that have already happened. Furthermore, Defendants rely on the tortured, conclusory argument "nothing in the language . . . precludes its application in pending cases" (Def. Memo. of Law, p. 6). This argument completely misapprehends the relevant standard: the assumption is that retroactive application is disfavored, and intent to make the penalty retroactive must be clearly discernable from the intent of the legislature. Defendants do not, and cannot, make such a showing here.

4.      Annexed as Exhibit A are the New York State Senate Introducer's Memorandum in Support, and, the Division of the Budget Bill Memorandum relating to the amendment at issue from the legislative history for New York 2007 Session Law Chapter 542, which eventually was

---

[2] Significantly, despite Defendant's contention that the measure in question is not a "penalty," the statute itself uses that word. N.Y. CITY ADMIN. CODE § 26-124(c).

3

enacted as AC §26-124(c) . Nowhere in either document is there any reference, express or implied, that the New York State Legislature intended the amendment to be applied retroactively.

5.     Defendants' counsel appears to read the statute to apply to "pending" cases, although no such language appears in the statute itself.  Through this interpretation, Defendants apparently concede that retroactive application of AC §26-124(c) would have been unlawful had the Commissioner of Defendant New York City Department of Buildings ("DOB") issued her final determination prior to the effective date of the amendment.  However, Defendants make a baseless distinction between "pending" cases and those in which the alleged wrongdoing occurred before passage of the statute in question.  As the United States Supreme Court and the New York Court of Appeals held, in Landgraf and Oliver respectively, citizens guide their affairs based upon existing laws and act accordingly.  The laws in existence at the time of the alleged wrongdoing govern.  It is irrelevant that final resolution of an open administrative proceeding may have been pending in an open administrative hearing before passage of the new law. Defendants' argument regarding "pending" cases is without merit.

6.     Annexed as Exhibit B is the adoption of an amendment to Title 1, Sections 21-01 and 21-02 of the Rules of the City of New York ("RCNY").  1 RCNY § 21-02 is the rule under which Plaintiff was originally charged.  DOB proffered charges against Plaintiff under this rule on or about December, 2006.  The amendment to these rules was effective as of February, 2007. Defendant DOB moved to amend the charges against Plaintiff on or about March, 2007 to alter certain factual elements of the charges unrelated to the amendment of the rule.  Administrative Law Judge Kara Miller granted DOB's motion to amend the charges in March, 2007.  However, the amended charges against Plaintiff failed to take into account the changes to the rule that had

4

been promulgated after DOB had initially charged Plaintiff under the older version of the rule.

The version of 1 § RCNY 21-02 for which Plaintiff was charged contained subsection (e) which

stated as follows:

> Review of Determination. At the expiration of one year
> from the date of the initial determination to exclude an
> architect or engineer from participation in the procedures
> for limited supervisory check of applications and plans, and
> at intervals of no more than six months thereafter, upon
> request of the architect or engineer, the Commissioner shall
> re-examine such determination. If the architect or engineer
> has not committed any of the acts described in Section 21-
> 02 (b)(2) or (3) during such period and applications and
> plans submitted by him or her during such period which
> were subject to complete examination by the Department
> demonstrate adequate knowledge of the Building Code,
> Multiple Dwelling Law, Labor Law and the Zoning
> Resolution and the Commissioner determines that it would
> be in the public interest to do so, he or she may rescind
> such determination. In making such decision, the
> Commissioner may consider any relevant documents
> submitted by the applicant bearing upon his or her
> capability to resume participation in the procedures for
> limiters supervisory review.

Thus, the most severe penalty that existed at the time that charges were initially brought against

Plaintiff was removal from DOB's limited review procedures, with the right to seek a rescission

of the determination. The language of the rule as it existed at that time clearly implies that the

burden shifts to the DOB Commissioner to justify not effectuating that rescission. If denied,

Plaintiff would then have the right at six-month intervals to continue to seek a rescission.

Because this is the penalty that was encoded into 1 RCNY § 21-02 at the time of the initial

charges, this is the regulatory scheme that should have been employed in DOB's discipline of

Plaintiff, not the excessive penalty imposed against Plaintiff under AC § 26-124(c).

5

As stated in Plaintiff's moving papers and Plaintiff's affidavit, the imposition of AC § 26-124(c) will cause immediate and irreparable financial harm. Contrast this penalty with that which Plaintiff had notice of when the acts were committed, and it is clear to see why the <u>Landgraf</u> court held that "elementary considerations of fairness dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."[3]

7.     Furthermore, prior to the hearing at OATH, DOB offered Plaintiff the opportunity to enter into a stipulation under which Plaintiff would have plead guilty to the charges under 1 RCNY § 21-02 and avoided an OATH hearing. Plaintiff instead chose to contest the charges at OATH. However, by its terms, AC § 26-124(c) applies only to those individuals found guilty after an OATH hearing. Had Plaintiff been aware of the possibility that he might face the utter destruction of his engineering practice under AC § 26-124(c), Plaintiff may well have chosen to accept DOB's offer of stipulation and the attendant penalty of loss of DOB limited review privileges for a certain time.[4] However, as AC § 26-124(c) had not yet been enacted, it was impossible for Plaintiff to make an informed decision at the time that the stipulation was offered. Plaintiff's dilemma plainly demonstrates exactly why retroactive application of statutes works a grave injustice and why it is disfavored unless explicitly provided for by the legislature.

### The *Landgraf* Analysis

8.     Defendants correctly cite the <u>Landgraf</u> standard: a statute will be applied retrospectively if 1) the legislature has evidenced a clear intent to so apply it, and 2) if not, whether the provision impairs a vested right, changes the substantive law relative to underlying

---

[3] Plaintiff intends to press this argument regarding the wrong version of RCNY vigorously in his proceeding to overturn the determination of DOB and OATH under Article 78 of the New York Civil Practice Law and Rules.
[4] This is not to imply that Plaintiff admits any wrongdoing. Indeed, in his Article 78 proceeding, he intends to challenge the finding of OATH and DOB that any wrongdoing occurred whatsoever. However, it is common practice in administrative proceedings in commercial and professional contexts for respondents to undertake a cost-benefit analysis and stipulate to lesser charges or to enter pleas of no contest rather than to incur the risk, expense, and distraction of a protracted administrative hearing process.

liability, subjects a person to a deprivation of due process, or otherwise work a fundamental injustice. That there is no evidence of any legislative intent to apply the statute retroactively has been argued extensively here and in Plaintiff's moving papers. The rest of the factors identified by Defendants will be analyzed individually.

### AC § 26-124(c) Impairs Plaintiff's Vested Right

9.    Defendants assume, without elaboration, that Plaintiff does not have a vested right in his license to practice engineering (Def. Memo. of Law, p. 7). The only authority cited by Defendants, United States v. Little Lake Misere Land Co., 412 U.S. 580, 586 (1973), does not support their contention, but only shows that "nothing more than a mere expectation, or hope, based upon an anticipated continuance of applicable general laws. . . .[a] mere expectancy. . . cannot be regarded as a vested right protected by the Constitution." Id. at 586.

10.    Defendants' analysis fails on two counts. First, Plaintiff's right to practice engineering pursuant to his license is obviously not a "mere expectancy" or a "hope." Second, in arguing that Plaintiff has no vested right, Defendants do not actually attempt to define what a "vested right" might be. Another case from the United States Supreme Court provides the definition:

> A 'vested right' is defined by Fearne, in his work upon Contingent Remainders, as 'an immediate, fixed right of present or future enjoyment'; and by Chancellor Kent as 'an immediate right of present enjoyment, or a present, fixed right of future enjoyment.' 4 Kent, Comm. 202. It is said by Mr. Justice Cooley that 'rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.' Const. Law, 332.

> Pearsall v. Great Northern Ry. Co., 161 U.S. 646, 673 (1896).

Here, Plaintiff's right to practice engineering is certainly not "contingent," or coming into existence upon the occurrence of a future event. Plaintiff has had his license since 1988. Nor is Plaintiff's right "expectant." It is bottomed on Plaintiff's fulfillment of a rigorous course of study, passage of an examination, and continued demonstration of professional skill and competence. Some courts have observed that, upon licensure by state authorities, a right to practice a profession such as medicine (and by extension, engineering) may vest. Marburg v. Cole, 286 N.Y. 202, 206 (1941). A vested right in New York has been held to be "a property interest so substantial in character that its destruction or deprivation cannot be justified by the objectives in view." Vernon Manor Co-op Apartments v. Salatino, 15 Misc. 2d 491 (County Ct. Westchester County 1958). The disproportionate penalty imposed on Plaintiff – constructive destruction of his practice by taking away his right to file in New York City, without due process– certainly is not justified by whatever objectives DOB may have.

### AC § 26-124(c) Is A Change in Underlying Substantive Law

11.     Defendants' claim that AC § 26-124(c) as amended is not a change in the substantive law relative to underlying liability is astonishing. Prior to the amendment, the only penalty Plaintiff could possibly have faced for negligent acts was the removal from limited review procedures under RCNY 21-02. Had Plaintiff acted intentionally, he would have faced removal from limited review, and pursuant to AC Section 26-124(a) and (b), could have faced criminal and civil penalties as well. The amendment added a drastic penalty to the Administrative Code for negligent acts which previously did not exist. Clearly, this is a change in the underlying substantive law. "To supply a remedy where previously there was none of any kind, is to create a right of action." Jacobus v. Colgate, 217 N.Y. 235 (1916). Defendants' claim that this is not a change of substantive law is transparently absurd.

8

## DOB's Application AC § 26-124(c) Subjects Plaintiff to a Deprivation of Due Process And Works a Fundamental Injustice

12.    Annexed as Exhibit C are three stipulations entered into by professional engineers and Defendant DOB for various alleged wrongdoings.  One, effective January 2006, imposed a five-thousand dollar fine, a one-year suspension of Directive 14 privileges (not professional certification),[5] and an express guarantee by DOB that it would not refer the matter to the New York State Education Department (the agency charged with licensing and regulating engineers) or to any other city or state regulatory agency (BSIU Case No. 0505017). The wrongdoing to which the engineer pled guilty in that case was his self-certification of an application for the installation of underpinning when he had not reviewed the application.  Underpinning is structural support for a building which inherently involves issues of structural stability and public safety.  As per the charges, the applicant never inspected the underpinning, nor did DOB, since the applicant certified that he had, in fact, inspected it.  For this act of intentional wrongdoing which may well have led to the loss of human life, DOB issued the above-referenced penalty and agreed not to refer the matter to any other disciplinary authority. However Plaintiff was found guilty of two instances of negligence regarding the submission of photographs of sidewalk curbs to DOB which had allegedly been altered, and one instance of negligently filing an Alteration Type 2 application instead of an Alteration Type 1.  DOB did not even allege that the work on the curbs or on the building covered by the alteration application had been performed improperly or unsafely, nor was it found that Plaintiff had knowingly acted wrongfully, but merely that Plaintiff had failed to notice certain irregularities in the documents

---

[5] As stated in Plaintiff's moving papers, Directive 14 privileges and professional certification are the two privileges for architects and engineers filing with DOB that are collectively known as "limited review procedures" under 1 RCNY § 21-02.  In this stipulation, one privilege was suspended, but not the other.

9

supplied to him by others that he had submitted to DOB.[6]   Such a disproportionality in penalties is shocking to the conscience.

13.     Another stipulation involved the filing of a false application (BSIU Case No. 0409086). This stipulation was signed by the DOB Commissioner <u>after</u> the amendment to 26-124(c) took effect, and despite the guilty plea of the engineer in that case, a mere five-thousand dollar fine was imposed.  The third stipulation involved a guilty plea to filing an alteration type 2 instead of the required alteration type 1, as was alleged against Petitioner. The DOB Commissioner imposed a five-thousand dollar fine; a one-year probation on professional certification only (not directive 14 applications) and again agreed not to refer the matter to the New York State Education Department or any other regulatory agency. Yet another stipulation (IAD Case No. AE05-03) imposed a one-thousand dollar fine and one year of probation for falsely certifying that the work and materials conformed to the approved plans and failed to file an amendment indicating as-built conditions.  The respondents in these cases committed wrongdoing far more severe than that attributed to Plaintiff, and yet the penalties imposed against Plaintiff amount to a total destruction of his engineering practice, whereas these penalties are, relatively speaking, "a slap on the wrist."

14.     Defendants claim that the imposition of the prohibition is necessary as "he threatened public safety" (Kramer declaration, paragraph 18).  This statement is absurd.  It cannot be emphasized enough that, even if the findings of DOB Commissioner Lancaster and OATH ALJ Miller are construed most harshly against Plaintiff, no threat to public safety was

---

[6] DOB alleged that photographs of two curbs submitted by Plaintiff had been "doctored," but the alleged "doctoring" did not even cover the curbs themselves, but peripheral areas of the photographs.  With regard to the Alteration Type 2 application, DOB alleged that Plaintiff should have visited the site to confirm the information contained about the building in city records upon which he relied, despite the fact that no statutory duty exists for an engineer to make such site visits, and many engineering jobs are successfully filed without the engineer ever making a site visit.

proven or even alleged. DOB approved the work that was done on the sidewalk curbs at 91-99

South 3rd Street and 11 Lynch Street for which Plaintiff submitted applications. With regard to

the building at 150 29th Street, DOB only alleged that Plaintiff negligently used the wrong form

of application for a renovation; no safety issues in design or construction were proven or even

alleged. Plaintiff's punishment is so disproportionate as to shock the conscience.

15.    Also incorporated in Exhibit C is a complete list of disciplinary actions taken by

DOB against architects and expediters since 1998. Despite public outrage against DOB and

Commissioner Lancaster over a series of high-profile construction accidents, only one other

architect or engineer besides Plaintiff has been revoked since 2003[7].

16.    Annexed as Exhibit D is a list of all disciplinary actions taken against engineers

by the New York State Education Department since May 2006, when Plaintiff stood trial at

OATH. In the absence of a handful of engineers who committed major felonies, no licenses

were revoked. The average penalty for filing false or inaccurate documents was a fine of a few

thousand dollars and a stayed suspension. This was true even in cases where engineers

knowingly submitted false filings. Again, OATH and DOB only found that Plaintiff had been

negligent.

17.    Given the disproportionate penalty imposed on Plaintiff, despite far more

egregious offenses by other similarly situated, the prohibition does rise to the level of a violation

of substantive due process, manifest and fundamental injustice. Thus, the imposition of AC § 26-

124(c) to the facts of Plaintiff's case is so disproportionate as to shock the conscious. See Pena v.

Deprisco, 432 F.3d 98, 112 (2d Cir. 2005).

---

[7] That case involved an architect knowingly admitting filing numerous false statements as a means of civil protest against DOB, see OATH Index #190/02 .

## DEFENDANTS FAIL TO IDENTIFY HOW THE STATUTE AT ISSUE IS REMEDIAL

18.    Defendants continue to assert, without explanation, that AC § 26-124(c) is remedial and thus can be applied retroactively. Defendants sometimes claim that the statute is remedial as to its effect on the Plaintiff: "a period of close supervision could be remedial for plaintiff." (Kramer Declaration, paragraph 35). As argued in Plaintiff's moving papers, see Garcia v. Dept. of Educ. Of the City of New York, 2007 WL 4334781 (Sup. Ct. N.Y. County 2007) destroying Plaintiff's practice does not rehabilitate him. Although DOB Commissioner Lancaster only applies the prohibition for a two-year period, as stated in Plaintiff's affidavit, his practice will be thoroughly destroyed within weeks if an injunction is not ordered. The severity of the penalty is not mitigated by the fact that it is only applied for two years, for Commissioner Lancaster also imposes a three-year probation during which DOB can prohibit all filings without a hearing. Thus, should Plaintiff somehow survive the two-year term of prohibition, and settle all lawsuits from his clients for breach of his contractual obligations to them, and expend untold thousands of dollars to re-establish his practice, his right to practice in New York City could be again taken away at the whim of the Commissioner.   The penalty imposed by 1 RCNY § 21-02 does offer such rehabilitation in that after an applicant loses his limited review privileges for a year, he or she may apply for re-instatement, and may continue to do so at six-month intervals. See 1 RCNY § 21-02(e).  In Garcia, it was held that demotion of a teacher was not remedial action, as demotion takes the teachers' job away, as opposed to rehabilitating the teacher until he or she can fulfill the demands of the job. Here, prohibition, much like demotion, offers no remedial benefit and merely acts as a penalty.

19.    Defendants also claim that the amendment "provided additional remedial measures with respect to the filing of false statements to the Department" (Kramer Declaration, paragraph 13). As already argued, the addition of a new penalty based upon a new standard is not remedial in nature. If Defendants' position is to be taken seriously, every amendment to every existing piece of legislation would be considered remedial – an absurd result. Furthermore, as is clearly indicated by Exhibit B, the February 2007 amendment to 1 RCNY §§ 21-01 and 21-02 was intended to be remedial in nature with regard to discipline for architects and engineers violating limited review procedures. It repealed subsection (e) removing the right to seek re-instatement, added new, more specific types of misconduct for which an engineer could be charged, and amended the existing procedures. By contrast, by its own plain terms, the intent of AC § 26-124(c) was to provide "an additional penalty."

20.    In <u>Majewski v. Broadalbin-Perth Cent. School Dist.</u>, 91 N.Y.2d 577, 583 (1998), it was held:

> While the fact that a statute is to take effect immediately
> "evinces a sense of urgency," "the meaning of the phrase is
> equivocal" in an analysis of retroactivity (*Becker v Huss
> Co.,* 43 NY2d 527, 541). In fact, we noted in *Becker* that
> "[i]dentical language in other acts has not been enough to
> require application to pending litigation" (*id.,* at 541). Here,
> the significance of the effective date upon our analysis of
> the reach of the subject provisions is further obscured
> because the Legislature explicitly designated prospective or
> retroactive application for other provisions of the Act not at
> issue here (L 1996, ch 635, § 90). Under the circumstances,
> the proviso that the subject provisions were to "take effect
> immediately" contributes little to our understanding of
> whether retroactive application was intended on the issue
> presented. . . However, such construction principles are
> merely navigational tools to discern legislative intent.
> <u>Classifying a statute as "remedial" does not automatically
> overcome the strong presumption of prospectivity</u> since the
> term may broadly encompass any attempt to "supply some
> defect or abridge some superfluity in the former law"

(McKinney's Cons Laws of NY, Book 1, Statutes § 321).
(emphasis added).

In the instant case, the only indica of it being "remedial" is Defendants self-serving statements

that it is.

### Defendants' Claim That No Procedural Due Process Violation Occurred Is Erroneous

21.    Defendants' claim that there is no procedural due process claim because Plaintiff

had the right to a hearing with respect to the underlying charges (Def. Memo. of Law, page 8) is

erroneous.  First, as previously stated, had Plaintiff been aware of the potential to lose his entire

practice and not merely be banned for at least one year from filing limited review applications,

he would have accepted Defendants' offer of settlement and avoided the OATH trial.  Second,

had Defendant been aware of the ramifications now imposed, he would have defended himself

differently. As stated to Your Honor during oral argument, Defendant would have brought

members of the American Institute of Architects and other similar organizations to testify

regarding the lack of negligence. As it stood, two of the three engineers who testified at trial,

Plaintiff and Plaintiff's expert witness, a former DOB Deputy Commissioner with over fifty

years experience in design in New York City, testified that Plaintiff committed no negligence.

Had the extreme penalty of AC § 26-124(c) been known to Plaintiff, he certainly would have

presented more expert and character witnesses on his behalf.

22.    Annexed as Exhibit E are letters from numerous representatives in the design

professional industry who objected to the passage of the amendment on procedural due process

issues, the same issues currently before the court.  These letters are but a sampling of the

expression of opposition of the design professions in New York State to the passage of AC § 26-

124(c). They argued against the amendment because of the usurpation of the State's authority by

the DOB Commissioner. Allowing DOB to apply 26-124(c) to Plaintiff's case retroactively, is

granting Lancaster the power reserved to the state, and to remove Plaintiff's right to file without due process.

23.     Defendants' claim that Plaintiff knew that his license could be suspended or revoked by the New York State Education Department is irrelevant (Memo of Law, page 8) and merely highlights the concerns the design industry had with the this amendment. This statement is an implied admission that DOB is now usurping the licensing duties statutorily granted to the Education Department.  Moreover, under state rules, Plaintiff could be found guilty only of "gross" negligence, a standard to which Plaintiff's conduct as alleged by DOB does not arise. Furthermore, under New York State Education Law Section 6510, Plaintiff had the following due process safeguards before he could be found guilty of any misconduct:

- a hearing before a panel of three or more members, at least two of whom shall be members of the applicable state board for the profession;

- The transcript and report of the hearing panel shall be reviewed at a meeting by a regents review committee appointed by the board of regents. The regents review committee shall consist of three members, at least one of whom shall be a regent;

- The review shall be based on the transcript and the report of the hearing panel. The licensee may appear at the meeting, and the regents review committee may require the licensee to appear;

- If the board of regents disagrees with the hearing panel's determination of not guilty, it shall remand the matter to the original panel for reconsideration or to a new panel for a new hearing. The panel's determination of not guilty on reconsideration or a new hearing shall be final.

Clearly, this procedure, with its extensive due process safeguards, conducted by members of Plaintiff's own profession, is a far cry from the heavy-handed imposition of AC § 26-124(c) by

DOB Commissioner Lancaster. As two of the three engineers at the OATH trial agreed that Plaintiff had not been negligent, it is quite likely the state would have taken no action against the Plaintff. Based upon their past actions, as identified in Exhibit D, even if the State had found Plaintiff guilty of the type of negligence for which DOB alleged, he clearly would have received neither a revocation or a suspension.

24.    Defendants cite Quataro v. Hoy, 113 F.Supp.2d 405, for the proposition that any injury sustained by Plaintiff is compensable in monetary damages.  Hoy involved an inmate who was refused work release, so the amount of money the inmate could have received was quantifiable.  Here, the damage to Plaintiff's reputation is irreparable and unquantifiable. As stated in Plaintiff's moving papers, the immediate and intense loss of income, coupled with the potential civil liability for the two-hundred plus pending jobs, will ruin his practice and jeopardize his ability to feed his family. The livelihoods of his ten employees is equally affected. "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent  . . . bankruptcy is such a case." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969 (2d Cir. 1989).

25.    Defendants' claim that Plaintiff could still work under another licensee ignores the fact that DOB requires a new filing every time an applicant is superseded.  Plaintiff is thus liable for all costs on all pending jobs.  Were another engineer to attempt to take over Plaintiff's pending filings, not only would entirely new filings and filing fees be required from the new engineer, but Plaintiff would have to return hundreds of thousands of dollars in money received and/or face tens of thousands of additional litigation expenses.  For over twenty years, 100% of Plaintiff's practice has been conducted in New York City.  Plaintiff lives in New York City and all his professional contacts are in New York City. As Plaintiff relies upon the Hassidic and

16

Caribbean communities for the bulk of his work, and as these two communities are concentrated primarily in New York City, Defendants' cavalier statement that Plaintiff could work outside the city is inappropriate.[8]    That Plaintiff will suffer irreparable damage is an indisputable fact.

### Equal Protection

26.    Defendants allege that Plaintiff's "'class-of-one' selective enforcement claim [under the equal protection provisions of the United States and New York State Constitutions]. . . . is clearly baseless both because plaintiff is not similarly situated to architects and engineers who are not false filers, and because there is a rational basis for treating him differently than architects and engineers who are not false filers" (Def. Memo. of Law, p. 10).  Defendants are incorrect on both counts.  First, as Exhibit C shows, the list of "false filers" disciplined by DOB is voluminous, yet only Plaintiff has received the ultimate sanction of having all right to practice in New York City stripped away.  Second, as Plaintiff alleged in his moving papers (Pl. Memo. of Law, p. 21), and as DOB itself admits, over 57% of self-certified applications submitted to DOB are found upon audit to contain errors.  Clearly, an architect or an engineer must have been negligent, at the very least, in order to engender an objection.  Plaintiff was convicted only of negligence at his OATH proceeding.  Thus, there is a universe of hundreds of design professionals practicing before DOB who might conceivably suffer the exact same sanction, yet none save Plaintiff has been so harshly punished.  As Defendants themselves cite, "[c]lass of one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  It is impossible to discern any difference at all between Plaintiff and any one of the hundreds of engineers who may have inadvertently submitted a document containing errors to DOB over the

---

[8] That Plaintiff can find work somewhere is not at issue. Certainly Plaintiff could sell his home, move into an apartment, remove his children from college, and take a job washing dishes. At issue is Plaintiff's right to work in the field of his licensure in the community where he has established his practice for over twenty years.

last four years. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923). "Improper execution by duly constituted agents" succinctly describes Defendants' selective use of AC § 26-124(c) against Plaintiff, and it is exactly the sort of abuse of government power against which the Fourteenth Amendment protects.

## Defendants' Representations Regarding the Underlying Facts are Misleading

27.     In his moving papers, Plaintiff did not burden this Court by defending against the underlying charges for two specific reasons: 1) they are essentially irrelevant as the Federal issue pertains to the imposition of the new penalty, and 2) Plaintiff is challenging the finding of negligence in a New York State Article 78 proceeding - the proper process and forum for such a challenge. As Defendants have submitted a Declaration of Stephen Kramer that mischaracterizes practically all the pertinent facts of the underlying case, Plaintiff must respond.

28.     In paragraph 15 of his Declaration, Kramer states that photographs for all three projects had been submitted under Plaintiff's seal. This is entirely incorrect. Only two of the projects involved photographs and only one of those sets of photos were sealed by Plaintiff. Although the issue was discussed in detail at the OATH hearing, it was never concluded that photos accompanying an application for a Builders' Pavement Plans ("BPP") required an engineer's seal[9].

---

[9] As was argued in Plaintiff's moving papers, the submission of photos with BPP is not governed by law, but rather by an internal DOB policy notice that has not been promulgated as a rule and thus has no force of law. DOB's expert witness testified that he is not even sure which DOB Borough Offices even follow the policy notice anymore. As the

29.     Throughout Kramer's declaration and the accompanying Memorandum of Law, reference is made to "false" filing, "false" photos, and so forth.  Plaintiff was charged with filing "doctored" photos (See Exhibit A, Declaration of Gregory Chillino).  The term "doctored" was never defined by DOB.  That there were unusual conditions identified in the photos has been conceded; however, DOB has never proven, nor even alleged, that the photos did not accurately depict the condition of the curb work. The conditions listed: garbage cans "floating," shadows, etc. (Kramer Declaration, paragraph 22), **pertained only to the building behind the curb work, and had no relevance to the curb work itself, the only subject of the BPP.**  This point cannot be emphasized enough.  DOB never alleged that the photos were false, in that they incorrectly depicted the condition of work on the curbs when they were submitted.  In fact, DOB never informed the OATH judge that the two BPP applications had been approved by DOB subsequent to Plaintiff's submission of the photos. At trial, Plaintiff's counsel sought a dismissal based upon DOB's failure to provide potentially exculpatory evidence in the BPP folders pertaining to approval of the applications. Despite approving these application just a few months before trial, DOB claimed it could not find the additional submissions which led to its approval of the work.  DOB's own expert witness, the person responsible for bringing the charges in the first instance, claimed that he was unaware that the BPP applications had been approved by DOB, despite the fact that he is Deputy Commissioner of the DOB Brooklyn office.

30.     I direct Your Honor to examine the photos of 11 Lynch Street themselves, annexed as Exhibit C and D of Defendants' Memorandum of Law. Whether the garbage cans appear odd at all is questionable, but the characterization of them as "floating" is absurd and is a continuing attempt by Defendants' to mischaracterize the egregiousness of the alleged

---

photos were not required by Title 27 of the Administrative Code, by its express language, 26-124(c) as amended cannot legally be applied apply to the photos submitted by Plaintiff.

misconduct. I remind the Court that **the Plaintiff reviewed the photos only as to the quality of the curb work.** Although an application had been filed for the construction of the building behind the curb work, **Plaintiff was not the applicant for the building pictured behind the curb and was not associated with, or responsible for, construction of the building in any way whatsoever**. The OATH judge apparently failed to make this crucial distinction. As Plaintiff had no involvement with the building, he paid no attention to conditions that did not concern his application.[10]   There is a strong likelihood that a finding that Plaintiff was negligent on these facts will be overturned in New York state court.

31.    Defendants submit as Exhibit D photos taken by DOB Investigators showing the actual condition of the building, over one year after Plaintiff submitted the photos. I direct the Court to the fact that the photos show only the building (unrelated to Plaintiff's application) and failed to capture the curb work. Had DOB properly shown the curb, it may well have indicated that the curb work was identical to Plaintiff's photos.

32.    ALJ Miller seemed to give great weight to the testimony of the DOB expert witness that Plaintiff should have noticed the unusual conditions. It appeared that ALJ Miller failed to make the distinction that Plaintiff was the applicant for the BPP application for work on the curb, and had no involvement whatsoever with the building pictured behind the curb. While DOB is concerned with both applications, Plaintiff testified that he reviewed the curb work as shown in the photograph and it appeared to be done pursuant to code, which was his sole duty.

33.    Exhibits E and F of Defendants' Memorandum show the "before" and "after" photos submitted by Plaintiff. DOB alleged that, despite the fact that the photograph showed that the work on the sewer grate had been properly done, Plaintiff should have noticed that cars,

---

[10] If DOB intends to hold Plaintiff liable for conditions relating to unrelated applications, it presents the question of where exactly Plaintiff's liability stops. Can Plaintiff, or another engineer, conceivably be held liable for conditions on the next block, or for violations of regulations of agencies other than DOB?

pedestrians, and plastic bottles were all in the same location as in earlier versions of the photograph, thus proving that the photograph had been "doctored." ALJ Miller accepted this premise in finding Plaintiff negligent. However, it was never alleged that Plaintiff ever had the two photographs in his possession at the same time. ALJ Miller dismissed all charges against Plaintiff's co-respondent, expediter Hershey Fekete, on this very basis: that although the photographs had clearly been "altered," unless the two photographs were reviewed side by side, one could not be faulted for not noticing the similar circumstances some weeks later. As both Plaintiff and the expediter testified that they reviewed the photos together, and the expediter then submitted them to DOB, it is astounding that Miller could have found Plaintiff negligent while dismissing the charges against the expediter on the exact same basis.   Kramer continues to press this misleading point (Kramer Declaration, paragraph 23).

34.    DOB never even alleged that Plaintiff took any of the photos in question.  All charges alleging intentional misconduct were dismissed.  Despite both the Plaintiff and his co-respondent telling DOB investigators prior to trial that they received the photographs from the owners of the locations, DOB never presented the owners as witnesses.  Plaintiff's counsel subpoenaed the owners, but they failed to appear.  As it was admitted by DOB that there was no duty for a professional engineer to physically visit a work site, had the owners testified and have been found to have extensive technical knowledge, it would have been more understandable that Plaintiff relied upon their representations.  DOB cut off this possibility by not presenting this potentially exculpatory information at trial.

35.    Regarding the alteration application at 150 29th Street, Plaintiff testified that he relied upon information given to him, including an "I-card," or city record,  incorporated into the previous DOB application which had indicated a two-story structure.  Further, he relied upon an

inspection report prepared by a Licensed Asbestos Investigator who determined that friable asbestos existed in the second story and roof area. Plaintiff's expert witness, a former DOB Deputy Commissioner with over 50 years of experience, testified that Plaintiff violated no standard and committed no negligence by relying on these representations. Indeed, the practices of engineering and architecture requires reliance on public records and upon documents prepared by others. Asbestos reports and surveys are just a few of the documents an applicant must rely upon the truthfulness of, as they have neither the legal authority or expertise to challenge them.

36. Judge Miller found Plaintiff negligent based on the New York State Education Law, which DOB and OATH have no jurisdiction to enforce. Furthermore, as DOB never identified a standard of care in law, or regulation within the purview of a New York City agency that Plaintiff allegedly violated in committing negligence, Judge Miller, *sua sponte,* located a duty allegedly violated by Plaintiff in the Code of Ethics of a private engineering organization of which Plaintiff was not a member. This alone warrants reversal.

37. Kramer's reference to the Rules of the New York State Board of Regents (Kramer Aff., ¶ 32) is incorrect and misleading. Plaintiff is certainly allowed to rely upon subordinates and others to execute tasks related to his licensed work. The rule cited to by Judge Miller, and referred to by Kramer, is Section 29.3(a)(3) of the Rules of the New York State Board of Regents, 8 NYCRR § 29.3, which states as follows:

> 3. certifying by affixing the licensee's signature and seal to documents for which the professional services have not been performed by, or thoroughly reviewed by, the licensee; or failing to prepare and retain a written evaluation of the professional services represented by such documents in accordance with the following requirements:
>
> i.   a licensee who signs and seals documents not prepared by the licensee or by an employee under the licensee's direct supervision shall prepare, and retain for a period of not less than six years, a thorough written evaluation of the professional services

represented by the documents, including but not limited to drawings, specifications, reports, design calculations and references to applicable codes and standards. Such written evaluation shall clearly identify the project and the documents to which it relates, the source of the documents and the name of the person or organization for which the written evaluation was conducted, and the date of the evaluation, and the seal and signature of the licensee shall also be affixed thereto; and

ii.    nothing in this paragraph shall be construed as authorizing the practice of a design profession in this State by persons other than those authorized to practice pursuant to the provisions of Article 145, 147 or 148 of the Education Law;

38.    A reading of the whole provision clearly indicates an intent to ensure that design professionals who apply their seals and signature to plans or documents prepared by others keep adequate logs and/or documents for at least six years. Nothing in this section of law prohibits an engineer from reviewing documents prepared by others or using such documents in their work. Indeed, under DOB's procedures for controlled inspections of buildings, DOB allows architects and engineers to delegate inspections of items such as the structural stability of beams and the adequacy of firestopping materials to non-licensed persons.  Thus, DOB knows perfectly well that non-licensed persons routinely produce documents pertaining to the most critical issues of building safety, and its insistence that Plaintiff somehow threatened public safety by reviewing photographs of sidewalks prepared by others is astonishing in its sheer malice.  Indeed, Mr. Kramer's inflammatory and erroneous statement that "[Plaintiff] placed his professional seal on documents that were not prepared by him or anyone in his employ or under his control, upon whom it might be reasonable to rely" simply serves as more evidence that DOB is treating Plaintiff in a separate and disparate manner than others similarly situated.

39.    The phrase "thoroughly review" is not defined in New York State or New York City law or DOB rules.  Plaintiff testified at trial that he did thoroughly review the photographs for conditions pertaining to the curbs, which were the only relevant portions of the photographs

to Plaintiff's work.  ALJ Miller found that Plaintiff's failure to notice unusual conditions of the

building behind the curb, upon which Plaintiff was not working and for which he had no

professional responsibility, and his inability to recall the location of a plastic soda bottle several

weeks after viewing a photograph, indicated that he did not "thoroughly review" the photos.

DOB brought the case on the theory that Plaintiff had a duty to visit each work site personally,

but that theory was shown to be incorrect when two expert witnesses testified that there was no

such duty.  The only duty that ALJ Miller found was that Plaintiff should have noticed unusual

conditions in the photographs which would have triggered a duty to visit the site.  His failure to

do so was his negligence.  As argued, the unusual conditions were unrelated to the scope of work

concerning Plaintiff.  Thus, as will be argued in Plaintiff's Article 78 proceeding in New York

courts, ALJ Miller's finding is erroneous.

40.    ALJ Miller did find, and Mr. Kramer reiterated (Aff. Kramer, ¶ 32),  that Plaintiff

violated an ethical duty by not following the Code of Ethics proposed by the National Society for

Professional Engineers, a private, voluntary engineering association with no right to make or

enforce law or policy.  Somehow, ALJ Miller was not concerned with the fact that Plaintiff was

not a member of this organization, and that there are at least eight other such organizations, all

with different standards and codes of ethics.  The code of ethics of this association have

absolutely no legal force and effect.  This conclusion is absurd and will likely be overturned in

Plaintiff's Article 78 action.  To find Plaintiff in violation of a code of ethics of a private

association is tantamount to convicting him of a moving violation and citing not the Vehicle and

Traffic Law, but guidelines issued by the American Automobile Association.

41.    Mr. Kramer's reference to Plaintiff's "extensive record of disregard for the

importance of diligence" (Aff. Kramer, ¶34) is outrageous in its distortion of Plaintiff's work

24

record, which was unblemished until the current controversy. Plaintiff has filed thousands of applications with DOB, and until the instant case, had faced no disciplinary charges whatsoever by either DOB or the New York State Board of Regents for his work, despite the fact that DOB has audited thousands of his limited review applications. For Mr. Kramer to falsely represent to this Court that Plaintiff has an extensive record of wrongdoing merely highlights DOB's intentional and willful persecution of Plaintiff. Likewise, Ms. Moed's statements during oral argument that Plaintiff "sells his stamp" is a baseless, unsupported allegation which she clearly received from DOB representatives. Plaintiff has never been charged with such actions. Indeed even the alleged wrongdoing for which Plaintiff was disciplined at the OATH hearing does not rise to the level of such grave misconduct. It is an injustice for DOB to make such insinuations in the matter before this Court.

42.     The fact that ALJ Miller imposed such a severe penalty based upon a state law under which neither OATH nor DOB has any jurisdiction demonstrates that the nightmare scenario which the professional community of architects and engineers in New York feared so greatly, under which an administrative law judge lacking knowledge or understanding of the design professions can put an architect or engineer out of business by whim or fiat, has come to pass (see Exhibit E). Discipline of professional engineers under New York State law is properly conducted under the extensive structures of due process set up for that purpose, which include technical review of engineers' alleged wrongdoing by a panel of similarly licensed engineers. ALJ Miller's usurpation of that authority and her punishment of Plaintiff was unlawful. Plaintiff is now the victim of an abuse of unfettered and unjustified government power. Even legitimate concerns about unsafe work conducted in New York City by other unscrupulous architects or

engineers do not justify the unconstitutional and unjust treatment of Plaintiff by OATH and DOB.[11]

CONCLUSION

For the reasons stated herein and in Plaintiff's motion papers, Plaintiff respectfully prays for the Court to grant the relief requested.

Respectfully submitted this 5th day of February, 2008.

STUART A. KLEIN, ESQ.
Attorney for Plaintiff
99 Madison Avenue, 11th Floor
New York, New York 10016
(212) 564-7560

---

[11] The fact that DOB could not wait to impose its draconian penalty on an architect or engineer who actually threatened public safety is even more disturbing. As the penalty imposed on Plaintiff is so disproportionate to his alleged wrongdoing, Plaintiff is left to wonder if a personal vendetta drives the actions of DOB. The truly frightening aspect of the instant case is that, under AC § 26-124(c) as employed by Defendants, DOB can effectively put any architect or engineer out of business permanently for the slightest transgression, no matter how long ago committed, as long as the architect or engineer was found guilty at an OATH trial. Such overarching power, unfettered by due process constraints, is completely hostile to the guarantees of due process in the United States and New York Constitutions.

# Exhibit A

# NEW YORK STATE SENATE
## INTRODUCER'S MEMORANDUM IN SUPPORT
### submitted in accordance with Senate Rule VI. Sec 1

**BILL NUMBER:** S4603

**SPONSOR:** PADAVAN

**TITLE OF BILL:** An act to amend the administrative code of the city of New York and the education law, in relation to filings by persons who have negligently or knowingly made false statements in documents submitted to the department of buildings of the city of New York and filings by architects or professional engineers whose licenses have been revoked or suspended or who have been placed on probation

**PURPOSE:** The subject bill adds new subdivisions c and d to the administrative code of the city of New York to allow the Commissioner of the Department of Buildings to refuse to accept any document filed with the Department in compliance with the Building Code that bears the signature of any person who, following a hearing, has been found to have knowingly or negligently made a false statement or to have knowingly or negligently falsified or allowed to be falsified any document required to be filed under the Building Code. The bill would further require that the New York State Department of Education compile and make available to the Department of Buildings a list of currently licensed and registered architects and professional engineers, a list of architects and professional engineers who currently hold limited permits and a list of architects and professional engineers whose licenses have been revoked or suspended or who have been placed on probation. Before accepting plans or other documents filed in support of an application for a work permit by a person representing that he or she is an architect or professional engineer, the Department would be required to verify, by means of those lists, that such person is authorized to practice in this State as an architect or professional engineer.

**JUSTIFICATION:** Pursuant to Local Law 4 of 2007, the Commissioner of Buildings is authorized to refuse to accept any certification or verification of applications or building plans submitted under the Building Code by a professional engineer or registered architect who, following a hearing, has been found to have knowingly or negligently certified an application or plans that contained false information or were not in compliance with all applicable provisions of law. In addition to professional engineers and registered architects, other individuals, such as licensed plumbers, have occasion to file applications and other documents with the Department of Buildings under the Building Code. This bill would enhance the Commissioner's authority by allowing him/her to refuse to accept any filing by an individual found to have knowingly or negligently provided false information or filed a falsified document with the Department. This enhancement of the Commissioner's authority will both promote public safety and prevent the waste of taxpayer dollars by eliminating the repeated filing of false information relating to the construction and repair of buildings in New York City.

**LEGISLATIVE HISTORY:** New legislation.

RETRIEVE BILL

FISCAL IMPLICATIONS: None.

EFFECTIVE DATE:  Immediately.

---

# DIVISION OF THE BUDGET BILL MEMORANDUM

**Session Year 2007**

| | |
|---|---|
| <u>SENATE:</u> | <u>ASSEMBLY:</u> |
| No. 4603 | No. |

**Primary Sponsor:    Senator Padavan**

**Law:    Administration Code of the City of New    Sections:    26-124 and 27-140.1 of
York and the Education Law                    Administration Code, 6507 of
                                              Education Law (amend)**

**Division of the Budget recommendation on the above bill**

### APPROVE:  _X_    VETO:  __        NO OBJECTION:  __

1.  <u>Subject and Purpose:</u>

    This bill allows the Commissioner of the New York City Department of Buildings to refuse to
    accept any document filed with the Department that was submitted by a person who has
    knowingly or negligently made a false statement on a document previously submitted to the
    Department under the Building Code. The bill also requires the New York State Department of
    Education to compile and make available to the Department of Buildings a list of currently
    licensed and registered architects and professional engineers, as well as lists of architects and
    engineers whose licenses have been revoked or suspended or who have been placed on
    probation.

2.  <u>Summary of Provisions:</u>

    This bill, which is effective immediately, amends Sections 26 and 27 of the Administrative
    Code of the City of New York to allow the Commissioner of the Department of Buildings to
    refuse to accept any document filed with the Department by a person who negligently or
    knowingly made false statements on a document submitted to the New York City Department
    of Buildings, and filings by architects or professional engineers who licenses have been
    revoked or suspended or who have been placed on probation.  This bill also amends Section
    6507 of the Education Law to require the Department of Education to compile and make
    electronically availability to the Department of Buildings a list of currently licensed and
    registered architects and professional engineers, as well as lists of architects and engineers
    whose licenses have been revoked or suspended or who have been placed on probation.
    According to the Department of Education's Office of the Professions, they have the capacity
    to provide lists of licensed professionals with notations for those that are currently disciplined.
    By default, one could also determine who is not currently licensed.

3.  <u>Legislative History:</u>

Local Law 4 of 2007 authorized the Commissioner of Buildings to refuse to accept documents submitted by a professional engineer or architect who, following a hearing, has been found to have knowingly or negligently made false statements in previously submitted documents. This legislation would expand the authority to refuse documents to include those submitted from other individuals, such as licensed plumbers.

4.    Arguments in Support:

Allowing the Commissioner the authority to refuse such documents will both promote public safety and save taxpayer dollars by eliminating the repeated filing of false information relating to the construction and repair of buildings in New York City. This bill also enhances the Department's ability to determine whether persons who file plans and other documents as architects or professional engineers are licensed and registered by the New York State Department of Education, or are otherwise authorized to engage in such practices in New York State.

5.    Arguments in Opposition:

This bill authorizes the Commissioner to permanently bar a person from filing documents with the Department of Buildings, which some feel is an unreasonably harsh penalty for past misdeeds.

6.    Other State Agencies Interested:

None.

7.    Other Interested Groups:

The New York City Mayor's office supports this bill.

8.    Budget Implications:

This bill carries no budget implications for the State. The City may acquire some modest savings through the elimination of repeated filing of false information.

9.    Recommendation:

This bill allows the Commissioner of the New York City Department of Buildings to refuse to accept any document filed with the Department that was submitted by a person who has knowingly or negligently made a false statement on a document previously submitted to the Department under the Building Code, and requires the New York State Department of Education to compile and make available to the Department of Buildings a list of currently licensed and registered architects and professional engineers, as well as lists of architects and engineers whose licenses have been revoked or suspended or who have been placed on probation. Since this legislation carries no budget implications for the State and may result in modest savings for the City, the Division of Budget recommends its approval.

# Exhibit B

## NOTICE OF ADOPTION OF RULE

**NOTICE IS HEREBY GIVEN,** pursuant to the authority vested in the Commissioner of the Department of Buildings by Section 643 of the New York City Charter and in accordance with Section 1043 of the Charter, that the Department of Buildings hereby adopts the amendments to section 13-11 and chapter 21 of Title 1 of the Official Compilation of the Rules of the City of New York, regarding limited supervisory check and professional certification of applications and plans.

This rule was first published on September 6, 2006 and a public hearing thereon was held on October 6, 2006.  This rule shall take effect 30 days from the date hereof.

Dated: _Janurary 2_ , 2007
    New York, New York

Patricia J. Lancaster, F.A.I.A.
Commissioner

1

Section 1.  The first, unnumbered paragraph of subdivision (a), paragraph (8) of subdivision (a), paragraph (1) of subdivision (b), and subdivision (c) of Section 13-11 of Title 1 of the Rules of the City of New York are amended to read as follows:

§ 13-11 Purpose.

(a)    These rules are instituted in order to establish guidelines for the adjudication procedures of the Department of Buildings ("the Department"). Pursuant to [City Administrative Procedure Act,] City Charter § 1048, all hearings concerning the following matters under the jurisdiction of the Department will be held before the Office of Administrative Trials and Hearings ("OATH") and governed by the rules of procedure utilized at that tribunal:

* * *

(8)    Exclusion from the Limited Supervisory Check and/or Professional Certification Program for Plans filed by Registered Architects [of] or Licensed Professional Engineers pursuant to 1 RCNY 21-01 et seq.

* * *

(b)    (1)    Notwithstanding the procedures set forth in §§ 13-12 through 13-21 of these rules, upon referral by the Master Electricians License Board (established pursuant to § 27-3009 of the Administrative Code) or the Master Plumbers/Master Fire Suppression Piping Contractors License Board (established pursuant to § 26-144 of the Administrative Code) (either Board hereinafter referred to as the "Board"), hearings concerning the following matters may be held before [the Office of Administrative Trials and Hearings ("]OATH["]] and be governed by the rules of procedure of such tribunal:

* * *

(c)    New York City Department of Buildings' adjudications regarding the fitness and discipline of agency employees will be conducted by [the Office of Administrative Trials and Hearings] OATH. After conducting an adjudication and analyzing all testimony and other evidence, the hearing officer shall make written proposed findings of fact and recommend decisions, which shall be reviewed and finally determined by the Commissioner.

§2.  Section 21-01 of Title 1 of the Rules of the City of New York is amended to read as follows:

2

§21-01 Limited Supervisory Check and/or Professional Certification [of] Program for Applications and Plans

(a)    Definitions.  For the purposes of this section, the following definitions shall apply:

(1)    Architect.  "Architect" shall mean a person licensed and registered to practice the profession of architecture under the education law of the state of New York.

(2)    Engineer.  "Engineer" shall mean a person licensed and registered to practice the profession of engineering and use the title "Professional Engineer" and the initials "P.E." under the education law of the state of New York.

(b)    Conditions of Limited Supervisory Check and/or Professional Certification. In accordance with §27-143 of the Administrative Code of the City of New York, the Commissioner [will] may exercise his or her discretion in designating portions of the examination of applications and plans for the construction of new buildings or the alteration of existing buildings[, other than private residences and their appurtenances and accessories,] for limited supervisory check and/or professional certification predicated upon statements and representations made by the [A]architect or [E]engineer of record, and his or her associates where applicable, [and] provided the following conditions [as follows] are met:

[(a) That the time required for a complete examination by the department would delay the project.

(b)] (1)    That complete and [co-ordinated] coordinated architectural, structural and mechanical plans are or have been filed.

[(c)](2 )    That, where applicable, the portion for limited supervisory check be clearly and specifically identified[,]. [h]However, [it] such identified portion shall not include compliance with the zoning resolution nor the exit requirements of the building code or other applicable laws.

[(d)] (3)    [Wherever] That, where applicable, the necessary certifications and appropriate approvals have been obtained regarding the following topics or from the following agencies:

[(1)] (i)    Landmarks, landmark sites, and historic districts.
[(2)] (ii)    Sewers.
[(3)] (iii)    Urban Renewal Areas.
[(4)] (iv)    Transit Authority for the effect on subways.
[(5)] (v)    Compliance with General City Law, Section 35.

3

[(6)          Proof of filing with the Department of Transportation of a related paving plan application (General City Law, §36; New York City Charter §230).

(7)] (vi)     Liability Insurance [(General City Law, §36; New York City Charter, §220)].

(vii)     Board of Standards and Appeals.

(viii)    Department of Environmental Protection.

(ix)      Department of Housing Preservation and Development.

(x)       Department of Transportation.

(xi)      Fire Department.

(xii)     Loft Board.

(xiii)    Department of City Planning.

(xiv)    U.S. Department of State.

(xv)     Department of Cultural Affairs.

(xvi)    Any other approval or certification of which the professional knows or should know is required prior to submitting an application.

[(e) That where there are associate Architects or Engineers, that they likewise join in the request for limited supervisory check of the plans.

(f)] (4) That the [A]architect or [E]engineer of record and associate [A]architects or [E]engineers, if any, are aware that the Commissioner, in the exercise of his or her discretion in accordance with §27-143 of the Administrative Code, will rely upon the truth and accuracy of the statements contained in the construction application made by them, and any amendments submitted in connection therewith, as to compliance with the provisions of the Zoning Resolution, the Building Code and other applicable laws and regulations.

[(g)] (5)     That the [A]architect or [E]engineer of record and associate [A]architects or [E]engineers, if any, [are further aware that the Commissioner will rely on a complete enumeration of exceptions to compliance] shall comply with the provisions of the Zoning Resolution, the Building Code and other applicable laws and regulations [as set forth in the Statements A and B, filed with the construction application] or shall resolve any non-compliance as provided in paragraph 6, below.

(6)     That, prior to the [request for a] limited supervisory check and/or professional certification, [the enumerated exceptions must] any non-compliance shall be resolved by reconsideration or otherwise. Such reconsideration or other resolution shall be in writing and shall be submitted with the application that qualifies for limited supervisory check and/or professional certification.

4

[(h)] (7)    That, [S]should [disclosure] Department audit indicate a non-compliance with the Zoning Resolution, the Building Code and/or other applicable laws and regulations, the [A]architect or [E]engineer of record shall take the necessary remedial measures to obtain compliance.

[(i)] (8)    That the owner is aware of [this request] the application and the conditions under which it is being [granted] submitted and [he] agrees to comply with any requirement for remedial measures, if [same becomes] necessary.

§3.  Section 21-02 of Title 1 of the Rules of the City of New York is amended to read as follows:

§21-02 [Additional Procedures with Respect to Designation of Applications and Plans Submitted by Registered Architects and Licensed Professional Engineers for Limited Supervisory Check.] Exclusion from Limited Supervisory Check and/or Professional Certification Programs.

[(a) Purpose.  Pursuant to §27-143 of the Administrative Code, the Department of Buildings has established procedures for limited supervisory check of applications and plans submitted by registered architects and licensed professional engineers.  In general, these procedures have benefited both the construction industry and the general public by expediting departmental review without sacrifices to public safety. While the vast majority of architects and engineers have justified the confidence which the Department has in their professionalism, there have been occasions when the laws which govern construction the City have been disregarded, threatening public safety.  The purpose of these regulations which amend regulations promulgated by the Department and effective February 9, 1986 is to protect the safety and integrity of the procedures for limited supervisory check by assuring that such disregard is not permitted to continue.

(b)] (a) Grounds for exclusion.  The Commissioner may exclude an [registered] architect or [licensed professional] engineer from the Department's [procedure] programs for limited supervisory check and/or professional certification of applications [and], plans and removal of objections if the Commissioner finds that the architect or engineer has:

(1)    [Applications, plans, certifications or reports submitted by the architect or engineer demonstrate such a] Displayed negligence or incompetence with regard to, or lack of knowledge of, the Building Code, [Multiple Dwelling Law,] the Zoning Resolution [and/or Labor Law], the Department's regulations, or other applicable laws, rules or regulations as demonstrated by plans, applications, certifications, or inspection reports submitted by the architect or engineer to the Department [that in the

5

interest of public safety and welfare the applications and plans submitted by such architect or engineer should be subject to full review by the Department]; or

(2)     [The architect or engineer has submitted] Submitted plans, applications, [plans,] certifications or inspection reports to the [Department which] City that were required to be prepared by [him or her] the architect or engineer or under his or her supervision but [which] that were not prepared by [him or her] the architect or engineer or under his or her supervision; or [the architect or engineer engages in any] engaged in conduct evidencing a delegation of professional responsibilities to a person where the architect or engineer [knows] knew or [has] had reason to know that such person [is] was not qualified, by training, by experience or by licensure, to perform them; or

(3)     [The architect or engineer has knowingly] Knowingly or negligently made false or misleading statements on or knowingly or negligently falsified, altered or allowed a person under his or her control and/or supervision to [be falsified] falsify or alter any certificate, form, signed statement, application or report filed with the [Department] City, or knowingly or negligently failed to file a report or obtain any approval, certification, waiver or reconsideration required by law or the [Department] City or willfully impeded or obstructed such filing, or induced another person to do so; or

(4)     [The architect or engineer has been] Been convicted of a criminal offense where the underlying act arises out of [his] the architect or engineer's professional occupation or business dealings[with the City of New York.]; or

(5)     Had knowledge that any project or application filed with the Department with which the architect or engineer is involved in any capacity was fraudulent or dishonest in character and failed to report such fraudulence or dishonesty to the Department, the Department of Investigation or other relevant authority; or

(6)     Engaged in misconduct regarding his or her Department-issued Photo Identification Card; or

(7)     Engaged in any conduct related to any activity performed in connection with his or her profession that evidences a failure to comply with the provisions of Federal, State or local law, rules or regulations or a Department order or requirement; or

(8)    Impeded, obstructed or failed to cooperate with an investigation or inquiry of or failed to provide documents requested by the Commissioner or his or her designee or the Department; or

(9)    Made a material misrepresentation to persons not affiliated with the Department regarding the status of applications and/or plans filed with the Department; or

(10)    Altered, defaced or destroyed Department property, or removed Department property, including permitted folders, from Department premises; or

(11)    Offered or attempted to offer a bribe or unlawful gratuity to a Department employee or other public servant; or

(12)    Failed to maintain a copy of plans and/or related documents approved by the Department for six years after the applicant has been issued a letter of completion, a Certificate of Occupancy, or an application sign-off, whichever occurs later; or

(13)    Permitted the improper use of, or had knowledge of or failed to promptly report to the Department any improper use of his or her professional stamp, signature, or license number; or

(14)    Within a period of six months, failed two Department audits that resulted in revocations.

[(c)](b ) Procedures[:].
(1) [Written notice of the basis for such action to exclude from limited supervisory check shall be served on the architect or engineer pursuant to the provisions of New York State Civil Practice Law and Rules § 308.] Administrative charges outlining the basis for such action to exclude from the limited supervisory check and/or professional certification program shall be served upon the architect or engineer by certified mail, return receipt requested, pursuant to the Office of Administrative Trials and Hearings' (OATH's) Rules of Practice (Title 48 of the Rules of the City of New York).

(2)    [If] Notwithstanding the foregoing, if the Commissioner finds that continued use of the [procedures] programs for limited supervisory check and/or professional certification by the architect or engineer would [be] likely [to] create a [condition of imminent peril to public safety, the Commissioner's determination shall be effective immediately] serious and immediate threat to public safety or property, the Commissioner shall have the power, pending service of administrative charges, to issue an order immediately suspending the architect or engineer and his or her

associates, if applicable, from limited supervisory check and/or professional certification.

[(3) On or after the effective date of the determination, whether after hearing as provided in § 21-02(c)(1) or immediate suspension pursuant to § 21-02(c)(2) of these regulations, as the case may be, any or all of the applications and plans submitted by the architect or engineer shall be subject to full review by the Department.

(d)] (c) Hearing.
(1) Upon a filing of the administrative charges, the architect or engineer will be scheduled for a hearing [on the determination by] upon submitting any written objections to the [determination] administrative charges and the grounds for such objections to the Commissioner within fifteen days after the date that the notice of [determination] charges is served.

[(2) The hearing will be held at the Office of Administrative Trials and Hearings. Pursuant to § 21-02(c)(2) of these regulations, if the Commissioner's determination was effective immediately, the hearing shall be scheduled expeditiously, with due consideration given to the current calendar at the Office of Administrative Trials and Hearings.

(3) The architect or engineer may be represented by counsel and may present evidence in his behalf. A transcribed or tape recorded record shall be kept of the hearing.]

(2)    All hearings are to be held at OATH. The architect or engineer may be represented by counsel or by a duly authorized representative and may present evidence on his or her behalf.

(3)    When the Commissioner suspends an architect's or an engineer's limited supervisory check and/or professional certification privileges pursuant to § 21-02(b)(2), the architect or engineer shall have fifteen days from the date the order is served to object and request a hearing on the order and any forthcoming administrative charges. The written objection shall include the grounds for such objection(s). Failure to make a timely objection shall result in a waiver of the right to a hearing and the Commissioner's order shall thereupon be considered a final determination. Upon receipt of a timely objection to the order, the Commissioner or his or her representative shall promptly schedule a hearing at OATH, with due consideration given to the current OATH calendar, and serve the architect or engineer with charges and notice of such hearing pursuant to OATH's Rules of Practice.

(4) After the conclusion of [the] a hearing, the OATH Administrative Law Judge shall issue proposed findings of fact and proposed conclusions of

8

law, along with a report and recommendation to the Commissioner. The Commissioner shall review the report and recommendation issued by the OATH Administrative Law Judge and shall issue a final [decision] determination.  The Commissioner shall notify the architect or engineer in writing of [the Commissioner's decision] the final determination.  Such notice shall include a written statement indicating the reason for the [decision] final determination.

(5) After the Commissioner has rendered a final determination excluding a particular professional, all applications and plans submitted by that architect or engineer shall be subject to full review by the Department.

[(e) *Review of determination.* At the expiration of one year from the date of the initial determination to exclude an architect or engineer from participation in the procedures for limited supervisory check of applications and plans, and at intervals of no more than six months thereafter, upon request of the architect or engineer, the Commissioner shall re-examine such determination. If the architect or engineer has not committed any of the acts described in § 21-02(b)(2) or (3) during such period and applications and plans submitted by him or her during such period which were subject to complete examination by the Department demonstrate adequate knowledge of the Building Code, Multiple Dwelling Law, Labor Law and the Zoning Resolution and the Commissioner determines that it would be in the public interest to do so, he or she may rescind such determination.  In making such decision, the Commissioner may consider any relevant documents submitted by the applicant bearing upon his or her capability to resume participation in the procedures for limited supervisory check.]

9

## EXHIBIT A

**The Rules of the City of New York §21-02(b) ("Grounds for Exclusion."), grants the Commissioner of the Department of Buildings the power to exclude a registered architect or licensed professional engineer from the Department of Buildings' (the "Department") Professional Certification of Applications and Plans" process (Operations Policy and Procedure Notice 2/95) (a/k/a "self-certification") and participation in procedures for limited supervisory review of plans and applications pursuant to Directive 14 of 1975, upon a finding that the registered architect or licensed professional engineer committed misconduct identified within that section. Respondent professional engineer is hereby charged with the following:**

| | |
|---|---|
| **CHARGE #1:** | **RCNY §21-02(b)(3): The architect or engineer has knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by law or the Department or willfully impeded or obstructed such filing, or induced another person to do so.** |
| **Specification #1:** | On or about December 16, 2004, Respondent or his agent submitted doctored photographs to the Department of Buildings ("Buildings") in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York. |
| **Specification #2:** | On or about February 15, 2005, Respondent or his agent submitted doctored photographs to Buildings in connection with a Builder's Pavement Plan for 91-99 South 3rd Street, Brooklyn, New York. |
| **Specification #3:** | On or about June 21, 2006, Respondent or his agent submitted a "Plan/Work Report For PC Filing" to Buildings that falsely represented an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location. |
| **Specification #4:** | On or about July 20, 2006, Respondent or his agent submitted "Site Plan, Floor Plans and Notes" to Buildings that falsely represented an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location. |
| **Specification #5:** | On or about December 21, 2006, Respondent or his agent submitted a "Post Approval Amendment" to Buildings that falsely represented fire damage to an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location. |

## EXHIBIT A

The Rules of the City of New York §21-02(b) ("Grounds for Exclusion."), grants the Commissioner of the Department of Buildings (hereinafter "Commissioner") the power to exclude a registered architect or licensed professional engineer from the Department of Buildings' (hereinafter "Department") Professional Certification of Applications and Plans" process (Operations Policy and Procedure Notice 2/95) ("self-certification") and participation in procedures for limited supervisory review of plans and applications pursuant to Directive 14 of 1975 ("Directive 14"), upon a finding that the registered architect or licensed professional engineer committed misconduct identified within that section. Respondent registered architect is hereby charged with the following:

**CHARGE #1:**     RCNY §21-02(b)(3):  The architect or engineer has knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by law or the Department or willfully impeded or obstructed such filing, or induced another person to do so.

**Specification #1:**     On or about January 20, 2005, Respondent or his agent submitted doctored photographs to the Department in connection with a Builder's Pavement Plan for 91-99 South 3rd Street, Brooklyn, New York.

**Specification #2:**     On or about November 10, 2004, Respondent or his agent submitted doctored photographs to the Department in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York.

2

## NOTICE OF ADOPTION OF RULE

**NOTICE IS HEREBY GIVEN,** pursuant to the authority vested in the Commissioner of the Department of Buildings by Section 643 of the New York City Charter and in accordance with Section 1043 of the Charter, that the Department of Buildings hereby adopts the amendments to section 13-11 and chapter 21 of Title 1 of the Official Compilation of the Rules of the City of New York, regarding limited supervisory check and professional certification of applications and plans.

This rule was first published on September 6, 2006 and a public hearing thereon was held on October 6, 2006.  This rule shall take effect 30 days from the date hereof.

Dated: ___January 2___, 2007
       New York, New York

Patricia J. Lancaster, F.A.I.A.
Commissioner

1

## STATEMENT OF BASIS AND PURPOSE

These amendments are promulgated pursuant to the authority of the Commissioner of Buildings under §§ 643 and 1043 of the New York City Charter and §27-143 of the New York City Administrative Code.

Pursuant to §27-143 of the Administrative Code, the Department of Buildings has established procedures for limited supervisory check and professional certification of applications and plans submitted by architects and engineers. In general, these procedures have benefited both the construction industry and the general public by expediting departmental review without sacrifices to public safety or zoning regulations. While the vast majority of architects and engineers have justified the confidence that the Department has in their professionalism, there have been occasions when the laws that govern construction in the City have been disregarded, threatening public safety or the integrity of zoning regulations.

The purpose of this rule, which amends §§ 21-01 and 21-02, is to protect the safety and integrity of the public by expanding the grounds for suspending or excluding architects and engineers from procedures for limited supervisory check and professional certification. This suspension or exclusion will result in increased Department scrutiny of applications and plans from those architects and engineers. This will encourage increased applicant compliance with public safety and zoning requirements in order to have expedited reviews.

Section 13-11 is being amended to add a reference to professional certification and to make technical amendments to several references to the Office of Administrative Trials and Hearings (OATH).

10

Section 1.  The first, unnumbered paragraph of subdivision (a), paragraph (8) of subdivision (a), paragraph (1) of subdivision (b), and subdivision (c) of Section 13-11 of Title 1 of the Rules of the City of New York are amended to read as follows:

§ 13-11 Purpose.

(a)    These rules are instituted in order to establish guidelines for the adjudication procedures of the Department of Buildings ("the Department"). Pursuant to [City Administrative Procedure Act,] City Charter § 1048, all hearings concerning the following matters under the jurisdiction of the Department will be held before the Office of Administrative Trials and Hearings ("OATH") and governed by the rules of procedure utilized at that tribunal:

* * *

(8)    Exclusion from the Limited Supervisory Check and/or Professional Certification Program for Plans filed by Registered Architects [of] or Licensed Professional Engineers pursuant to 1 RCNY 21-01 et seq.

* * *

(b)    (1)    Notwithstanding the procedures set forth in §§ 13-12 through 13-21 of these rules, upon referral by the Master Electricians License Board (established pursuant to § 27-3009 of the Administrative Code) or the Master Plumbers/Master Fire Suppression Piping Contractors License Board (established pursuant to § 26-144 of the Administrative Code) (either Board hereinafter referred to as the "Board"), hearings concerning the following matters may be held before [the Office of Administrative Trials and Hearings ("]OATH["]] and be governed by the rules of procedure of such tribunal:

* * *

(c)    New York City Department of Buildings' adjudications regarding the fitness and discipline of agency employees will be conducted by [the Office of Administrative Trials and Hearings] OATH. After conducting an adjudication and analyzing all testimony and other evidence, the hearing officer shall make written proposed findings of fact and recommend decisions, which shall be reviewed and finally determined by the Commissioner.

§2.  Section 21-01 of Title 1 of the Rules of the City of New York is amended to read as follows:

2

§21-01 Limited Supervisory Check and/or Professional Certification [of] Program for Applications and Plans

(a)    Definitions.  For the purposes of this section, the following definitions shall apply:

(1)    Architect.  "Architect" shall mean a person licensed and registered to practice the profession of architecture under the education law of the state of New York.

(2)    Engineer.  "Engineer" shall mean a person licensed and registered to practice the profession of engineering and use the title "Professional Engineer" and the initials "P.E." under the education law of the state of New York.

(b)    Conditions of Limited Supervisory Check and/or Professional Certification. In accordance with §27-143 of the Administrative Code of the City of New York, the Commissioner [will] may exercise his or her discretion in designating portions of the examination of applications and plans for the construction of new buildings or the alteration of existing buildings[, other than private residences and their appurtenances and accessories,] for limited supervisory check and/or professional certification predicated upon statements and representations made by the [A]architect or [E]engineer of record, and his or her associates where applicable, [and] provided the following conditions [as follows] are met:

[(a) That the time required for a complete examination by the department would delay the project.

(b)] (1)    That complete and [co-ordinated] coordinated architectural, structural and mechanical plans are or have been filed.

[(c)](2 )    That, where applicable, the portion for limited supervisory check be clearly and specifically identified[,]. [h]However, [it] such identified portion shall not include compliance with the zoning resolution nor the exit requirements of the building code or other applicable laws.

[(d)] (3)    [Wherever] That, where applicable, the necessary certifications and appropriate approvals have been obtained regarding the following topics or from the following agencies:

[(1)] (i)    Landmarks, landmark sites, and historic districts.
[(2)] (ii)    Sewers.
[(3)] (iii)    Urban Renewal Areas.
[(4)] (iv)    Transit Authority for the effect on subways.
[(5)] (v)    Compliance with General City Law, Section 35.

[(6)        Proof of filing with the Department of Transportation of a related paving plan application (General City Law, §36; New York City Charter §230).

(7)] (vi)        Liability Insurance [(General City Law, §36; New York City Charter, §220)].

(vii)    Board of Standards and Appeals.
(viii)    Department of Environmental Protection.
(ix)    Department of Housing Preservation and Development.
(x)    Department of Transportation.
(xi)    Fire Department.
(xii)    Loft Board.
(xiii)    Department of City Planning.
(xiv)    U.S. Department of State.
(xv)    Department of Cultural Affairs.
(xvi)    Any other approval or certification of which the professional knows or should know is required prior to submitting an application.

[(e) That where there are associate Architects or Engineers, that they likewise join in the request for limited supervisory check of the plans.

(f)] (4) That the [A]architect or [E]engineer of record and associate [A]architects or [E]engineers, if any, are aware that the Commissioner, in the exercise of his or her discretion in accordance with §27-143 of the Administrative Code, will rely upon the truth and accuracy of the statements contained in the construction application made by them, and any amendments submitted in connection therewith, as to compliance with the provisions of the Zoning Resolution, the Building Code and other applicable laws and regulations.

[(g)] (5)        That the [A]architect or [E]engineer of record and associate [A]architects or [E]engineers, if any, [are further aware that the Commissioner will rely on a complete enumeration of exceptions to compliance] shall comply with the provisions of the Zoning Resolution, the Building Code and other applicable laws and regulations [as set forth in the Statements A and B, filed with the construction application] or shall resolve any non-compliance as provided in paragraph 6, below.

(6)        That, prior to the [request for a] limited supervisory check and/or professional certification, [the enumerated exceptions must] any non-compliance shall be resolved by reconsideration or otherwise.  Such reconsideration or other resolution shall be in writing and shall be submitted with the application that qualifies for limited supervisory check and/or professional certification.

4

# Exhibit C

```
————————————————————————————X
                                         :
In the Matter of the Charges of the      :
Department of Buildings                  :
                                         :
                    Petitioner           :          **STIPULATION**
                                         :
          - against -                    :          BSIU Case # 0505017
                                         :
Gad Ashoori                              :
Professional Engineer # 65961            :
~~——————————————~~                       :
                                         :
                                         :
                    Respondent           :
————————————————————————————X
```

It is hereby stipulated and agreed by and between the New York City Department

of Buildings ("Petitioner") and Gad Ashoori ("Respondent") as follows:

Whereas, this stipulation shall be permanently incorporated in Respondent's

Professional Engineer's folder;

Whereas, Petitioner repeats and re-alleges each and every allegation set forth in

the Statement of Charges, annexed hereto as Exhibit "A" and made part of this

stipulation, with the same force and effect as if set forth separately herein in full;

Whereas, Respondent, after due deliberation and having been advised that he may

be represented by an attorney, pleads guilty to the charges and specifications of each and

every allegation and element set forth in the Statement of Charges referred to above.

Now, therefore, in consideration of the above-mentioned averments, the parties

herein agree to the terms, conditions, and penalties enumerated below:

1) **A payment of five thousand and 00/100 dollars ($5,000) to be paid
by Respondent by certified check or money order, made payable
to the order of the New York City Department of Buildings and
mailed to the Buildings Special Investigations Unit, 83 Maiden**

1

Lane, 4th Floor, New York, NY 10038. This fine shall be paid in the following manner: $2500 due within 15 days of the effective date of this stipulation followed by five additional payments of $500, to be paid every thirty days thereafter.

2) Upon the effective date of this stipulation, Respondent's self-certification privileges will be suspended for one year and the filing privileges granted to him pursuant to Directive 14 shall be placed on probation for two (2) years. If during this period of probation, it is determined through an investigation conducted by the Commissioner or the Commissioner's representative that Respondent violated anew the Administrative Code of the City of New York or the Rules of the City of New York, Petitioner shall have the right to revoke or suspend Respondent's self-certification and filing privileges without Respondent having recourse to a formal hearing before the Office of Administrative Trials and Hearings, provided Respondent is given notice of any alleged violations and an opportunity to be heard by the Department of Buildings before Petitioner exercises the right to revoke or suspend the Respondent's self-certification or filing privileges.

3) This matter will not be referred to the Office of Professions, New York State Department of Education or any other city or state regulatory agency.

It is further stipulated and agreed that this stipulation constitutes a waiver by the Respondent or his successor to commence any judicial or administrative proceeding or appeal before a court of competent jurisdiction, administrative tribunal, political sub-division or office of any City, State, or Federal agency to contest the lawfulness, authority, jurisdiction or power of the Commissioner of the Department of Buildings ("Commissioner") in imposing the penalties which are embodied in this stipulation.

Respondent confirms that he has entered into this stipulation knowingly and intentionally, without coercion or duress and after having been advised that he may be represented by an attorney. He accepts all terms and conditions contained herein without reliance on any other promises or offers previously made or tendered by any past or

present representative of the Department of Buildings. He understands the matter of his plea and the penalty to be imposed upon him.

Respondent further consents to, and will execute all documents necessary to effectuate the imposition of the aforementioned provisions.

Respondent further acknowledges that his failure to conform to any of the aforementioned provisions will constitute a material breach of this agreement and, upon such failure, the Commissioner shall have the discretion to deem all or any part of this said agreement null and void, and/or may immediately revoke or suspend Respondent's self-certification and filing privileges until Respondent complies with all provisions of this stipulation. In addition, the Commissioner may require that the total amount yet unpaid, if any, be paid in full within thirty days of written notice by the Commissioner or her representative.

This stipulation shall not be effective until all parties below have affixed their signatures.

_G. Ashoori_
Gad Ashoori, Respondent

_1-4-06_
Date

_James Capalino_
James Capalino, Representative for Respondent

_1/4/06_
Date

_S. Rebecca Holland_
S. Rebecca Holland, Deputy Inspector General

_1/12/06_
Date

_Patricia J. Lancaster_
Patricia J. Lancaster, F.A.I.A.
Commissioner, Department of Buildings

_12 Jan '06_
Date

3

## EXHIBIT "A"

Pursuant to 1 RCNY §21-02, which grants the commissioner the power to exclude you from the Department's procedure for limited supervisory check of applications and plans, you are hereby charged with violations of the following:

<table>
<tr><td><u>CHARGE #1:</u></td><td>That you knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by the law or the Department or willfully impeded or obstructed such filing or induced another person to do so.</td></tr>
<tr><td><u>Specification #1:</u></td><td>On or about August 30, 2004, you self-certified an application for the installation of underpinning at 215 Conklin Avenue, Brooklyn, NY under job #301597252. On or about November 30, 2004, you signed off on the job, knowing that the underpinning had not been inspected during its installation.</td></tr>
</table>

G. Ashoop

```
_____ X
                                    :
In the Matter of the Charges of the :
Department of Buildings             :
                                    :
              Petitioner,           :
                                    :         STIPULATION
           - against -              :
                                    :         BSIU Case No. 0409086
                                    :
Leonid Bukhgalter                   :
Professional Engineer, License #066942 :
███████████████████████            :
                                    :
███████████████████████            :
                                    :
              Respondent.           :
_____ X
```

It is hereby stipulated and agreed by and between the New York City Department

of Buildings ("Petitioner") and Leonid Bukhgalter ("Respondent"), as follows:

**WHEREAS,** Petitioner repeats and re-alleges the allegation set forth in the

Statement of Charges and Specifications, annexed hereto as Exhibit A and made part of

this stipulation; and

**WHEREAS,** Respondent, after due deliberation and having been represented

represented by an attorney, pleads guilty to the charges and specifications of each and

every allegation and element contained therein as set forth in the Statement of Charges

and Specifications referred to hereinabove.

**NOW, THEREFORE,** in consideration of the above-mentioned averments, the

parties herein agree to the terms, conditions and penalties enumerated below:

1) **A single payment of Five Thousand Dollars and 00/100 ($5,000) to
   be paid by Respondent, upon execution of this stipulation, by
   certified check or money order, made payable to the order of the
   New York City Department of Buildings and mailed to the**

1

Date _11/12/06_ Initial _L.B._

Buildings Special Investigations Unit, 83 Maiden Lane, 4th Floor, New York, NY 10038, Attn: Vittoria Fariello.

2. It is further stipulated and agreed that this stipulation constitutes a waiver by the Respondent or his successor to commence any judicial or administrative proceeding or appeal before a court of competent jurisdiction, administrative tribunal, political sub-division or office of any City, State or Federal agency to contest the lawfulness, authority, jurisdiction or power of the Commissioner of the Department of Buildings in imposing the penalties which are embodied in this stipulation.

3. Respondent acknowledges that he has been represented by counsel throughout this litigation, and he has had the opportunity to discuss the terms of this Stipulation with his counsel. Respondent confirms that he has entered into this stipulation knowingly and intentionally, without coercion or duress. He accepts all terms and conditions contained herein without reliance on any other promises or offers previously made or tendered by any past or present representative of the Department of Buildings. He understands the matter of his plea and the penalty to be imposed upon him.

4. Respondent further consents to and will execute all documents necessary to effectuate the imposition of the aforementioned provisions.

5. Respondent further acknowledges that his failure to conform to any of the aforementioned provisions will constitute a material breach of this agreement. In the event that such failure occurs, the Commissioner shall have the discretion to deem all or any part of this said agreement null and void, and may immediately revoke or suspend Respondent's privileges until Respondent complies with all provisions of this stipulation. Additionally, the Commissioner may require that the total amount yet unpaid, if any, be

2

 Date 11/19/06 Initial L.B

paid in full within thirty days of written notice by the Commissioner or her representative.

 6.  Petitioner agrees that Petitioner will not affirmatively refer this matter to either the New York State Office of Professional Development or the New York City Housing Preservation and Development.

 7.  This stipulation shall not be effective until all parties below have affixed their signatures.

_____
Leonid Bukhgalter, Respondent

11/02/06
Date

_____
Eugene Gaer, Esq., Counsel for Respondent

11/2/06
Date

_____
John Woods,  Inspector General
Department of Investigation

11/2/06
Date

_____
Patricia J. Lancaster, F.A.I.A.,
Commissioner, Department of Buildings

9 Nov 06
Date

PJL/vf

3

Date 11/02/06 Initial L.B.

## EXHIBIT A

Pursuant to the Rules of the City of New York §21-02(b) which grant the Commissioner the power to exclude a registered architect or licensed professional engineer from the Department's procedure for limited supervisory check of applications and plans if the Commissioner finds they have committed certain misconduct, you are hereby charged with committing the following:

**CHARGE #1:**    RCNY §21-02(b)(3); Knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by the Department or willfully impeded or obstructed such filing, or induced another person to do so.

**Specification #1:**    On or about May 17, 2000, Respondent filed a "Non-Employee Identification Card" with the Department wherein he failed to indicate that he was a New York City employee, as required by the application. Such conduct is a violation of RCNY §21-02(b).

4

Date _____ Initial _L.B._

 

```
_____X
                                :
In the Matter of the Charges of the   :
Department of Buildings         :
                                :
                Petitioner      :
                                :          STIPULATION
         - against -            :
                                :          BSIU Case # 0407208
Narendra Shah                   :
Professional Engineer # 66221   :
Axis Design Group               :
                                :
                                :
                                :
                Respondent      :
_____X
```

It is hereby stipulated and agreed by and between the New York City Department

of Buildings ("Petitioner") and Narendra Shah ("Respondent") as follows:

Whereas, this stipulation shall be permanently incorporated in Respondent's

Professional Engineer's folder;

Whereas, Petitioner repeats and re-alleges each and every allegation set forth in

the Statement of Charges, annexed hereto as Exhibit "A" and made part of this

stipulation, with the same force and effect as if set forth separately herein in full;

Whereas, Respondent, after due deliberation and having been advised that he may

be represented by an attorney, pleads guilty to the charges and specifications of each and

every allegation and element set forth in the Statement of Charges referred to above.

Now, therefore, in consideration of the above-mentioned averments, the parties

herein agree to the terms, conditions, and penalties enumerated below:

1

1) A payment of five thousand and 00/100 dollars ($5,000) to be paid by Respondent by certified check or money order, made payable to the order of the New York City Department of Buildings and mailed to the Buildings Special Investigations Unit, 83 Maiden Lane, 4th Floor, New York, NY 10038. Such fine shall be paid in one lump sum and remitted to the Buildings Special Investigations Unit within fifteen days of the effective date of this stipulation.

2) Upon the effective date of this stipulation, Respondent's self-certification and filing privileges shall be placed on probation for a period of one (1) year. During this period of probation, in the event that it is determined through an investigation conducted by the Commissioner or the Commissioner's representative that Respondent violated the Administrative Code of the City of New York or the Rules of the City of New York, Petitioner shall have the right to revoke or suspend Respondent's self-certification and filing privileges without Respondent having recourse to a formal hearing before the Office of Administrative Trials and Hearings, provided Respondent is given notice of any alleged violations and an opportunity to be heard by the Department of Buildings before Petitioner exercises the right to revoke or suspend the Respondent's self-certification or filing privileges.

3) This matter will not be referred to the Office of Professions, New York State Department of Education or any other city or state regulatory agency.

It is further stipulated and agreed that this stipulation constitutes a waiver by the Respondent or his successor to commence any judicial or administrative proceeding or appeal before a court of competent jurisdiction, administrative tribunal, political sub-division or office of any City, State, or Federal agency to contest the lawfulness, authority, jurisdiction or power of the Commissioner of the Department of Buildings ("Commissioner") in imposing the penalties which are embodied in this stipulation.

Respondent confirms that he has entered into this stipulation knowingly and intentionally, without coercion or duress and after having been advised that he may be represented by an attorney. He accepts all terms and conditions contained herein without

reliance on any other promises or offers previously made or tendered by any past or present representative of the Department of Buildings. He understands the matter of his plea and the penalty to be imposed upon him.

Respondent further consents to, and will execute all documents necessary to effectuate the imposition of the aforementioned provisions.

Respondent further acknowledges that his failure to conform to any of the aforementioned provisions will constitute a material breach of this agreement and, upon such failure, the Commissioner shall have the discretion to deem all or any part of this said agreement null and void, and/or may immediately revoke or suspend Respondent's self-certification and filing privileges until Respondent complies with all provisions of this stipulation. In addition, the Commissioner may require that the total amount yet unpaid, if any, be paid in full within thirty days of written notice by the Commissioner or her representative.

.This stipulation shall not be effective until all parties below have affixed their signatures.

_____          7/5/05
Narendra Shah, Respondent                 Date

_____          7/6/05
Marc H. Supcoff, Attorney for Respondent  Date

_____          7/12/05
S. Rebecca Holland, Deputy Inspector General   Date

_____          25 July 05
Patricia J. Lancaster, F.A.I.A.,          Date
Commissioner, Department of Buildings

## EXHIBIT "A"

Pursuant to 1 RCNY §21-02, which grants the commissioner the power to exclude you from the Department's procedure for limited supervisory check of applications and plans, you are hereby charged with violations of the following:

**CHARGE #1:** That you knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by the law or the Department or willfully impeded or obstructed such filing or induced another person to do so.

**Specification #1:** On or about January 24, 2003, you professionally certified and filed a Plan/Work Report for PC filing for job #103357216 with the Department of Buildings. In the alteration details, you stated that there was no change of use, occupancy group or egress. On or about January 27, 2003, you self-certified the plans for job #103357216 and filed them with the Department of Buildings. These plans were filed as an Alteration Type 2 and show that the planned work included a partial demolition that resulted in a change of egress. You then failed to file a subsequent application for an Alteration 1 or a New Building as required by the rules and regulations of the Department of Buildings. Such conduct constitutes a knowingly or negligently made false report filed with the Department of Buildings.

```
                                              X
                                              :
In the Matter of the Charges of the           :
Department of Buildings                        :
                                              :
                    Petitioner                 :                STIPULATION
                                              :
        - against -                            :           IAD Case No. AE05-03
                                              :
                                              :
John D. Nakrosis, R.A.                         :
John D. Nakrosis Jr. Building Design           :
225 Broadway PH                                :
New York, New York 10007                       :
                                              :
                    Respondent                 :
                                              X
```

It is hereby stipulated and agreed by and between the New York City Department of Buildings ("Petitioner") and John Nakrosis, Registered Architect # 021825 ("Respondent"), as follows:

Whereas, Petitioner repeats and re-alleges each and every allegation set forth in the Statement of Charges, annexed hereto as Exhibit "A" and made part of this stipulation, with the same force and effect as if set forth separately herein in full;

Whereas, Respondent, after due deliberation and having been advised that he may be represented by an attorney, now freely and voluntarily waives any further rights he may have pursuant to Title 1 RCNY Section 21-02 and pleads no contest to the charges and specifications and each and every allegation and element contained therein as set forth in the Statement of Charges referred to hereinabove.

Now, therefore, in consideration of the above-mentioned averments, the parties herein agree to the terms, conditions and penalties enumerated below:

1

1) A payment of one thousand dollars ($1,000) to be paid by Respondent by check or money order, made payable to the order of the New York City Department of Buildings and mailed to the attention of Adam Golden, Department Advocate, Office of Investigations and Discipline, 11 Park Place, 2nd Floor, New York, NY 10007. The payment shall be due and payable by Respondent to Petitioner within thirty (30) days of the effective date of this stipulation.

2) Upon the effective date of this stipulation, Respondent shall be placed on probation for a period of one (1) year. During this probation period, should an investigation conducted by the Commissioner or her representative reveal that Respondent has violated any provision of Title 1, Chapter 21, Section 21-02(b) of the Rules of the City of New York, Respondent's privileges to file applications under any limited supervisory review procedures currently in effect or in effect at the time of such violation, shall be immediately suspended until a final determination is issued by the Commissioner following a hearing before the Office of Administrative Trials and Hearings.

It is further stipulated and agreed that this stipulation constitutes a waiver by the Respondent or his successor to commence any judicial or administrative proceeding or appeal before a court of competent jurisdiction, administrative tribunal, political sub-division or office of any City, State or Federal agency to contest the lawfulness, authority, jurisdiction or power of the Commissioner of the Department of Buildings in imposing the penalties which are embodied in this stipulation.

Respondent confirms that he has entered into this stipulation knowingly and intentionally, without coercion or duress, and after having been advised that he may be represented by an attorney; that he accepts all terms and conditions contained herein without reliance on any other promises or offers previously made or tendered by any past or present representative of the Department of Buildings; and that he understands the matter of his plea and the penalty to be imposed upon him.

Respondent consents to, and will execute all documents necessary to effectuate the imposition of the aforementioned provisions.

2

Respondent further acknowledges that his failure to conform to any of the aforementioned provisions will constitute a material breach of this agreement and, upon such failure, the Commissioner may deem all or any part of this said agreement null and void, and/or may immediately suspend Respondent's limited supervisory review privileges until Respondent complies with all provisions of this stipulation, and may require that the total amount yet unpaid, if any, be paid in full within thirty (30) days of written notice by the Commissioner or his representative.

This stipulation shall not be effective until all parties below have affixed their signatures.

_____        18 APRIL 2003
John Nakrosis, Respondent                    Date

_____        4-24-03
Peter Amato, Assistant Commissioner          Date
Office of Investigations and Discipline

_____        24 April '03
Patricia J. Lancaster, A.I.A.                Date
Commissioner, Department of Buildings

3

*JOHN DANIEL NAKROSIS JR., R.A.*
*Registered Architect No. 021825*

## EXHIBIT "A"

| | |
|---|---|
| **CHARGE #1:** | In accordance with Title 1 RCNY Section 21-02, "Additional Procedures with Respect to Designation of Applications and Plans Submitted by Registered Architects and Licensed Professional Engineers for Limited Supervisory Check," Paragraph (b)(3), you are hereby charged with knowingly or negligently making false or misleading statements or knowingly or negligently falsifying or allowing to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failing to file a report required by law or the Department. |
| Specification #1: | That on or about July 9, 2002, you requested a letter of completion for job application #102559919 for the premises located at 5 West 21st Street, but failed to submit a Post Approval Amendment to the Department of Buildings prior to requesting the letter of completion, when such Post Approval Amendment was required to notify the Department of construction that deviated from the approved plans. |
| Specification #2: | That on or about July 9, 2002, you submitted a Technical Report (TR-1) for job application #102559919 to the Department of Buildings for the premises located at 5 West 21st Street, Manhattan, in which you failed to certify that the work and materials conformed to approved plans and specifications, as required. Such conduct is a violation of Section 21-02, Paragraph (b)(3) in that you knowingly or negligently made false or misleading statements on an application or report filed with the Department. |

1



Search | Email Updat

**Residents | Business | Visitors | Government | Offic**

## NYC BUILDINGS
NEW YORK CITY DEPARTMENT OF BUILDINGS

SIGN UP FO

- SEARCH BUILDINGS DEPT ▶
- HOME
- ABOUT THE BUILDINGS DEPT
- BUILDINGS INFORMATION SYSTEM (BIS)
- CAREER OPPORTUNITIES
- NYC CONSTRUCTION CODES (FORMERLY MODEL CODE PROGRAM)
- **LICENSES & RENEWALS**
  - Licensing FAQ
  - License Status
  - Exams and Qualifications
  - Disciplinary Actions
  - Voluntary Surrender
- APPLICATIONS & PERMITS
- CERTIFICATES OF OCCUPANCY
- CONSTRUCTION SAFETY
- VIOLATIONS
- FORMS
- REFERENCE MATERIALS
- GUIDES & PUBLICATIONS
- NEWS & SERVICES
- CONTACT THE BUILDINGS DEPT

**Adobe Acrobat Reader**
(required to view PDFs)

LICENSES AND RENEWALS

## 1998 - 2008 Disciplinary Actions - Architects and Engineers

### 2008 Disciplinary Actions

| No. | Name License # | Company | Disposition |
|-----|----------------|---------|-------------|
| 1. | Nation, Leon St. Clair PE #065052 | Geezman Company | Two year revocation of filing privileges. |

### 2007 Disciplinary Actions

| No. | Name License # | Company | Disposition |
|-----|----------------|---------|-------------|
| 1. | Syed, Tahseen PE #72187 | Superior Consulting Corp. | Fined. |
| 2. | Schwartz, Stephen RA #26566 | Schwartz Development Consultants | Fine and surrendered Self-Cert and D-14 privileges for two years. |
| 3. | Nation, Leon St. Clair PE #065052 | Geezman Company | Revocation of his self-certification and D-14 privileges. |
| 4. | Toscano, Philip RA #20848 | | Fined. |

### 2006 Disciplinary Actions

| No. | Name License # | Company | Disposition |
|-----|----------------|---------|-------------|
| 1. | Ashoori, Gad PE #65961 | | Fined, self-cert suspended for one year & two years probation for D-14's. |
| 2. | Bukghalter, Leonid PE #066942 | Leonid Bukhgalter, P.E. | Fined. |
| 3. | Nelson, Raymond RA #20545 | Earthwise Architecture | Professional self-cert privileges revoked. |
| 4. | Simpson, | Kojo | Fined & surrendered self-cert. |

BOROUGH
Pick a Bord

HOUSE #

STREET NAME

SUBMIT ▶

Filing

MY COMMU

LICENSE SE

- BUILD To
- MMR Repo
- Weekly R
- Monthly R
- OP-98 Re

Installing a
Call 1-800-
(NYC & LI)
dig!

Learn more
Construction

Test your s

| | Kojo RA #24615 | Simpson Architects | |
|---|---|---|---|
| 5. | Weiss, Sandor RA #14318 | Anno Mundi 2928 and Gelu Durus Musica | Fined & surrendered D-14. |

## 2005 Disciplinary Actions

| No. | Name License # | Company | Disposition |
|---|---|---|---|
| 1. | Hulme, John RA#20419 | H&H Building Consulting | Fined. |
| 2. | Shah, Narendra PE#66221 | Thornton Tomasetti Engineering | Fined and one year probation of self-cert priveleges. |

## 2004 Disciplinary Actions

| No. | Name License # | Company | Disposition |
|---|---|---|---|
| 1. | Allen, Patrick RA#23658 | PEA Corp | Surrendered self-cert privileges, one year suspension of D-14, three years probation. |
| 2. | Kambanis, Emanuel RA#28318 | | Fined and two years probation of D-14 & self-cert privileges. |
| 3. | Oradeu, Okey RA# 27345 | | Fined and one year probation. |
| 4. | Ruderman, Herbert RA#10971 | | Surrendered self-cert privileges and two year probation of D-14. |
| 5. | Shamloo, Bakhtiar PE# 70154 | Tabriz Design Group | Fined, two years probation, six month suspension of self-cert privileges. |

## 2003 Disciplinary Actions

| No. | Name License # | Disposition |
|---|---|---|
| 1. | Afshari, Shahriai PE#069849 | Fined & 1 year probation. |
| 2. | Attick, Mitchell RA#11690 | Nine month suspension from Directive 14 program , surrendered self-cert privileges. |
| 3. | Deacetis, Nicola | Fined. |
| 4. | Ill, Brian RA#20822 | Fined and two year probation. |
| 5. | Lane, Douglas PE #73324 | Fined and surrendered and self- cert privileges. |
| 6. | Nakrosis, John RA# 21825 | Fined and one year probation. |
| 7. | Petit, Andrew RA#011089 | Revocation from all limited review. |

| 8. | Rycar, George RA# 12965 | Fined and two year probation. |

**2002 Disciplinary Actions**

| No. | Name License # | Disposition |
|---|---|---|
| 1. | Allen, Patrick RA#23658 | Fined, one year surrendered of self-cert, two year probation. |
| 2. | Carnivale, David RA#18853 | Fined, one year probation. |
| 3. | Costello, Timothy RA#22952 | Fined, surrendered self-cert, and one year probation. |
| 4. | Lee, Kenny RA #24793 | Fined, one year probation, resolve D-14's. |
| 5. | Lenahan, Robert RA# 24793 | Substantiated with no disciplinary action to follow. |
| 6. | Lipton, Mark RA# 14991 | Fined and four year suspension from self-cert. |
| 7. | Mann, David RA# 024860-1 | Verbal reprimand. |
| 8. | Massimo, Yezzi RA# 19392 | Revocation of self-cert. |

**2001 Disciplinary Actions**

| No. | Name | Disposition | License # |
|---|---|---|---|
| 1. | Berry, Brian | Fined, one year suspension from self-cert and D-14. | RA27760 |
| 2. | Caneco, Robert A. | Fined. | RA 16882-1 |
| 3. | Dechiara, Joseph | Fined. | RA 006938 |
| 4. | Ferraro, Ainsley | Fined, surrendered self-cert two years probation. | PE 62079 |
| 5. | Germain, Robert | Fined. | PE 047135 |
| 6. | Humphreys, Joan | One year probation. | RA 15384 |
| 7. | Lieblich, Meir | Fined, one year probation. | PE 51147 |
| 8. | Prus, Irving | Fined. | PE 60428-1 |
| 9. | Rizvi, Zayer | Revocation of professional certification, two year suspension of D-14, three year probation of D-14 and fined. | PE 069846 |
| 10. | Rowe, Donald | Fined, 4 months suspension of self-cert, 8 months suspension of D-14. | RA 11096 |
| 11. | Stacom, John | Fined and 1-year probation on D-14. | RA 011813 |

**2000 Disciplinary Actions**

| No. | Name | Disposition | License # |
|-----|------|-------------|-----------|
| 1. | Calin, Adriana | Surrendered all limited supervisory check privileges, fined, one year probation. | RA 23494 |
| 2. | Goodman, Donna | Written reprimand. | RA 14951 |
| 3. | Knafo, George | Fined. | RA 9252 |
| 4. | Ruffalo, George | Fined, one year suspension D-14 and self-certification, 4 year probation. | RA 54580 |
| 5. | Schwartz, Marvin | Fined. | RA 8844 |
| 6. | Schwartz, Victor | Fined, surrendered of self-cert. | 14673 |
| 7. | Smolinsky, Steven | Fined, nine month suspension from D-14 and self-cert. nine month probation. | PE 030221 |
| 8. | Weiss, Sandor | Surrendered D-14 and self-cert. for 5 years. | RA 14318 |

**1999 Disciplinary Actions**

| No. | Name | Disposition | License # |
|-----|------|-------------|-----------|
| 1. | Grammas, John | Lifetime surrender of limited supervisory check. | RA 27638 |
| 2. | Katerinis, Emanuel | Fined, five year suspension of self-cert., 9 ½ years probation, six months suspension of D-14. | PE 63062-1 |
| 3. | Liang Wei, Kuo | Fined, five year suspension from self-cert., revocation of D-14 for two years, one year probation, restoration of premises, subject precluded from seeking a license/registration from DOB for five years. | PE 59634 |
| 4. | Liberman, Joseph | Fined, revocation of self-cert., one year probation of D-14/75. | PE 59515 |
| 5. | Massand, Nanik | Fined. | PE 44402 |
| 6. | Montoya, Albert | Fined and two year probation. | RA 18684 |
| 7. | Oran, Frederick | Fined. | PE 37495 |
| 8. | Perotto, Robert | Fined and one year probation. | PE 39622 |
| 9. | Schneider, Steven | Written reprimand. | PE 54776 |
| 10. | Yezzi, Massimo | Fined, one year probation, two month suspension from self-cert. | RA 06338 |

**1998 Disciplinary Actions**

| No. | Name | Disposition | License # |
|-----|------|-------------|-----------|

| 1. | Bedell, Robert | Fined and one year exclusion from the NYFD self-cert program. Corrective interview. | PE 42032 |
| 2. | Giannasca, Edward | Fined, three months probation, warning letter. | RA 07091 |
| 3. | Hinkley, Paul | Fined. | PE 049789 |
| 4. | Reimnitz, John | One year suspension from self-cert & one year probation. | RA 16758 |
| 5. | Woo Jang, Jin | Fined, three months D-14 suspension, voluntary surrender of self-cert for six months. | RA 23528 |

**Click below to find the IAD disciplinary actions for the following areas:**

- Professional Engineers and Registered Architects
- Expediters
- Licensed Plumbers
- Licensed Electricians
- Other Licensees
- Unlicensed or Unregistered Individuals

 VIEW SITE MAP

Copyright 2008 The City of New York                        Contact Us | FAQs | Privacy Statem

# Exhibit D

**Summary:** Licensee admitted to the charges of failing to perform adequate root canal treatment and failing to maintain the original or a copy of pre-treatment radiographs.

**Joseph Gorfien,** Coral Springs, FL
**Profession:** Dentist; Lic. No. 036136; Cal. No. 22411
**Regents Action Date:** May 23, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 3 month actual suspension, 21 month stayed suspension, 2 years probation.
**Summary:** Licensee did not contest the charge of having been found guilty of professional misconduct by the Florida Board of Dentistry.

**Sandy R. Peresmik,** North Las Vegas, NV
**Profession:** Dental Hygienist; Lic. No. 019092; Cal. No. 22606
**Regents Action Date:** May 23, 2006
**Action:** Application to surrender license granted.
**Summary:** Licensee admitted to the charge of having been convicted of Murder in the 2nd Degree, a class A-1 felony.

**Zahreh Tafreshi Rasoulinejad,** Stamford, CT
**Profession:** Dentist; Lic. No. 041061; Cal. No. 22471
**Regents Action Date:** May 23, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 3 month actual suspension, 21 month stayed suspension, 2 years probation, $5,000 fine.
**Summary:** Licensee admitted to the charge of having been convicted of Offering a False Instrument for Filing in the 1st Degree, a class E felony.

**Ellen Zbar,** New York, NY
**Profession:** Dentist; Lic. No. 046141; Cal. No. 22258
**Regents Action Date:** May 23, 2006
**Action:** Application for consent order granted; Penalty agreed upon: Censure and Reprimand, 1 year probation, $1,000 fine.
**Summary:** Licensee admitted guilt to the charge of having failed to take adequate diagnostic radiographs for two patients.


### Engineering and Land Surveying

**Richard H. Green,** Albany, NY
**Profession:** Professional Engineer; Lic. No. 053776; Cal. No. 22546
**Regents Action Date:** May 23, 2006
**Action:** Application for consent order granted; Penalty agreed upon: Censure and Reprimand, 1 year probation, $2,500 fine.
**Summary:** Licensee did not contest the charges of failing to complete a thorough written evaluation and to include an Energy Conservation Statement and the alteration of statement as required.


### Massage Therapy

**Thomas Lo Cascio,** Floral Park, NY

**Summary:** Licensee admitted to the charge of being found guilty of professional misconduct by the Connecticut State Dental Commission.

**Michael Anthony Pesiri,** New Hyde Park, NY
**Profession:** Dentist; Lic. No. 037695; Cal. No. 20037
**Regents Action Date:** June 20, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $1,000 fine.
**Summary:** Licensee did not contest the charge of making inappropriate telephone calls to two patients in 1992 and 2000.

## Dietetics and Nutrition

**Patricia Mary Lorenz a/k/a Patricia Mary Lorenz-Wells,** Ticonderoga, NY
**Profession:** Dietitian; Cert. No. 000742; Cal. No. 22176
**Regents Action Date:** June 20, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 1 year stayed suspension, 1 year probation, $250 fine.
**Summary:** Licensee admitted to the charge of being convicted of aggravated harassment in the 2nd Degree, a misdemeanor.

## Engineering and Land Surveying

**Kenneth J. Treiling,** Catskill, NY
**Profession:** Professional Engineer; Lic. No. 066409; Cal. No. 22554
**Regents Action Date:** June 20, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $1,000 fine.
**Summary:** Licensee did not contest the charges of being convicted of the crimes of Operating a Motor Vehicle While Under the Influence of Alcohol and Criminal Possession of a Weapon in the 4th Degree and the charge of filing a false report about the criminal convictions.

## Massage Therapy

**Susan Joy Maksymowicz,** Ridgefield Park, NJ
**Profession:** Massage Therapist; Lic. No. 003528; Cal. No. 22349
**Regents Action Date:** June 20, 2006
**Action:** Found guilty of professional misconduct; Penalty: 1 year suspension, execution of suspension stayed.
**Summary:** Licensee was found to be guilty of having been convicted of Driving While Intoxicated, an Unclassified Misdemeanor.

## Nursing

**Summary:** Licensee was found to be guilty of having been convicted of the crime of Grand Larceny in the 3rd Degree, a class D felony, relating to Medicaid fraud.


## Engineering and Land Surveying

**Ronald H. Laberge,** Albany, NY
**Profession:** Professional Engineer; Lic. No. 039022; Cal. No. 22881
**Regents Action Date:** September 12, 2006
**Action:** Application to surrender license granted.
**Summary:** Licensee did not contest the charge of having been convicted of Mail Fraud.


## Massage Therapy

**Kurt William Kodesch,** Schenectady, NY
**Profession:** Massage Therapist; Lic. No. 006300; Cal. No. 22504
**Regents Action Date:** September 12, 2006
**Action:** Application for consent order granted; Penalty agreed upon: Indefinite actual suspension for no less than 3 years and until fit to practice – upon termination of suspension, 3 years probation to commence upon licensee's return to practice.
**Summary:** Licensee admitted to the charge of having engaged in sexual conduct with a client.


## Nursing

**Esther Agber a/k/a Jamine Esther N'gegba,**
**Profession:** Licensed Practical Nurse; Lic. No. 221769; Cal. No. 19227
**Regents Action Date:** September 12, 2006
**Action:** Found guilty of professional misconduct; Penalty: 2 year suspension, execution of last year of suspension stayed, $2,500 fine.
**Summary:** Licensee was found to be guilty of the charge of practicing the profession fraudulently relating to intentionally misrepresenting her credentials on an application for licensure as an RN with the department.

**Cynthia L. Altman,** Athol, NY
**Profession:** Registered Professional Nurse; Lic. No. 442721; Cal. No. 22843
**Regents Action Date:** September 12, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $500 fine.
**Summary:** Licensee admitted to the charge of failing to comply with regulations governing the practice of nursing by wasting a controlled substance without a witness.

**Kristel Lynn Bashaw,** Gloversville, NY
**Profession:** Licensed Practical Nurse; Lic. No. 217315; Cal. No. 22473
**Regents Action Date:** September 12, 2006 (see also June 2001)
**Action:** Application for consent order granted; Penalty agreed upon: Indefinite actual suspension for no less than 2 years and until fit to practice, upon termination of suspension 2 years probation to commence

## Engineering and Land Surveying

**Daniel T. Kessler,** Rotterdam, NY
**Profession:** Professional Engineer; Lic. No. 065433; Cal. No. 22552
**Regents Action Date:** October 24, 2006
**Action:** Found guilty of professional misconduct; Penalty: 1 year suspension, execution of last 10 months of suspension stayed, 1 year probation, $500 fine.
**Summary:** Licensee was found guilty of having been convicted of the crime of Attempted Unlawful Surveillance in the 2nd Degree, a class A misdemeanor.

## Massage Therapy

**Norddine Abbour,** Island Park, NY
**Profession:** Massage Therapist; Lic. No. 016109; Cal. No. 22250
**Regents Action Date:** October 24, 2006
**Action:** Found guilty of professional misconduct; Penalty: Revocation.
**Summary:** Licensee was found guilty of having been convicted of the crime of Sexual Abuse in the 3rd Degree, a class B misdemeanor, relating to a client abused during treatment.

**Jung Su Park,** Elmhurst, NY
**Profession:** Massage Therapist; Lic. No. 016068; Cal. No. 22407
**Regents Action Date:** October 24, 2006
**Action:** Found guilty of professional misconduct; Penalty: Revocation.
**Summary:** Licensee was found guilty of having been convicted of the crime of Promoting Prostitution in the 4th Degree, a Class A Misdemeanor.

## Nursing

**Esther M. Ajibola Adigun,** Brooklyn, NY
**Profession:** Registered Professional Nurse; Lic. No. 237843; Cal. No. 22847
**Regents Action Date:** October 24, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 3 month actual suspension, 21 month stayed suspension, 2 years probation to commence if and when return to practice, $500 fine.
**Summary:** Licensee admitted to the charge of documenting having performed observations of a psychiatric patient which in fact were not done.

**Marguerite Anita Anderson,** Schenectady, NY
**Profession:** Licensed Practical Nurse; Lic. No. 079298; Cal. No. 22994
**Regents Action Date:** October 24, 2006
**Action:** Application to surrender license granted.
**Summary:** Licensee admitted to charges that she threw medications away and documented administration of the same medications to patients.

**Michelle L. Berberich,** Pineville, NC
**Profession:** Registered Professional Nurse; Lic. No. 499077; Cal. No. 22995

**Summary:** Licensee admitted to the charge of failing to exercise sufficient care in preparing Medicaid claim forms on more than one occasion, as a result of which claim forms were submitted for 5 patients for orthodontic services either not rendered or provided subsequent to the billing date.

**Oliver Marvin Harmon,** Largo, MD
**Profession:** Dentist; Lic. No. 026968; Cal. No. 22965
**Regents Action Date:** December 5, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, 100 hours of public service.
**Summary:** Licensee did not contest the charge of having been found guilty of professional misconduct by the Maryland Board of Dental Examiners.

**Shahryar Sedgh,** Brooklyn, NY
**Profession:** Dentist; Lic. No. 047141; Cal. No. 22789
**Regents Action Date:** December 5, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $7,500 fine.
**Summary:** Licensee admitted to charges of having been convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the 3rd Degree, Aggravated Unlicensed Operation of a Motor Vehicle in the 1st Degree, and Operating a Motor Vehicle While Under the Influence of Alcohol.

### Engineering and Land Surveying

**Neal A. O'Connor,** Staten Island, NY
**Profession:** Professional Engineer; Lic. No. 059548; Cal. No. 22890
**Regents Action Date:** December 5, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 1 year stayed suspension, 1 year probation, $2,500 fine.
**Summary:** Licensee admitted to the charge that he filed an incomplete financial disclosure form.

### Massage Therapy

**Cary C. Smagala,** Queensbury, NY
**Profession:** Massage Therapist; Lic. No. 015515; Cal. No. 22905
**Regents Action Date:** December 5, 2006
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $500 fine.
**Summary:** Licensee admitted to charges of having been convicted of Driving While Intoxicated as a misdemeanor and as a felony.

### Nursing

**Heather Anne Benedict,** McGraw, NY
**Profession:** Licensed Practical Nurse; Lic. No. 237985; Cal. No. 22927
**Regents Action Date:** December 5, 2006

information contained in said maps was not supported by the field notes made in each case.

**Augustine Osayaba Okundaye,** Mt. Vernon, NY
**Profession:** Professional Engineer; Lic. No. 074025; Cal. No. 22858
**Regents Action Date:** February 13, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $2,500 fine.
**Summary:** Licensee admitted to the charge of failing to prepare and retain for a period of not less than 6 years a thorough written evaluation of plans he signed and sealed but which were not prepared by him or by an employee under his direct supervision.


## Massage Therapy


**Philip Charles D'alessio,** Brooklyn, NY
**Profession:** Massage Therapist; Lic. No. 007780; Cal. No. 22746
**Regents Action Date:** February 13, 2007
**Action:** Application for consent order granted; Penalty agreed upon: Indefinite actual suspension for not less than 12 months and until fit to practice – upon termination of suspension 2 years probation to commence if and when return to practice.
**Summary:** Licensee admitted to the charge of having been convicted of Sexual Abuse in the 3rd Degree.


## Nursing


**Lori W. Alexander a/k/a Lori W. Wise,** Canandaigua, NY
**Profession:** Registered Professional Nurse; Lic. No. 373545; Cal. No. 22983
**Regents Action Date:** February 13, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $500 fine.
**Summary:** Licensee admitted to the charge of willful failure to comply with substantial provisions of New York State rules and regulations governing the profession of nursing.

**Llima Marie Berkley,** Bronx, NY
**Profession:** Licensed Practical Nurse, Registered Professional Nurse; Lic. Nos. 201059, 419589; Cal. Nos. 22623, 22624
**Regents Action Date:** February 13, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 2 year actual suspension with leave to apply for early termination of actual suspension after service of at least 6 months and successful completion of certain coursework, 2 years probation.
**Summary:** Licensee did not contest the charge of administering medication to the wrong patient.


**Evelyn D. Bray a/k/a Evelyn Walder Bray a/k/a Evelyn Walder-Bray a/k/a Evelyn Walderbray,**
Mt. Vernon, NY

4th Degree, a class E felony, and unauthorized practice, a class E felony.

**Enrique Guillen**, Brooklyn, NY
**Profession:** Dentist; Lic. No. 045832; Cal. No. 22776
**Regents Action Date:** March 20, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 1 month actual suspension, 23 month stayed suspension, 2 years probation, $5,000 fine.
**Summary:** Licensee admitted to the charge of having been convicted of Attempted Unauthorized Practice, a class A misdemeanor.

**J.D. Lawson**, Skaneateles, NY
**Profession:** Dentist; Lic. No. 033514; Cal. No. 22482
**Regents Action Date:** March 20, 2007
**Action:** Found guilty of professional misconduct; Penalty: 3 year suspension, execution of last 2 years of suspension stayed, pursue certain coursework as set forth in Regents Review Committee report, probation 3 years, $5,000 fine.
**Summary:** Licensee was found guilty of filing false re-registration forms and employment applications.

**Edward Ezra Levy**, Forest Hills, NY
**Profession:** Dentist; Lic. No. 045812; Cal. No. 22637
**Regents Action Date:** March 20, 2007
**Action:** Found guilty of professional misconduct; Penalty: Revocation.
**Summary:** Licensee was found guilty of having been convicted of Grand Larceny in the 3rd Degree, a class D felony, and Offering a false instrument for filing in the 1st Degree, a class E felony.

**Irlene Antunes Siegel**, Mineola, NY
**Profession:** Dentist; Lic. No. 043252; Cal. No. 23118
**Regents Action Date:** March 20, 2007 (see also December 2001)
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, 2 years probation, $3,000 fine.
**Summary:** Licensee did not contest charges of failing to remove the entire root of a tooth during an extraction, and using only panographic radiographs during several routine examinations of a patient's teeth.

**Luz Marina Zelaya**, New York, NY
**Profession:** Dental Hygienist; Lic. No. 017217; Cal. No. 20839
**Regents Action Date:** March 20, 2007
**Action:** Found guilty of professional misconduct; Penalty: $3,000 fine, pursue certain coursework as set forth in Regents Review Committee report, probation 3 years.
**Summary:** Licensee was found guilty of practicing the profession of Dental Hygiene beyond its scope.

## Engineering and Land Surveying

**Michael A. Ruditser**, Merrick, NY
**Profession:** Professional Engineer; Lic. No. 059587; Cal. No. 22947
**Regents Action Date:** March 20, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 2 year actual suspension, thereafter 2 years probation, $2,500 fine.
**Summary:** Licensee admitted to the charge of having been convicted of Mail Fraud, a class D felony.

**Regents Action Date:** May 22, 2007
**Action:** Application for consent order granted; Penalty agreed upon: $10,000 fine, 2 years probation.
**Summary:** Respondent admitted to the charge of failing to properly supervise an employee in the filing of claim forms and supporting documentation.

## Engineering and Land Surveying

**Shahriar Afshari-Tork**, Roslyn Harbor, NY
**Profession:** Professional Engineer; Lic. No. 069849; Cal. No. 21737
**Regents Action Date:** May 22, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 2 year stayed suspension, $5,000 fine.
**Summary:** Licensee did not contest the charge of certifying that all work and materials at a job site conformed to New York City Building Department approved plans and specifications when it did not.

**Fouad Ali Farhat**, New York, NY
**Profession:** Professional Engineer; Lic. No. 068825; Cal. No. 23167
**Regents Action Date:** May 22, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 6 month actual suspension, 18 month stayed suspension, 2 years probation, $5,000 fine.
**Summary:** Licensee did not contest the charge of certifying and sealing documents without a thorough review; failing to prepare and retain a written evaluation of the professional services represented by said documents; and failing to list his address on plans filed with the New York City Department of Buildings.

**Vinod Govind Patel**, East Meadow, NY
**Profession:** Professional Engineer; Lic. No. 079830; Cal. No. 23361
**Regents Action Date:** May 22, 2007
**Action:** Application to surrender license granted.
**Summary:** Licensee admitted to the charge of having been convicted of Possessing a Sexual Performance by a Child, a class E felony; Criminal Sexual Act in the 1st Degree, a class B felony; Incest, a class E felony; and Rape in the 1st Degree, a class B felony.

## Massage Therapy

**Bongjae Kang**, New York, NY
**Profession:** Massage Therapist; Lic. No. 014140; Cal. No. 23198
**Regents Action Date:** May 22, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 6 month actual suspension, 18 month stayed suspension, 24 months probation, $9,000 fine.
**Summary:** Licensee admitted to the charge of employing unlicensed therapists.

**Kenneth Lane**, Amityville, NY
**Profession: Massage Therapist; Lic. No. 014591; Cal. No. 22811**
**Regents Action Date:** May 22, 2007
**Action: Found guilty of professional misconduct; Penalty: Revocation, $1,000 fine.**
**Summary:** Licensee was found guilty of obtaining his license fraudulently and of having been convicted of the crime of Attempted Endangering the Welfare of an Incompetent Person, a class B misdemeanor.

Profession: Certified Dental Assistant; Cert. No. 000527; Cal. No. 23072
Regents Action Date: June 26, 2007
Action: Application for consent order granted; Penalty agreed upon: 3 month actual suspension, 9 month stayed suspension, 12 months probation, $500 fine.
Summary: Licensee admitted to charges having been convicted of Promoting Prison Contraband and Petit Larceny.

### Engineering and Land Surveying

Thomas G. Ahneman, Cos Cob, CT
Profession: Land Surveyor; Lic. No. 050341; Cal. No. 21176
Regents Action Date: June 26, 2007
Action: Found guilty of professional misconduct; Penalty: Annul license.
Summary: Licensee was found guilty of submitting a fraudulent licensing application to the New York State Education Department.

### Massage Therapy

Carol R. Daggs, Saratoga Springs, NY
Profession: Massage Therapist; Lic. No. 016259; Cal. No. 23316
Regents Action Date: June 26, 2007
Action: Application for consent order granted; Penalty agreed upon: 1 year stayed suspension, 1 year probation, 25 hours public service.
Summary: Licensee admitted to the charge of having been convicted of Assault in the 3rd Degree.

### Nursing

Evelyn Abenes Alcalde, Queens Village, NY
Profession: Licensed Practical Nurse, Registered Professional Nurse; Lic. Nos. 213383, 433340; Cal. Nos. 23263, 23264
Regents Action Date: June 26, 2007
Action: Application for consent order granted; Penalty agreed upon: Censure and Reprimand, $500 fine.
Summary: Licensee did not contest the charge of commencing a blood transfusion into a patient, without having first taken all necessary and reasonable steps to ensure that the blood being transfused into said patient was intended for said patient.

Rejeanne Altidor, Elmont, NY
Profession: Licensed Practical Nurse, Registered Professional Nurse; Lic. Nos. 173310, 439115; Cal. Nos. 22831, 22832
Regents Action Date: June 26, 2007
Action: Application for consent order granted; Penalty agreed upon: 2 month actual suspension, 22 month stayed suspension, 24 months probation, $5,000 fine.
Summary: Licensee admitted to the charge of having been convicted of Attempted Grand Larceny in the 4th Degree.

Marlene Ann Bott a/k/a Marlene Ann Palmer, Shortsville, NY
Profession: Licensed Practical Nurse; Lic. No. 197155; Cal. No. 23232
Regents Action Date: June 26, 2007

**Action:** Application for consent order granted; Penalty agreed upon: 1 year stayed suspension, 1 year probation, $500 fine.
**Summary:** Licensee admitted to charges of having been convicted of Criminal Contempt and Endangering the Welfare of a Child.

**Christopher Michael Bougopoulos,** Merrimack, NH
**Profession:** Dentist; Lic. No. 051048; Cal. No. 23385
**Regents Action Date:** July 25, 2007
**Action:** Application for consent order granted; Penalty agreed upon: Censure and Reprimand, 1 year probation, $1,000 fine.
**Summary:** Licensee admitted to the charge that he was found guilty of unprofessional conduct in the State of Maine.

**Pamela Ann Michalski,** Rochester, NY
**Profession:** Dental Hygienist; Lic. No. 011642; Cal. No. 23253
**Regents Action Date:** July 25, 2007
**Action:** Application for consent order granted; Penalty agreed upon: Indefinite actual suspension of not less than 1 month and until fit to practice, upon return to practice, 2 years probation.
**Summary:** Licensee admitted to charges of having been convicted of Driving While Intoxicated in 1995, Petit Larceny in 2006, and Attempted Petit Larceny in 2006.

**William C. O'Donnell,** Pittsfield, MA
**Profession:** Dentist; Lic. No. 033194; Cal. No. 23144
**Regents Action Date:** July 25, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 1 year stayed suspension, 1 year probation, $1,000 fine.
**Summary:** Licensee admitted to the charge of of having been found guilty of professional misconduct in Massachusetts.

## Engineering and Land Surveying

**Henry W. Hessing,** Babylon, NY
**Profession:** Professional Engineer; Lic. No. 053797; Cal. No. 21986
**Regents Action Date:** July 25, 2007
**Action:** Application for consent order granted; Penalty agreed upon: 1 year stayed suspension, 1 year probation, $2,000 fine.
**Summary:** Licensee admitted to the charge of failing to prepare and retain for at least six (6) years a written evaluation of the professional services represented by plans signed and sealed by him and not prepared by him or under his supervision.

**Ronald William Staub,** Webster, NY
**Profession:** Land Surveyor; Lic. No. 044621; Cal. No. 23214
**Regents Action Date:** July 25, 2007 (see also May 2005)
**Action:** Application to surrender license granted.
**Summary:** Licensee did not contest charges of practicing land surveying when not registered, failing to comply with State laws, rules, and regulations governing the practice of land surveying, and violating a term of probation imposed upon him by the New York State Board of Regents.

## Massage Therapy

# Exhibit E

**ZETLIN & DE CHIARA** LLP
COUNSELORS AT LAW

July 31, 2007

The Honorable Eliot Spitzer
Governor of the State of New York
Executive Chamber
State Capitol
Albany, NY 12224

**RE: S. 4603 (Padavan) / A. 7746 (Brennan)**

Dear Governor Spitzer:

I am General Counsel to a number of prominent architectural organizations, including (a) the Brooklyn Chapter of AIA, (b) the Architects Council of the City of New York, (c) the New York Society of Architects, and (d) the Society of American Registered Architects (National and New York Council). In that capacity, it has been my privilege to represent the interests of the architectural community on numerous issues affecting the practice of architecture in New York State. I am compelled to write to Your Honor to urge that you not sign into law the above-referenced legislation. For a plethora of reasons, the proposed legislation is both unconstitutional and detrimental to the state-wide disciplining of design professionals by the State Education Department, which is the licensing authority constitutionally equipped to sanction wrongful conduct.

My opposition to this legislation is primarily based on the fact that it empowers a local building department to take away the professional practice of architects. This power has solely resided in the State Department of Education ("SED") which has a sophisticated due process system that properly evaluates and adjudicates any serious claims against architects. The proposed bill does not ensure the same due process protections since the New York City OATH[*] trial judges simply make recommendations, not binding determinations. The Commissioner of the New York City Department of Buildings ("DOB") is then free to completely disregard, modify or amend any determination made after an OATH trial. The consequence of this Bill is that the property right of an architect's license to practice architecture in the City of New York can be taken away without due process.

As presented written, S. 4603/A. 7746 would, for example, allow the Commissioner of the New York City DOB (a local official who may or may not be familiar with professional standards) to refuse documents filed by practitioners who have been found by OATH (and not SED) to have knowingly or negligently certified plans or applications that contained false information. This would effectively constitute a taking of an architect's property right in his/her license to practice architecture in the City of New York without due process.

Further, this Bill would require the SED to submit to the DOB the names of architects and engineers that are currently licensed, those who hold limited permits, and those whose licenses have been revoked, suspended, or who have been placed on probation. Section 4 of S. 4603/A. 7746 also makes provision for the New York City DOB, through regulation, to

801 Second Avenue  New York, NY 10017
tel: 212.682.6800  fax: 212.682.6861
* Office of Administrative Trials and Hearings
Offices in New Jersey, Connecticut and Long Island                                    www.zdlaw.com

The Honorable Eliot Spitzer
July 31, 2007
Page 2

"set forth additional grounds for limitation of the filing privileges of or otherwise sanctioning architects..."

While I certainly support the DOB's right to discipline practitioners who abuse self-certification privileges, the right to revoke that specific DOB granted privilege should not be used as a means to empower the DOB over licensing issues. Licensing issues should remain solely under the purview of SED to take appropriate disciplinary action. Enactment of S. 4603/A. 7746 represents a bureaucratic over-reach, allowing the Commissioner of the DOB to unconstitutionally take away an architect's license to practice in the City of New York.

Finally, enactment of this legislation can lead to the slippery slope of allowing a "balkanization" of SED authority throughout New York State. Nothing will prevent other municipalities, such as Buffalo, Syracuse or Albany, to mention a few, from seeking similar authority of their local building departments. Such action will effectively strip the SED of its state-wide authority over design professionals.

To maintain administrative uniformity and to keep disciplinary action at the State level where it belongs, I respectfully request that S. 4603/A. 7746 be vetoed.

Sincerely,

Raymond T. Mellon

 **SOCIETY OF AMERICAN REGISTERED ARCHITECTS**

National Headquarters   14 East 38th Street, 11th Floor, New York, NY 10016   Phone/Fax (888) 385-SARA  www.sara-national.org

**National Officers**

**President**
Robert J. Firneis, FARA
(914) 769-3200 x 226
rfirneis@jmoa.com

**President-Elect**
N. Michael F. Griffith, FARA
(843) 815-4282
griffarch@aol.com

**Vice-President**
John M. Maple, FARA
(858) 755-5848
jmaple@mdm-architects.com

**Treasurer**
Francisco J. Urrutia, FARA
(760) 327-6800
frank@urrutiaarchitects.com

**Secretary**
Ronald A. Knabb, Jr., FARA
(610) 240-4880
ronknabb@theknabbpartnership.com

**Regent-At-Large**
John J. Di Benedetto, FARA
(215) 576-8296
bluprnce@aol.com

**Archivist**
Ronald J. Angelo, FARA
(856) 692-4600
rjangelo@icdc.net

**Directors**
Wharton Donaldson, FARA
(904) 273-5534
wldon3@bellsouth.net

Adriana Garcia, FARA
(718) 335-1664
agarcia70@gmail.com

Melissa M. Graftaas, FARA
(218) 724-5568
melissa@architectureadvantage.com

William C. Johnson, FARA
(760) 340-1981
bill@hjarchitects.com

Manuel Oncina, ARA
(858) 459-1221 x 110
moncina@oncinaarc.com

Gaetano Ragusa, ARA
(718) 627-1707
ragusa@tgarch.com

John J. Scheschareg, ARA
(212) 355-6555
oscarbib@aol.com

Suzette I. Stoler, ARA
(973) 267-8830x1186
sstoler@ekmail.com

Mark R. Whitman, ARA
(407) 843-2666
mark@floridadesign.cc

**Founder**
Wilfred J. Gregson, FARA

**Immediate Past President**
Gerald R. Gross, FARA
(312) 381-3903
jerry_gross@schirmereng.com

**Executive Director**
Cathie L. Moscato
(888) 385-7272
cmoscato@sara-national.org

July 30, 2007

The Honorable Eliot Spitzer
Governor of the State of New York
Executive Chamber
State Capitol
Albany, NY 12224

**RE: S. 4603 (Padavan) / A. 7746 (Brennan)**

Dear Governor Spitzer:

On behalf of the Society of American Registered Architects, the national organization of the Society of American Registered Architects, representing 1000 individual members and 500 registered architects in the United States, we write to register our strong opposition to the above-referenced legislation which we believe is patently unconstitutional.

Our opposition to this legislation is primarily based on the fact that it empowers a local building department to take away the professional practice of architects. This power has solely resided in the State Department of Education ("SED") which has a sophisticated due process system that properly evaluates and adjudicates any serious claims against architects. The proposed bill does not ensure the same due process protections since the New York City OATH[*] trial judges simply make recommendations, not binding determinations. The Commissioner of the New York City Department of Buildings ("DOB") is then free to completely disregard, modify or amend any determination made after an OATH trial. The consequence of this Bill is that the property right of an architect's license to practice architecture in the City of New York can be taken away without due process.

As presented written, S. 4603/A. 7746 would, for example, allow the Commissioner of the New York City DOB (a local official who may or may not be familiar with professional standards) to refuse documents filed by practitioners who have been found by OATH (and not SED) to have knowingly or negligently certified plans or applications that contained false information. This would effectively constitute a taking of an architect's property right in his/her license to practice architecture in the City of New York without due process.

---
[*] Office of Administrative Trials and Hearings



**SOCIETY OF AMERICAN REGISTERED ARCHITECTS**

National Headquarters    14 East 38th Street, 11th Floor, New York, NY  10016    Phone/Fax (888) 385-SARA  www.sara-national.org

**National Officers**

**President**
Robert J. Firneis, FARA
(914) 769-3200 x 226
rfirneis@jmoa.com

**President-Elect**
N. Michael F. Griffith, FARA
(843) 815-4282
griffarch@aol.com

**Vice-President**
John M. Maple, FARA
(858) 755-5848
jmaple@mdm-architects.com

**Treasurer**
Francisco J. Urrutia, FARA
(760) 327-6800
frank@urrutiaarchitects.com

**Secretary**
Ronald A. Knabb, Jr., FARA
(610) 240-4880
ronknabb@theknabbpartnership.com

**Regent-At-Large**
John J. Di Benedetto, FARA
(215) 576-8296
bluprnce@aol.com

**Archivist**
Ronald J. Angelo, FARA
(856) 692-4600
rjangelo@icdc.net

**Directors**
Wharton Donaldson, ARA
(904) 273-5534
wldon3@bellsouth.net

Adriana Garcia, FARA
(718) 335-1664
agarcia70@gmail.com

Melissa M. Graftaas, ARA
(218) 724-5568
melissa@architectureadvantage.com

William C. Johnson, FARA
(760) 340-1981
bill@hjarchitects.com

Manuel Oncina, ARA
(858) 459-1221 x 110
moncina@oncinaarc.com

Gaetano Ragusa, ARA
(718) 627-1707
ragusa@tgarch.com

John J. Scheschareg, ARA
(212) 355-6555
oscarbib@aol.com

Suzette I. Stoler, ARA
(973) 267-8830x1186
sstoler@ekmail.com

Mark R. Whitman, ARA
(407) 843-2666
mark@floridadesign.cc

**Founder**
Wilfred J. Gregson, FARA

**Immediate Past President**
Gerald R. Gross, FARA
(312) 381-3903
jerry_gross@schirmereng.com

**Executive Director**
Cathie L. Moscato
(888) 385-7272
cmoscato@sara-national.org

Further, this Bill would require the SED to submit to the DOB the names of architects and engineers that are currently licensed, those who hold limited permits, and those whose licenses have been revoked, suspended, or who have been placed on probation.  Section 4 of S. 4603/A. 7746 also makes provision for the New York City DOB, through regulation, to "set forth additional grounds for limitation of the filing privileges of or otherwise sanctioning architects…"

While we certainly support the DOB's right to discipline practitioners who abuse self-certification privileges, the right to revoke that specific DOB granted privilege should not be used as a means to empower the DOB over licensing issues. Licensing issues should remain solely under the purview of SED to take appropriate disciplinary action.  Enactment of S. 4603/A. 7746 represents a bureaucratic over-reach, allowing the Commissioner of the DOB to unconstitutionally take away an architect's license to practice in the City of New York.

To maintain administrative uniformity and to keep disciplinary action at the State level where it belongs, we respectfully request that S. 4603/A. 7746 be vetoed.

Sincerely,
**SOCIETY OF AMERICAN REGISTERED ARCHITECTS**

Robert J. Firneis, FARA
SARA National President

*Since 1956 - "Architect Helping Architect"*



# ARCHITECTS COUNCIL OF NEW YORK CITY INC.

### 55 West 17th Street, 5th Floor, New York, NY 10011

*PRESIDENT*
MICHAEL ZENREICH

*VICE PRESIDENT*
GAETANO RAGUSA

*SECRETARY*
JOHN SCHESCHAREG

*TREASURER*
JOSEPH DE CHIARA

*LEGAL COUNSEL*
RAY T. MELLON ESQ.
ZETLIN & DICHIARA

*MEMO PAD EDITOR*
PAUL DI NATALE

CONSTITUENT ORG.
BRONX CHAPTER AIA
B'KLYN CHAPTER AIA
N.Y. SOCIETY OF ARCH.
S. I. CHAPTER AIA
SOC. AMER. REG. ARCH.
QUEENS CHAPTER AIA
NY CHAPTER AIA

PAST PRESIDENTS
M.W. DEL GAUDIO
KENNETH W. MILNES
HARRY A. YARISH
CHARLES M. SPINDLER
RICHARD ROTH, SR.
H.I. FELDMAN
GUERINO SALERNI
HERBERT EPSTEIN
DON WESTON
PHILIP AGUSTA
M. MILTON GLASS
MILLARD BRESIN
LOUIS LIBERMAN
ROGER L. McCARTHY
WILLIAM SACHS
IRA. M. SHERMAN
JAMES G. HOWIE
FRANK LO PRESTO
ARNDREW ANTONIADES
STEVEN CALVANICO
LAURENCE WERFEL
GAETANO RAGUSA
STEVEN CALVANICO

July 26, 2007

The Honorable Eliot Spitzer
Governor of the State of New York
Executive Chamber
State Capitol
Albany, NY 12224

**RE: S. 4603 (Padavan) / A. 7746 (Brennan)**

Dear Governor Spitzer:

As President of the Architects Council for New York City, (the umbrella organization for the seven architectural organizations within New York City) we write to register our strong opposition to the above-referenced legislation.

Our opposition to this legislation is primarily based on the fact that it empowers a local building department to take away the professional practice of architects. This power has solely resided in the State Department of Education which has a sophisticated due process system that properly evaluates and adjudicates any serious claims against architects. The proposed bill does not ensure the same due process protections since the OATH trial judges simply make recommendations, not binding determinations. The Commissioner of the New York City Department of Buildings ("DOB") is free to completely disregard, modify or amend any determination made after an OATH trial. Consequently, the property right of an architect's license to practice architecture in the City of New York can be taken away without proper due process.

As presented written, S. 4603/A. 7746 would, for example allow the Commissioner of the New York City Department of Buildings (a local official who may or may not be familiar with professional standards) to refuse documents filed by practitioners who have been found to have knowingly or negligently certified plans or applications that contained false information.

Further, this Bill would require the New York State Department of Education ("SED") to submit to the New York City Department of Buildings the names of architects and engineers that are currently licensed those who hold limited permits, and those whose licenses have been revoked, suspended, or who have been placed on probation. Section 4 of S. 4603/A. 7746 also makes provision for the New York City Department of Buildings, through regulation, to "set forth additional grounds for limitation of the filing privileges of or otherwise sanctioning architects..."

While we certainly support the discipline of practitioners who abuse self-certification privileges, it should remain solely under the purview of SED to take such disciplinary action. Enactment of S. 4603/A. 7746 represents a bureaucratic over-reach, allowing the Commissioner of the Department of Buildings to essentially take away an architect's license to practice.

To maintain administrative uniformity and to keep disciplinary action at the State level where it belongs, we respectfully request that S. 4603/A. 7746 be vetoed.

Sincerely,

Michael Zenreich, AIA

# Kriss, Kriss & Brignola, LLP

Mark C. Kriss
Charles T. Kriss
<u>Dominick J. Brignola</u>

*Attorneys at Law*
*350 Northern Boulevard*
*Suite 306*
*Albany, New York 12204*

*OF COUNSEL*

Laurine A. Bermudez

Service by Electronic Means or
Facsimile is Not Accepted

*Telephone (518) 449-2037*
*Facsimile (518) 449-7875*
*E-mail: office@krisslaw.com*

August 2, 2007

The Honorable Elliot Spitzer
Governor
State of New York
Executive Chambers
State Capitol Building
Albany, New York 12224

      Re:    **S4603 / A7746 Senator Padavan (Assembly Brennan) New York City Administrative Sanctions**

Dear Governor:

    The above-referenced bill is or shortly will be before you for executive action. On behalf of the New York State Society of Professional Engineers (NYSSPE) and its 3,000 member licensed professional engineers, we are writing to request disapproval of the legislation. NYSSPE's membership is representative of the entire professional engineering community (totaling more than 25,000 licensees in New York State) practicing in all disciplines and practice settings (private practice, industry, government and education).

    The subject bill would permit the imposition of administrative sanctions respecting professional engineers and registered architects, professional engineers and others for misconduct with respect to applications for permits and other documents filed with the Department of Buildings in New York City.

    Essentially, this proposal usurps the existing authority of the State Education Department to regulate the licensed design professions throughout the entire State including New York City.

    Municipalities presently have the means to apply sanctions against professional engineers found guilt of improperly practicing or professional misconduct through the State Education Department's Office of Professional Discipline (OPD). Further recourse, in criminal matters, is available through local district attorneys. If for any reason these systems are not working, then we strongly encourage addressing that problem rather than establishing additional layers of professional regulation. This is particularly important in that the existing system is design to protect <u>all</u> citizens of the state and any inadequacies should be corrected to assure maximum <u>statewide</u> protection from those who may be practicing unprofessionally or illegally. If public safety is endangered because the system isn't working, then the problem certainly extends beyond New York City and the

K:\data\NYC\letter\NYSSPE\letter opp nyc admin sanctions 07 (8-2-07).wpd

Hon. Elliott Spitzer
August 2, 2007
Page 2

the design professions. In total the State Education Department is responsible for 47 licensed or otherwise credentialed professions.

While there are a number of design professionals whose practice primarily involves the New York City Department of Buildings, this certainly is not the majority of practitioners. Enactment of this legislation could result in prohibiting certain professional engineers or architects from filing plans with that Department, but they would still be free to practice before other agencies or jurisdictions. The off-shoot could be that other agencies or municipalities could begin to establish their own system of regulation which would result in a crazy-quilt pattern of regulation and could mean that professional engineers and architects would have to qualify in each municipality rather than once under uniform state standards.

Responsibility for professional regulation should remain with the Office of Professional Discipline under the aegis of the NYS Board of Regents. Over the past years we have seen improvement in the OPD's processing of design cases and have worked closely with them in pursuit of our mutual goal of effective, timely enforcement. The Society has regularly referred suspected cases of professional misconduct to OPD which has an excellent record of successful prosecution. NYSSPE has also identified consultants to assist OPD with investigations and the Society has work with OPD on the development of an educational forum to foster a greater understanding of the design professions. Finally, NYSSPE strongly supports increased funding of the State Education Department, via a ten dollar triennial fee, to assure that OPD has the resources to civilly prosecute cases of illegal practice, as well as cases of professional misconduct.

For the foregoing reason, again, it is urged that the bill be disapproved.

Respectfully submitted,

Mark C. Kriss
Legislative Counsel

New York State Society
Of Professional Engineers

MCK/slf

cc:    Richard Baum, Secretary to the Governor
       David Nocenti, Counsel to the Governor
       Robin Forshaw, Assistant Counsel to the Governor



**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

Deputy Counsel
Tel. 518-474-8864
Fax 518-474-1940

July 24, 2007

TO:                    Counsel to the Governor

FROM:                  Erin M. O'Grady-Parent

SUBJECT:               S.4603

RECOMMENDATION:        Disapproval

REASON FOR RECOMMENDATION:

Section 1 of the bill re-letters subdivision c of §26-124 of the New York City Administrative Code as subdivision d and adds a new subdivision c to authorize the Commissioner of the New York City Department of Buildings (NYCDOB) to refuse any application or other document that bears the signature of any person who has been found, after a hearing at the Office of Administrative Trials and Hearings, to have knowingly or negligently made a false statement or to have knowingly or negligently falsified or allowed to be falsified any document.

Section 2 of the bill amends Education Law §6507 by adding a new paragraph e-1 that would require the State Education Department (SED) to compile and make available to NYCDOB, an electronic list of all licensed and registered architects and professional engineers, who currently hold Limited Permits along with their associated limitations and conditions, and a list of all architects and professional engineers whose license has been revoked, suspended or who are on probation along with any associated conditions.

Section 3 of the bill re-letters subdivision d of §27-140.1 of the NYC Administrative Code as subdivision e, and adds a new subdivision d to provide that the NYCDOB shall not accept documents by any person without verifying through lists provided by NYSED, that such person meets the qualifications to practice as a registered architect or professional engineer.

SED would support properly crafted legislation that would codify the NYCDOB's existing authority to revoke the self-certification privileges of those design professionals who violate the public trust by knowingly or negligently making false statements or submitting false documents to NYCDOB, which would be similar to the statutory processes of other agencies. We also support the provisions of this bill that would require NYCDOB to reject documents submitted by individuals who are not registered or licensed pursuant to Title 8 of the Education Law. However, we object to the language of new subdivision c of §26-124 of the New York

City Administrative Code because it is overbroad and would intrude upon the authority of the Board of Regents and the Commissioner of Education over the licensure and discipline of design professionals under Title 8 of the Education Law.

As proposed in this bill, new subdivision c of §26-124 of the New York City Administrative Code would give the Commissioner of NYCDOB the authority to permanently refuse to accept any application or document submitted by a design professional who has been found to have knowingly or negligently made a false statement or knowingly or negligently falsified or allowed to be falsified a document relating to a building code violation. A design professional could not practice his or her profession within New York City if all plans and specifications or other documents bearing his or her seal could never be accepted by the NYCDOB. In effect, this would mean that the architect or professional engineer could be permanently barred from practicing his or her profession in New York City, even if his or her State license was restored by the Board of Regents after revocation was imposed for the misconduct in question or his or her State license is otherwise in good standing after serving a period of suspension or otherwise complying with the penalty imposed by SED for the same conduct.

Accordingly, this bill would authorize NYCDOB to establish what amounts to a professional discipline process for design professionals in New York City that is independent of, and potentially in conflict with, the process for professional discipline under Title 8 of the Education Law. This would lead to multiple disciplinary proceedings for the same misconduct, each with a differing set of rules, and with the potential for inconsistent decisions.

Professional discipline of design professionals has been effectively overseen by the Board of Regents for many decades. This system is focused on the public interest, and ensures that complaints of professional misconduct are adjudicated by balancing the right of the complainant to have their complaints addressed while protecting the due process rights of the professional. The data on disciplinary proceedings involving complaints received from the NYCDOB, which was shared with the sponsors of this bill, indicates that such complaints are being diligently prosecuted under the existing system. As of August 2006, SED had received 153 referrals from NYCDOB, all of which were investigated by SED's Office of Professional Discipline to determine the merits of the complaint. The Board of Regents took disciplinary action in 56 of those cases, and the licensed professionals in question received a range of penalties which included license suspension, probation, and substantial fines. All of this was accomplished within a rational and effective regulatory system, with the involvement licensed professional peers and under the guidance of the Board of Regents, in accordance with Title 8 of the Education Law. The departure from this approach that this bill represents would undermine that regulatory scheme and result in a confusing set of standards for architects and engineers licensed in New York City as compared to the rest of the State. Because of this, we strongly oppose allowing any entity, including NYCDOB, to set up a competing professional discipline process.

Additionally, we note that SED presently makes the information requested by section 2 of the bill available on our Office of the Professions website. Electronic lists are available to the public on the Office of Professions website for all licensed professionals governed by Title 8 of the Education Law. Information currently available enables anyone to determine if an individual is licensed and if they are registered to practice. Further, information related to disciplinary

2

action since January 1994 is also available on the NYSED Office of Profession's website, including any associated limitations and conditions.  If the language of section 2 is construed to require SED to submit this information in another electronic format, we would be opposed to that provision as well.



17 July 2007

Mr. David Nocenti, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, NY  12224   RE: S. 4603 (Padavan)

Dear Mr. Nocenti:

As a member of the AIA New York State, Inc., I write to register my strong opposition to the above-referenced legislation.

My opposition to this legislation is primarily based on the fact that it gives the New York City Department of Buildings the power to effectively ban the professional practice of architecture by an individual architect. This power has always resided at the State Department of Education (SED), which has a sophisticated system for proper evaluation of serious claims against architects. The Department of Buildings simply does not have the expertise nor the resources to properly investigate, analyze and take action with respect to professional architectural standards.

As presently drafted, this bill would allow the Commissioner of the New York City Department of Buildings (a local official who may or may not be familiar with professional standards) to refuse documents filed by practitioners who have been found to have knowingly or negligently certified plans or applications that contained false information.

Additional provisions of the bill would require SED to submit to the New York City Department of Buildings the names of architects and engineers that are currently licensed, those who hold limited permits, and those whose licenses have been revoked, suspended, or who have been placed on probation. Section 4 of S. 4603 also makes provision for the New York City Department of Buildings, through regulation, to "set forth additional grounds for limitation of the filing privileges of or otherwise sanctioning architects...".

While I certainly support the discipline of practitioners who abuse self-certification privileges, it should remain solely under the purview of SED to take such disciplinary action. Enactment of S. 4603 represents a bureaucratic over-reach, allowing the Commissioner of the Department of Buildings to essentially take away an architect's license to practice. This is bad public policy and sets a terrible precedent.

To maintain administrative uniformity and to keep disciplinary action at the State level where it belongs, I respectfully request that the Governor veto S. 4603.

Sincerely,

E. G. Olley Jr. AIA   Principal

# AIA Brooklyn

A Chapter of the American Institute of Architects

*"Dedicated to the advancement of the architectural profession through education, outreach and mutual support"*



**Dmitriy M. Sherkor, AIA**
President

**Frank LoPresto, AIA**
President-Elect

**Sebastian D'Alessandro, AIA**
Treasurer

**Walter Maffei, AIA**
Secretary

**Directors**
Heywood Blaufeux, AIA
Richard Ferrara, AIA
Gerald I. Goldstein, AIA
Felix Tambasco, AIA

**Legal Counsel**
Raymond T. Mellon, Esq.

**Past Presidents**
Peter J. Mugavero, AIA        (2004-2005)
Glen V. Cutrona, AIA          (2002-2003)
Barbara Smith Miskara, AIA    (2000-2001)
Ann Fabozzo, AIA              (1998-1999)
John Gallagher, AIA           (1996-1997)
Guy Zagu, AIA                 (1994-1995)
Richard Moss, AIA             (1992-1993)
Pat Ragganti, AIA             (1990-1991)
Ronald U. Noll, AIA           (1988-1989)
Gilbert Gigliello, AIA        (1986-1987)

Anthony Giacobbe, AIA         (1984-1985)
H. Dickson McKenna, AIA       (1982-1983)
Ira Sherman, AIA              (1980-1981)
Louis Lieberman, AIA          (1978-1979)
Natale R. Anastasio, AIA      (1977-1978)
Wilbur A. Lupo, AIA           (1975-1976)
Thomas J. Colson, AIA         (1973-1974)
Thomas Sapolsky, AIA          (1971-1972)
Karl R. Greenfield, AIA       (1969-1970)
Harry Saled, AIA              (1967-1968)

Carl I. Pachall, AIA          (1966-1967)
I. Donald Weston, FAIA        (1965-1966)
George E. Beaty, FAIA         (1963-1964)
Charles M. Spindler, AIA      (1962-1963)
Herbert Epstein, FAIA         (1959-1961)
Irving P. Marks, AIA          (1957-1959)
Joseph Levy, Jr., AIA         (1955-1957)
Harry Silverman, AIA          (1953-1955)
Vito P. Battista, AIA         (1951-1553)
Martyn H. Weston, AIA         (1949-1951)

E. James Gambara, FAIA        (1947-1949)
Henry V. Murphy, AIA          (1945-1947)
Adolph Goldberg, AIA          (1943-1945)
Joseph Matkow, AIA            (1941-1943)
Robert F. Schirmer, AIA       (1940-1941)
Ralph M. Ritz, AIA            (1938-1940)
Stephen W. Dodge, AIA         (1936-1938)
Herbert C. Bowman, AIA        (1934-1936)
William A. Sanders, AIA       (1932-1934)
Charles C. Wagner, AIA        (1930-1932)

Robert Bryson, AIA            (1928-1930)
Arthur B. Koch, AIA           (1927-1928)
Thomas E. Snook, Jr., AIA     (1925-1927)
William H. Gompert, FAIA      (1923-1925)
John B. Slee, FAIA            (1921-1923)
T. Edward Snook, AIA          (1919-1921)
Carroll H. Pratt, AIA         (1917-1919)
Frank J. Helmle, AIA          (1915-1917)
William P. Bannister, FAIA    (1913-1915)
Woodruff Leeming, AIA         (1912-1913)

Alexander Mackintosh, FAIA    (1910-1912)
Henry Clay Carrel, AIA        (1907-1910)
Frank H. Quinby, AIA          (1905-1907)
Washington Hull, FAIA         (1903-1905)
J. Monroe Hewlett, FAIA       (1902-1903)
B.L. Daus, AIA                (1901-1902)
J. Monroe Hewlett, FAIA       (1900-1901)
Isaac E. Ditmars, FAIA        (1898-1900)
George L. Morse, FAIA         (1896-1898)
Louis de Coppet Bergh, FAIA   (1894-1896)

The Honorable Eliot Spitzer
Governor of the State of New York
Executive Chamber
State Capitol
Albany, NY 12224

**RE: S. 4603 (Padavan) / A. 7746 (Brennan)**

Dear Governor Spitzer:

I am, the undersigned, writing to register my strong opposition to the above-referenced legislation, which I believe is patently unconstitutional.

My opposition to this legislation is primarily based on the fact that it empowers a local building department to take away the professional practice of architects. This power has solely resided in the State Department of Education ("SED"), which has a sophisticated due process system that properly evaluates and adjudicates any serious claims against architects. The proposed bill does not ensure the same due process protections since the New York City OATH* trial judges simply make recommendations, not binding determinations. The Commissioner of the New York City Department of Buildings ("DOB") is then free to completely disregard, modify or amend any determination made after an OATH trial. The consequence of this Bill is that the property right of an architect's license to practice architecture in the City of New York can be taken away without due process.

As presented written, S. 4603/A. 7746 would, for example, allow the Commissioner of the New York City DOB (a local official who may or may not be familiar with professional standards) to refuse documents filed by practitioners who have been found by OATH (and not SED) to have knowingly or negligently certified plans or applications that contained false information. This would effectively constitute a taking of an architect's property right in his/her license to practice architecture in the City of New York without due process.

Further, this Bill would require the SED to submit to the DOB the names of architects and engineers that are currently licensed, those who hold limited permits, and those whose licenses have been revoked, suspended, or who have been placed on probation. Section 4 of S. 4603/A. 7746 also makes provision for the New York City DOB, through regulation, to "set forth additional grounds for limitation of the filing privileges of or otherwise sanctioning architects..."

While we certainly support the DOB's right to discipline practitioners who abuse self-certification privileges, the right to revoke that specific DOB granted privilege should not be used as a means to empower the DOB over licensing issues. Licensing issues should remain solely under the purview of SED to take appropriate disciplinary action. Enactment of S. 4603/A. 7746 represents a bureaucratic over-reach, allowing the Commissioner of the DOB to unconstitutionally take away an architect's license to practice in the City of New York.

To maintain administrative uniformity and to keep disciplinary action at the State level where it belongs, we respectfully request that S. 4603/A. 7746 be vetoed.

Sincerely,

1539 Bath Avenue
Brooklyn, NY 11228
Tel (718) 259-0070
Fax (718) 259-1070
Website: www.aiabrooklyn.org

\* Office of Administrative Trials and Hearings