UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LEON ST. CLAIR NATION

08-CV-___*86 2*___

Plaintiff,

**DECLARATION OF
GREGORY CHILLINO**

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF BUILDINGS, and PATRICIA
J. LANCASTER,

Defendants.
-------------------------------------------------------------------X

I, Gregory T. Chillino, pursuant to 28 U.S.C. Section 1746, declare as follows:

1.     I am an attorney for the law firm of Plaintiff in the above-captioned matter. Before entering private practice, I was formerly employed by the New York City Department of Buildings ("DOB") as an investigative attorney and Director of Prosecutions. Stuart A. Klein, Esq., the principal of the firm, was formerly Inspector General and acting General Counsel of DOB. The practice of our firm practice consists, to a great extent, in dealing with matters before DOB including disciplinary actions.

2.     On or about December 18, 2006, DOB served the Plaintiff with a Petition and Notice of Charges (annexed hereto as Exhibit A) alleging violation of the Rules of the City of New York ("RCNY") Section 21-02(b). Both the Petition and the accompanying Exhibit A stated that DOB was seeking revocation of the Plaintiff's self-certification and Directive 14 privileges upon a finding that the charges were sustained. No mention or notice was given regarding a prohibition from all filing with DOB. Pursuant to RCNY 21-02 (e), which was in effect at this time, the most extreme penalty Plaintiff would face would be a revocation of his limited review privileges which he could seek re-instatement for after one year.

3.      Along with Stuart A. Klein, Esq., I represented the Plaintiff at the hearings held before the Office of Administrative trials and Hearings ("OATH") on May 21, 22, and 29, 2007. On or about October 26, 2007, OATH Judge Kara Miller issued her report and recommendation to DOB Commissioner Lancaster (report and recommendation annexed hereto as Exhibit B).

4.      By letter dated December 4, 2007, Commissioner Lancaster issued her determination adopting Judge Miller's Recommendation and revoking Plaintiff limited review privileges (letter annexed hereto as Exhibit C).  The letter also contained an invitation for the Plaintiff to submit to Lancaster an explanation as to why Lancaster should not apply the New York City Administrative Code ("AC") Section 26-124 (c) to Plaintiff, prohibiting him form filing any application of document with DOB.

5.      Annexed as Exhibit D is a copy of Chapter 542 of the Laws of New York, 2007 which proposed the act to amend the AC and add provision 26-124(c). The prior subsection (c) became subsection (d) and the new subsection (c) instituted a new penalty by which Lancaster could prohibit an engineer from filing any application or document with DOB.

6.      As the law only became effective August 15, 2007, years after the misconduct alleged against Plaintiff and months after the hearing for violation of RCNY 21-02 took place, upon information and belief, Mr. Klein immediately contacted DOB Inspector General John Woods, who prosecuted the case before OATH.  Mr. Woods referred the matter to Stephen Kramer, DOB's Senior Counsel.   Mr. Klein informed Mr. Kramer that Lancaster's retroactive application of 26-124(c) to Plaintiff would be unconstitutional.  Mr. Klein further informed Kramer that such an application would be a

draconian penalty as: the Plaintiff had filed thousands of applications with DOB without any discipline either from DOB or the State Education Department who has jurisdiction over Plaintiff's engineer's license; that Plaintiff had not been found guilty of any intentional misconduct, but of mere negligence relating mainly to curb correction work posing no threat to public safety whatsoever; and that that DOB had never applied this severe penalty to any other architect or engineer, despite far more egregious misconduct.

6.      Upon information and belief, Mr. Kramer called Mr. Klein a few days thereafter and extended the time for Plaintiff to make the submission. Mr. Kramer personally informed Mr. Klein that the Commissioner did not want to review constitutional arguments regarding an ex post fact application of law. Our firm was directed to discuss why, under the circumstances of the case, and given Plaintiff's record, application of the law was unwarranted.

7.      By letter dated January 2, 2008, Mr. Klein made the submission to Commissioner Lancaster (letter annexed hereto as Exhibit E). While briefly mentioning that application of the law would be ex post facto, pursuant to Kramer's direction, Mr. Klein refrained from making a legal argument on the issue.

8.      By letter dated January 15, 2008, Commissioner Lancaster applied AC Section 26-124(c) to Plaintiff, effective immediately, prohibiting Plaintiff from filing any application or document with DOB for two years (letter annexed as Exhibit F). Commissioner Lancaster faulted Plaintiff's letter for failing to cite to statutes or case law supporting the constitutional argument.  Thus, after following the direction of Lancaster's Senior Counsel, Lancaster used the failure to argue the constitutional issue as a basis for prohibiting Plaintiff from filing.

9.    Both from the letter of January 2, 2008, and through conversations of me and Mr. Klein with two of her highest ranking staff, Lancaster was aware that application of AC Section 26-124 (c) was unconstitutional. Despite said warnings, she knowingly and intentionally applied the provision retroactively.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 23, 2008


Gregory T. Chillino

# EXHIBIT A

OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS
CITY OF NEW YORK:  COUNTY OF NEW YORK
------------------------------------------------------X

**Patricia J. Lancaster, F.A.I.A.** :
**Commissioner, Department of Buildings** :
**280 Broadway** :
**New York, NY 10007** :   **AMENDED PETITION**
                          :
       *- against -* :
                          :
**Leon St. Clair Nation** :
**Professional Engineer #065052** :
**JNS Engineers PC** :
**152 East 88ᵗʰ Street** :
**Brooklyn, New York 11236** :
------------------------------------------------------X

**TO THE OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS:**

    Vittoria Fariello, Investigative Attorney, of counsel to Patricia Lancaster, the

Commissioner of the Department of Buildings ("Buildings"), states that:

1. I am the Investigative Attorney assigned to the instant case.

2. This Amended Petition and the Charges and Specifications attached thereto as
   Exhibit A are submitted pursuant to OATH Rules of Practice, Chapter I, Sub-
   chapter § 1-23 and Sub-chapter § 1-25.

3. I respectfully request that this Court recommend the revocation of Respondent's
   self-certification privileges and Directive 14 privileges upon a finding that the
   attached Charge and Specifications have been substantiated.

Dated: March 15, 2007

                                      _____

                                      VITTORIA FARIELLO
                                      Investigative Attorney
                                      New York City Department of Buildings
                                      Special Investigative Unit
                                      83 Maiden Lane, 4ᵗʰ Floor
                                      New York, N.Y.  10038
                                      (212) 825-7315

CC:    Stuart A. Klein, Esq., Attorney for Respondent

## EXHIBIT A

The Rules of the City of New York §21-02(b) ("Grounds for Exclusion."),  grants the Commissioner of the Department of Buildings the power to exclude a registered architect or licensed professional engineer from the Department of Buildings' (the "Department") Professional Certification of Applications and Plans" process (Operations Policy and Procedure Notice 2/95) (a/k/a "self-certification") and participation in procedures for limited supervisory review of plans and applications pursuant to Directive 14 of 1975, upon a finding that the registered architect or licensed professional engineer committed misconduct identified within that section. Respondent professional engineer is hereby charged with the following:

| | |
|---|---|
| **CHARGE #1:** | **RCNY §21-02(b)(3):  The architect or engineer has knowingly or negligently made false or misleading statements or knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application or report filed with the Department, or knowingly failed to file a report required by law or the Department or willfully impeded or obstructed such filing, or induced another person to do so.** |
| **Specification #1:** | On or about December 16, 2004, Respondent or his agent submitted doctored photographs to the Department of Buildings ("Buildings") in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York. |
| **Specification #2:** | On or about February 15, 2005, Respondent or his agent submitted doctored photographs to Buildings in connection with a Builder's Pavement Plan for 91-99 South 3rd Street, Brooklyn, New York. |
| **Specification #3:** | On or about June 21, 2006, Respondent or his agent submitted a "Plan/Work Report For PC Filing" to Buildings that falsely represented an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location. |
| **Specification #4:** | On or about July 20, 2006, Respondent or his agent submitted "Site Plan, Floor Plans and Notes" to Buildings that falsely represented an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location. |
| **Specification #5:** | On or about December 21, 2006, Respondent or his agent submitted a "Post Approval Amendment" to Buildings that falsely represented fire damage to an existing two story building at 150 29th Street, Brooklyn, New York when, in fact, there was not an existing two story building at that location. |

# EXHIBIT B



## THE CITY OF NEW YORK
### OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS
40 RECTOR STREET  •  NEW YORK, NEW YORK 10006 -1705
212-442-4900  •  FAX  212-442-8910 • TDD  212-442-4939
NYC.GOV/OATH • KMILLER@OATH.NYC.GOV

ROBERTO VELEZ
CHIEF ADMINISTRATIVE LAW JUDGE

KARA  J.  MILLER
ADMINISTRATIVE LAW JUDGE
212-442-4934

October 26, 2007

Patricia J. Lancaster, FAIA
Commissioner
Department of Buildings
280 Broadway
New York, New York 10007

Re:    *Department of Buildings v. Fekete and Nation,*
OATH Index No. 1118-19/07

Dear Commissioner Lancaster:

The above referenced disciplinary proceeding was referred to me to hear and report  The record of this proceeding, including my report and recommendation, is enclosed for your review and final decision.

Respondents are entitled to comment on the report and recommendation prior to your final action.  By copy of this letter, I am instructing respondents' counsel, should he wish to comment on my report prior to your final determination, to contact your office immediately in order to ascertain when you will require comments to be submitted.

Upon taking final action in this matter, please have your office send a copy of your decision to the Office of Administrative Trials and Hearings so that we may complete our files.

Very truly yours,

Kara J. Miller
Administrative Law Judge

KJM:sc

Enc.

cc:    Vittoria Fariello, Esq.
Stuart A. Klein, Esq.

RECEIVED
NOV 0 5 2007
BY: -------------------

# *Dep't of Buildings v. Fekete*

OATH Index No. 1118-19/07 (Oct. 26, 2007)

Consolidated proceeding brought against an expediter and an engineer. Petitioner seeks to revoke respondent expediter's registration for submitting "doctored" photographs in conjunction with two builder's pavement plans. In addition, petitioner seeks to rescind respondent engineer's certification privileges for certifying the accuracy of the two sets of altered photographs and an alteration application that falsely represented an existing two-story structure rather than the one-story structure that was actually at the location. ALJ finds that respondent engineer's self-certification privileges should be rescinded. ALJ further finds that the Department failed to meet its burden with respect to respondent expediter and recommends that the charges against him be dismissed.

## NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS

*In the Matter of*
### DEPARTMENT OF BUILDINGS
*Petitioner*
- against -
### HERSHEY FEKETE and LEON ST. CLAIR NATION
*Respondents*

## REPORT AND RECOMMENDATION

**KARA J. MILLER**, *Administrative Law Judge*

This proceeding was referred by petitioner, the Department of Buildings, pursuant to title 1, sections 31-01 and 21-02 of the Rules of the City of New York, and section 27-140.1 of the Administrative Code. The Department is seeking to revoke respondent Hershey Fekete's expediter registration and exclude respondent Leon St. Clair Nation from participating in the self-certification process, which permits limited supervisory review of applications and plans pursuant to Directive 14-75.

Respondent Fekete was charged with submitting doctored or altered photographs to the Department in connection with the Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York and 91-99 South Third Street, Brooklyn, New York (ALJ Ex. 1). Respondent Nation is

-3-

carefully reviewing petitioner's direct case, I find that the proof was more than sufficient to establish a prima facie case. Accordingly, respondents' motions to dismiss are denied.

## **ANALYSIS**

Section 27-140.1(a) of the Administrative Code requires a person to be registered with the Department prior to submitting or seeking approval of applications and plans. Respondent Fekete is currently registered with the Department as an expediter. As an expediter, he is hired by architects, developers, contractors, and homeowners to serve as a liaison between them and the Department. He submits and files plans, negotiates approvals and obtains permits (Tr. 425). Respondent Fekete is charged with violating sections 31-01(a)(2, 3, 5, 6) of Title 1 of the Rules of the City of New York for fraudulent dealings; gross negligence, incompetence, misrepresentation or misconduct relating to being an expediter; poor moral character that adversely reflects upon his fitness to be an expediter; and knowingly or negligently making false filings with the Department with respect to two properties (ALJ Ex. 1).

Respondent Nation is a licensed engineer, who pursuant to Directive 14-75, may self-certify applications and plans to obtain permits with limited examination or scrutiny by the Department. The objective of self-certification is to speed up the process. It allows for an expedited approval process and faster issuance of permits so that construction will not be adversely affected by processing delays (Tr. 264). Respondent Nation is charged with violating section 21-02(a)(3) of Title 1 of the Rules of the City of New York by knowingly or negligently making false or misleading statements or knowingly or negligently falsifying submissions with respect to three properties (ALJ Ex. 2).

Respondents have been charged with submitting fraudulent documents or photographs to the Department with respect to three different properties in Brooklyn, New York. For the sake of clarity, each property will be discussed individually.

-5-

authenticity of the photographs, an objection was placed on the face of the folder and the file was left with the Deputy Commissioner for further action (Tr. 158-59).

Sometime in the Spring of 2005, Mr. Gallagher was on his way to examine another site for the Department when he happened to drive by Lynch Street. Remembering his suspicions about the photographs, he decided to see if respondents' submissions were representational of the building. When he arrived at the location, he was surprised to see that the building was quite different than the photographs. The most striking difference was that the building had a flight of seven stairs leading up to the front entrance, while the submitted photographs depicted the front entrance at ground level. In addition, the sidewalk had a trench along the building line in which several garbage cans were stowed next to security and ventilation grates for a basement window. The trench, the window and the grates are not present in the photographs. Mr. Gallagher reported the discrepancies to the Department. Ed Curtis, an Investigative Inspector for the Department, went to 11 Lynch Street on April 1, 2005, to photograph the actual facade of the building and document the difference (Pet. Exs. 7A-E). Both Mr. Gallagher and Mr. Curtis attested to the fact that the building was accurately depicted in the photographs taken by Mr. Curtis and that the building at 11 Lynch Street actually had a front stoop, with an entrance at the top of the flight of stairs (Pet. Exs. 6A-F, 7A-E; Tr. 67, 76-77, 79-80).

Mr. Gallagher testified that if respondents had submitted photographs which correctly and accurately represented the front of the building, they would have demonstrated that the building was not in compliance with the Building Code. Since 11 Lynch Street is a multiple dwelling, the entrance must be handicap accessible. A flight of seven stairs would be an impediment to someone confined to a wheelchair from entering or exiting the building on their own accord (Tr. 90-91).

Both respondents acknowledged that they never went to 11 Lynch Street to inspect the site nor made any other attempts to determine the accuracy of the photographs. Each asserted that they are not required to visit the site before certifying and/or submitting documents to the Department. Instead they passed on the blame for the altered photographs to the owner of the building.

Respondent Nation testified that he did not take the photographs, nor did he go to the site prior to submitting them. The photographs were given to him by respondent Fekete. He testified that he went to respondent Fekete's office to review them, as well as documents for other properties.

-7-

that in his opinion, based on his many years of experience in both the public and private sector, an expediter never has to visit a building site and an engineer seldom has to inspect the site prior to submitting plans (Tr. 308-09).

With respect to respondent Fekete, the Department failed to establish that he had actual knowledge that the photographs had been altered. Although it tried to portray him as a mastermind behind this duplicitous scheme, this was nothing more than an unsupported theory. The Department's suspicions are not proof of a conspiracy to defraud and are an insufficient basis upon which to sustain a charge of misconduct under the Administrative Code. *See Fire Dep't v. Loscuito*, OATH Index No. 509/06, at 20 (June 14, 2006); *see also, Fire Dep't v. Berardi*, OATH Index No. 350/04 (Sept. 7, 2004); *Transit Auth. v. Dugger*, OATH Index No. 794/91 (May 14, 1991).

The Department argued that even if respondent Fekete did not know that the photographs were doctored, he should have known that they were. It is undisputed that respondent Fekete reviewed the photographs before forwarding them to respondent Nation for evaluation and certification. Respondent Fekete, however, credibly testified that he did not notice that the photographs had been altered when he examined them. Instead of looking at the facade of the building, he was focused on the pavement. Unlike Mr. Gallagher, respondent Fekete is not a licensed architect and does not have the same experience or expertise. While it was readily apparent to Mr. Gallagher, an accomplished architect, that the photographs had been doctored, it might not have been so apparent to respondent Fekete. Furthermore, he was relying on respondent Nation's professional engineering review of the documents before they were certified.

The Department contended that respondent Fekete's expediter registration should be revoked simply by virtue of the fact that he submitted the documents and the documents are fraudulent. In support of its position, the Department relied on three prior expediter registration revocation cases decided by this tribunal. In *Department of Buildings v. Krasznoi*, OATH Index No. 409/00 (Jan. 12, 2000), *Department of Buildings v. Morel*, OATH Index No. 562/00 (June 12, 2000), and *Department of Buildings v. Jennings*, OATH Index No. 561/00 (Nov. 30, 2000), the judges recommended revocation based on the submission of documents containing a forged engineer's signature and seal. Respondent expediters were found to be incredible. The respondents were unable to insulate themselves from liability by claiming that they never knew or met the engineers

-9-

*Jennings*, 561/00, at 6. Although Mr. Gallagher acknowledged that there is nothing in the Building Code or Department policy notices that requires an expediter or an engineer to visit a particular site or actually take submitted photographs, he explained that licensed engineers are bound by a professional code (Tr. 131, 154, 170, 172, 225, 227, 262, 264).

Section 29.3(a)(3) of the Rules of the New York State Board of Regents, provides that unprofessional conduct for an engineer includes, "certifying by affixing the licensee's signature and seal to documents for which the professional services have not been performed by, or thoroughly reviewed by, the licensee." 8 NYCRR § 29.3 (Lexis 2007). The Department argued that it has an expectation that a licensed engineer participating in the self-certification program will abide by the provisions set forth in this professional code.

In addition to the professional standards set forth in the Rules of the Board of Regents, the National Society of Professional Engineers has published a Code of Ethics for Engineers which states in general, that "the services provided by engineers require honesty, impartiality, fairness and equity, and must be dedicated to the protection of the public health, safety and welfare." (Pet. Ex 2, at 1). This ethics code, sets forth as a rule of practice that "engineers shall not affix their signatures to any plans or documents dealing with subject matter in which they lack competence, nor to any plan or document not prepared under their direction and control." (Pet. Ex 2, at 2)

Prior to making submissions under the Department's self-certification program, a professional's certification form provided by the Department must be executed by a licensed architect or engineer. The certification form, which is signed and sealed by the engineer, reads,

> I hereby state that I have exercised a professional standard of care in certifying that the filed application is complete and in accordance with applicable laws, including the rules of the Department of Buildings, as of this date. I am aware the Commissioner will rely upon the truth and accuracy of this statement. . . . I further realize that any misrepresentation or falsification of the facts made knowingly or negligently by me, my agents or employees, by others with my knowledge, will render me liable for legal and disciplinary action by the Department of Buildings and other appropriate authorities, including termination of participation in the professional certification procedures at the Department of Buildings.

(Pet. Ex. 4).

-11-

judgment. In contrast, respondent Nation was evasive and vague. He had a cavalier attitude and unabashedly acknowledged that he only took a minute or two to review the photographs.

As a licensed engineer, prior to certifying a document for services that he did not perform, respondent Nation is professionally and ethically required to thoroughly review it. Since neither he nor his agents/employees actually performed engineering services in connection with the pavement at 11 Lynch Street, respondent Nation was obligated to thoroughly review the BBP before attesting to its accuracy. A thorough review would have required him to take more than two minutes to evaluate the photographs.

If he had done a professional review by taking the time necessary to examine the photographs, surely as a licensed engineer with nearly twenty years of experience, he would have detected that the photographs were suspicious. He would have observed that the garbage cans appeared to have been added into the photographs and were suspended or floating above the sidewalk, the bricks in the facade did not match and appeared to be floating, and the garbage cans had chains suspended in mid-air without being attached to anything. Even if he was unable to determine exactly what was wrong with the photographs, he should have been alerted to the fact that he or one of his agents/employees needed to go to the site to verify their accuracy. It is difficult to believe that a licensed professional attesting to the accuracy of a photograph would be willing to certify it when he has never been to the site, does not know who took the picture, and spent less then two minutes reviewing the photograph.

Respondent Nation failed to exercise the degree of care that a licensed professional of ordinary prudence would have exercised under the same circumstance. Simply stated, he acted negligently. Respondent Nation should have known that there was something wrong with the photographs. It is clear that he failed to even conduct a minimal evaluation which would have led him to conclude that the photographs had been altered. In addition, since respondent Nation did not perform or supervise the underlying work in the photographs, either he or his agent/employee should have gone to the site to ensure that the work was properly done prior to certifying the photographs. Thus, he failed to exercise a professional standard of care. *See Dep't of Buildings v. Pettit*, OATH Index No. 190/02 (July 30, 2002) (architect's use of limited supervisory review for a construction

-13-

Shortly thereafter, on February 15, 2005, respondent Fekete submitted another photograph to demonstrate that the catch basin had been replaced with a larger catch basin (Pet. Ex. 12A). In addition, the curb no longer covered the catch basin and the curb cut had been repaired, leaving a solid curb face from the sidewalk to the street. When Mr. Gallagher received this photograph only a week or two after his rejection of the prior photograph, he became suspicious. He explained that replacement of the catch basin requires an approval from the Department of Environmental Protection. It would take approximately six to eight weeks to get such an approval and several days to complete the work (Tr. 107, 110-11, 240-41).

After Mr. Gallagher compared the February 15, 2005 photograph (Pet. Ex. 12A) to the photograph submitted several weeks earlier (Pet. Ex. 12B), it became apparent that the February 15, 2005 photograph had been altered. The backgrounds of the two photographs are virtually identical with the exception of the catch basin and curb face, both photos have the same cars parked in the same locations on the street, the same amount of moisture along the curb line, the same garbage and debris in the street, and even a pedestrian on the opposite side of the street standing in the same exact location, in the same exact position, wearing the same exact outfit.

The most striking and obvious similarity in the photographs that immediately draws one's attention is a unique car parked closest to the catch basin. It is either a late 1960s or early 1970s, mustard-colored, four-door Dodge sedan with a black roof and a missing hubcap on the rear driver side tire, with the same license plate. The similarities are so obvious and the differences so minor in the two photographs, that when they were submitted into evidence, I had thought counsel had made a mistake and given me two copies of the same photograph.

The only differences in these two photographs when compared side-by-side is that in the February 15, 2005 photograph, the catch basin is larger and a different color, the curb face does not have a cutout, and the gravel and debris depicted in the prior submitted photograph lying to the right of the catch basin is not present. In both photographs, however, a crushed plastic soda bottle remains lying on the ground slightly to the right and in front of the catch basin. A side by side comparison

-15-

compare them. Nothing in particular about the February 15, 2005 photograph stood out as being unusual. It appeared to be legitimate (Tr. 434-35, 440-41).

The Department charged the respondents with either knowingly or negligently submitting doctored photographs in connection with the BPP for this property. It argued that respondents had knowledge of the altered photographs or an opportunity through reasonable diligence to acquire such knowledge. The Department also contended that respondents' submission of the fraudulent photograph for 91-99 South Third Street on February 15, 2005, was part of a scheme designed to defraud the Department.

Respondents denied colluding and perpetrating a fraud on the Department. Respondents further denied knowing that the photographs were doctored or acting negligently in reviewing them prior to submission. Although they acknowledged that they never went to the site or took the photographs, they argued that they were under no professional or legal obligation to do so.

As discussed earlier, the Department failed to establish a standard of care for expediters. Moreover, it was never proven that an expediter is obligated to go to a site or actually take the photographs that he submits to the Department. However, unlike the photographs for 11 Lynch Street, which may have required some expertise to determine that they were altered, these photographs when compared side by side are obviously fraudulent. An ordinary lay person could easily have detected that the photographs were altered. Had respondent Fekete had both photographs simultaneously in his possession, he would had to have realized, even upon a cursory review, that they had been altered.

Nevertheless, respondent Fekete credibly testified that he no longer had possession of the prior photograph because he had already submitted it to Mr. Gallagher and it was in the Department's file. He does not keep copies of the photographs that he submits to the Department on behalf of his clients. Taking into consideration the volume of his business and the number of photographs that he forwards to the Department, it is unrealistic to expect respondent Fekete to remember that the background of a photograph given to him approximately three weeks earlier was identical to the February 15, 2005 photograph. Therefore, I find that he did not knowingly or negligently submit a doctored photograph to the Department on February 15, 2005.

-17-

falsely representing in an alteration application that an existing two-story structure was located at 150 29th Street, when in actuality it was only a one-story structure (ALJ Ex. 2).

Juan Cotto testified that 150 29th Street is located directly behind his house, where he has resided since 1966. He is very familiar with 150 29th Street, which has a four-story building located on the front portion of the property. In 1978, after returning home from a year in the Marines, Mr. Cotto noticed that a one-story, cinder block shack had been erected in the rear portion of the property, behind the four-story building. He initially thought that this new structure was being used for storage, but later discovered that someone was residing there (Tr. 207-09).

In November 2006, Mr. Cotto observed construction workers working on the cinder block building. He was surprised when he saw the workers framing a second floor with metal studs because, at first, he had thought that they were only repairing the roof. Mr. Cotto was unhappy that his neighbors were adding a second floor to the existing one-story structure because it would block his view. He called the Department to file a complaint and took several photographs to document the progress of the construction work (Pet. Exs. 16A-D; Tr. 209-11).

Based on Mr. Cotto's complaint, the Department conducted an investigation, which included reviewing all of the documents related to the construction project that had been previously filed with the Department. The Department discovered that on or about July 20, 2006, respondent Nation or his agent/employee had submitted an alteration application for 150 29th Street, which included the Plan/Work Report for PC Filing and the Site Plan, Floor Plans and Notes (Pet. Exs. 13, 14). Both submissions indicated that the owner planned on making alterations to an already existing two-story building.

Both the Plan/Work Report for PC Filing and the Site Plan, Floor Plans and Notes were self-certified by respondent Nation and accepted under Directive 14-75 by Bajda Krzysztof, a plans examiner in the Department's Brooklyn office. As discussed above, Directive 14-75 permits licensed architects and engineers to submit self-certified plans and applications for an expedited review, thereby speeding up the approval process and minimizing construction delays. Under this directive, the Department does not go to the site to conduct an inspection nor does it do an in-depth examination of the submitted documents. Since the Department is only doing a cursory review of

-19-

obtaining a limited review of the application by the Department, there are tax benefits to claiming that the project merely involved alterations to an existing second floor, rather than the construction of an entirely new floor (Tr. 124).

Respondent Nation testified that he never went to the site, asserting that he was under no professional or legal obligation to do so. Mr. Dennis, respondents' expert, agreed that respondent Nation was not obligated to go to the site before certifying the ALT 2. When asked about his own practices, however, Mr. Dennis stressed that he always does a diligent inquiry on any project that he puts his name on and that his general practice is to go to the site to better assess the situation. Mr. Dennis explained that he is distrustful of developers, builders and contractors because he has been lied to in the past (Tr. 323, 342-343). Similarly, Mr. Gallagher testified that during the 20 years that he was in private practice he always went to the site to evaluate the situation before certifying applications or plans (Tr. 125).

Respondent Nation contended that he did a sufficient review of the alteration application before certifying it. He testified that he reviewed the plans, an asbestos report and the I-Card for the premises (Tr. 367-68, 422). I found respondent Nation's testimony incredible. He was evasive and vague. For the most part, he was non-responsive and appeared disdainful of the entire proceeding. Respondent Nation has an obvious stake in the outcome of this hearing, providing him with a clear motivation to overstate what his review entailed. His testimony that he researched this property online and examined the I Card was unpersuasive, since he failed to provide proof of his research efforts or even testify as to what information it yielded.

The ALT 2 filed by respondent Nation for 150 29th Street indicates that there is an already existing two-story structure on the premises. Respondent Nation contended that the asbestos report issued by Shaul Singer, an asbestos investigator, corroborated that there was an existing two-story structure (Resp. Ex. H). This report, however, is rebutted by Mr. Cotto's credible testimony and the photographic evidence documenting the progress of the construction (Pet. Exs. 16A-D). Mr. Cotto, a private citizen, voluntarily appeared at this tribunal to testify in this matter. He had never met respondent Nation before and had no interest in the outcome of this proceeding. Indeed, Mr. Cotto appeared somewhat unclear as to the actual purpose of the hearing. His testimony was straightforward, without embellishment or exaggeration. Thus, I must conclude that the asbestos

-21-

his employee and he did not know the draftsman's professional qualifications or training. This is in direct violation of the Code of Ethics for Engineers, which requires engineers not to affix their signature to any plan not prepared under their direction and control (Pet. Ex. 2). Upon reviewing these plans, respondent Nation had a professional and ethical obligation to determine their accuracy by visiting the site himself or dispatching an employee under his supervision to the premises, prior to self-certifying the plans as being in compliance with the Building Code and other applicable laws and regulations. Had he gone to the site, it would have become obvious that the existing structure had only one story.

Accordingly, I find that respondent Nation negligently submitted a Plan/Work Report for PC Filing and a Site Plan, Floor Plans and Notes in connection with an alteration application for 150 29th Street, Brooklyn, New York, which falsely indicated that there was an existing two-story structure at that location.

Finally, respondent Nation was charged with submitting a Post Approval Amendment to Buildings that falsely represented fire damage to an existing two-story building at 150 29th Street (ALJ Ex. 2). There was no evidence or testimony presented with respect to this charge. As such, this charge should be dismissed for the Department's failure to meet its burden.

## FINDINGS AND CONCLUSIONS

1. The Department failed to establish by a preponderance of credible evidence that respondent Fekete knowingly or negligently submitted doctored photographs in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York.

2. The Department failed to establish by a preponderance of credible evidence that respondent Fekete knowingly or negligently submitted doctored photographs in connection with a Builder's Pavement Plan for 91-99 South Third Street, Brooklyn, New York.

3. The Department failed to establish by a preponderance of credible evidence that respondent Nation knowingly submitted doctored photographs in connection with a Builder's Pavement Plan for 11 Lynch Street, Brooklyn, New York.

-23-

e only common link with respect to each of these properties and false submissions to the
De     ent is respondent Nation. Respondent Nation has demonstrated that he has no sense of
p       ional responsibility or propriety and that he cannot be relied upon to properly exercise his
          sional judgment within the self-certification process. *See Dep't of Buildings v. Petit*, OATH
          ‹ No. 190/02 (July 30, 2002).

Respondent Nation's disregard for public safety and lack of integrity brings into question
whether he is actually fit to be licensed by the Board of Regents as an engineer. At the very
minimum, he should not be permitted to continue participating in the Department's self-certification
program. It is a privilege that should be reserved for ethical, honest, trustworthy, and diligent
professionals, which respondent has proven himself not to be. Accordingly, I recommend that
respondent Nation be excluded from participation in the Department's limited supervisory review
procedures.

With respect to respondent Fekete, I find that the Department failed to meet its burden in
establishing that he knowingly or negligently made false submissions. Therefore, I recommend that
the charges against respondent Fekete be dismissed.

Kara J. Miller
Administrative Law Judge

October 26, 2007

SUBMITTED TO:

**PATRICIA LANCASTER, FAIA**
*Commissioner*

APPEARANCES:

**VITTORIA FARIELLO, ESQ.**
**JOHN WOODS, ESQ.**
**MARK ASSA, ESQ.**
*Attorneys for Petitioner*

**STUART KLEIN, ESQ.**
*Attorney for Respondents*

# EXHIBIT C

# NYC BUILDINGS

Patricia J. Lancaster, FAIA
Commissioner

Executive Offices:
280 Broadway, 7th Floor
New York, NY 10007

212 566 3100
212 566 3754 fax
www.nyc.gov/buildings

December 4, 2007

Mr. Leon St. Clair Nation
Geezman Company
93 Court Street
Brooklyn, NY 11201

Dear Mr. Nation:

I have completed my review of the Report and Recommendation of OATH
case 1119-19/07 dated October 26, 2007 of Administrative Law Judge
Kara J. Miller who was designated to conduct a hearing on charges and
specifications that were served upon you on December 19, 2006. I have
further reviewed the transcript of the hearing held on May 21, 22, and 23 of
2007 before Judge Miller.

In her October 26, 2007 Report and Recommendation, Judge Miller found
that you negligently submitted false photographs and documents to the
Department of Buildings for three properties and recommended that you
be excluded from participation in the Department's limited supervisory
review procedures. A copy of Judge Miller's Report and Recommendation
is enclosed.

I hereby adopt Judge Miller's Report and Recommendation and findings of
fact and find you guilty in accordance with her recommendation.
Accordingly, I hereby revoke your professional certification privileges
including those under Directive 14 of 1975 effective immediately.

Administrative Code §26-124 (c), as amended, authorizes the
Commissioner of the Department of Buildings to refuse to accept any
application or other document bearing the signature of someone who has
been found to have intentionally or negligently submitted false documents
to the Department. You are hereby directed to submit in writing within ten
business days of the date of this letter any reasons why I should not
impose this further sanction.

Very truly yours,

Patricia J. Lancaster, FAIA
Commissioner

Enclosure

# EXHIBIT D

**CHAPTER TEXT:**

LAWS OF NEW YORK, 2007

CHAPTER 542

AN ACT to amend the administrative code of the city of New York and the education law, in relation to filings by persons who have negligently or knowingly made false statements in documents submitted to the department of buildings of the city of New York and filings architects or professional engineers whose licenses have been revoked or suspended or who have been placed on probation

Became a law August 15, 2007, with the approval of the Governor. Passed by a majority vote, three-fifths being present.

<u>The People of the State of New York, represented in Senate and Assembly, do enact as follows:</u>

Section 1. Subdivision c of section 26-124 of the administrative code of the city of New York is relettered subdivision d and a new subdivision c is added to read as follows:
<u>c. In addition to any other penalty provided by law, the commissioner may refuse to accept any application or other document submitted pursuant to or in satisfaction of any requirement of this chapter or of chapter one of title twenty-seven of this code or any rule or regulation of any agency promulgated thereunder that bears the signature of any person who has been found, after a hearing at the office of administrative trials and hearings pursuant to the department's rules, to have knowingly or negligently made a false statement or to have knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application, report or certification of the correction of a violation required under the provisions of this chapter or of chapter one of title twenty-seven of this code or any rule or regulation of any agency promulgated thereunder.</u>

§ 2. Subdivision 4 of section 6507 of the education law is amended by adding a new paragraph e-1 to read as follows:
<u>e-1. Compile and make available to the New York city department of buildings in electronic form: (i) a list of all architects and professional engineers currently licensed by and registered with the department; (ii) a list of all architects and professional engineers who currently hold limited permits issued by the department, together with the conditions and limitations applicable to each such limited permit; and (iii) a list of all architects and professional engineers whose licenses have been revoked or suspended by the board of regents of the state of New York or who are currently on probation, together with the date of revocation or the date and duration of suspension or probation, as applicable. The New York city department of buildings</u>

CHAP. 542                            2

shall not accept plans or other documents submitted in  connection  with
applications  for work permits under articles ten through seventeen of
subchapter one of chapter one of title twenty-seven of the administrative
code of  the city of New York by any person representing that he or she is
an architect or professional engineer without verifying, by means  of
such lists,  that  such person meets the qualifications established by law
to practice as an architect or professional engineer in New York state.

   EXPLANATION--Matter in **_italics_** is new; matter in brackets [—] is old
law to be omitted.

     § 3. Subdivision (d) of section 27-140.1 of the administrative code
of the city of New York is relettered subdivision (e) and a new
subdivision (d) is added to read as follows:
     (d) The department shall not accept plans or other documents
submitted in  connection  with  applications  for  work permits under
articles ten through seventeen of this subchapter by any person
representing that  he or  she  is  an architect or professional engineer
without verifying, by means of lists compiled and made available by the
New York state department of education pursuant to  paragraph  e-1  of
subdivision  four  of  section   sixty-five hundred seven of the education
law, that such person meets the qualifications established by law to
practice as an  architect or professional engineer in New York state.

     § 4.  Nothing  set  forth in this act shall be construed to limit
the power of the New York city commissioner of  buildings  to  adopt
rules, consistent  with state and local law, that set forth additional
grounds for limitation of the filing privileges of or otherwise
sanctioning architects  and  professional engineers who have been
determined after a hearing to have knowingly or negligently submitted
applications,  plans or other  documents  to the New York city
department of buildings that contained false information or were not in
compliance with all  applicable provisions of law or who have otherwise
demonstrated incompetence or a lack of knowledge of applicable law or
standards.

     § 5. This act shall take effect immediately.

   The Legislature of the STATE OF NEW YORK **ss:**
     Pursuant to the authority vested in us by section 70-b of the Public
   Officers Law, we hereby jointly certify that this slip copy of this
   session law was printed under our direction and, in accordance with
such section, is entitled to be read into evidence.

JOSEPH L. BRUNO                           SHELDON SILVER
**Temporary President of the Senate**     **Speaker of the Assembly**

# EXHIBIT E

# STUART A. KLEIN

## ATTORNEY AT LAW

99 MADISON AVENUE • 11TH FL, NEW YORK, N.Y. 10016
TELEPHONE: (212) 564-7560   ·   TELEFAX: (212) 564-7845

STUART A. KLEIN, ESQ.

———

WRITER'S DIRECT NUMBER
(212) 564-7560 EXT. 11

January 2, 2008

Commissioner Patricia Lancaster, FAIA
NYC Department of Buildings
280 Broadway, 7th Floor
New York, NY 10007

    **RE:**    **Leon St. Clair Nation, Professional Engineer**
             **OATH Index No. 07-1119**

Dear Commissioner:

    I am writing in response to a letter dated December 4, 2007, in which it was suggested that you may apply the terms of Administrative Code Section 26-124, as recently amended, to acts performed by Mr. Nation prior to amendment of that section. As I have stated to members of your staff, I believe that said Code provision is a penalty, and any *ex post facto* application to acts committed prior to the effective amendment date would be unconstitutional. Further, I believe that Administrative Judge Miller's finding of negligence was wrong on both the law and facts, and Mr. Nation will challenge said finding in the appropriate tribunal.

    I hereby submit that Section 26-124 should not, and legally cannot, be used as a means to rescind Mr. Nation's ability to file applications with your agency. Mr. Nation has been licensed as an engineer in New York State since 1988. He has filed hundreds of applications with your agency in more than twenty years of practice in New York City. Prior to his recent difficulties, Mr. Nation has never been censured either by your agency or the State Education Department in any way. Mr. Nation is considered by his peers to be professional in all aspects of his practice. His office supports more than ten families. The vast majority of his work is performed in New York City and imposition of this penalty would, in effect, have the same result as taking away his license to practice engineering.

Commissioner Patricia Lancaster, FAIA
January 2, 2008
Page 2

In the above-referenced action, Judge Miller found Mr. Nation not guilty of the more serious allegations of poor moral character and fraudulent dealings. Judge Miller determined that Mr. Nation was negligent regarding three applications he had filed. I will address these findings individually with regard to each of these three applications, as follows:

## 150 29th Street, Brooklyn

Judge Miller determined that Mr. Nation was negligent in failing to physically visit the job site to determine that an alteration type 1 application should have been filed, instead of the alteration type 2 application that Mr. Nation did file. I remind you that Mr. Nation did not merely rely upon the representations of the draftsman when reviewing the plans. Mr. Nation testified that he relied upon the I-Card that was incorporated into the previous 1946 DOB filing. I ask that you review said document, which was produced by your agency during discovery proceedings. The I-card clearly identifies a "two-story building at rear of the premises." In addition to this representation, an asbestos report submitted by a Certified Asbestos Investigator identified the presence of asbestos at the 2nd story and roof area of the premises at issue. Thus, Mr. Nation did not shirk his professional duty, but, in fact, relied upon multiple sources that the existing conditions at the site were correct. To the extent that Mr. Nation may have neglected any duty, it was due to his reliance upon these sources, an error Mr. Nation has learned from.

## 11 Lynch Street, Brooklyn

Judge Miller found that Mr. Nation should have noticed that the photographs submitted with this application were inaccurate, in that the garbage cans pictured were, were "floating," as per the description of John Gallagher, and the stoop did not meet requirements for wheelchair access. In so finding, Judge Miller failed to address two important points. First, Mr. Nation was not the applicant of record for the New Building application related to the premises. He was the applicant only for the Builders Pavement Plan ("BPP"). Thus, Mr. Nation had no duty to determine the accuracy or quality of the work performed on the building itself, or on any feature of the building, such as the stoop.[1] It is uncontested that Mr. Nation did not take the BPP photographs himself. Second, Mr. Nation testified that he examined the photographs to determine the quality of the work on the curb only, which appeared to be satisfactory. Virtually all of Judge Miller's analysis regarding Mr. Nation's alleged failure to perform a professional review reflects the inaccuracies in the photographs relating to the building itself, not the curb (see Miller determination, page 11).

---

[1] See Miller determination, page 5. Judge Miller cites to Mr. Gallagher's testimony that had respondents submitted photographs "which correctly and accurately represented the front of the building, they would have demonstrated that the building was not in compliance with the Building code. Since 11 Lynch Street is a multiple dwelling, the entrance must be handicap accessible." Mr. Gallagher's testimony, and Judge Miller's reliance on it, ignores the crucial fact that Mr. Nation was not the applicant for the building itself and thus, had no duty or motive to involve himself in its construction in any way. Almost all of Mr. Gallagher's testimony relied upon by Judge Miller (pages 4 and 5) refer to inaccuracies in the building itself, not the pavement in front of the building which was the subject of Mr. Nation's application.

Commissioner Patricia Lancaster, FAIA
January 2, 2008
Page 3

## 99 South 3rd Street, Brooklyn

It is curious that Judge Miller, when positively assessing the credibility at trial of expediter Hershey Fekete,[2] noted that Mr. Fekete's failure to notice inconsistencies between two sets of photographs for this address was understandable, as he had viewed the two sets of photographs at different times and had never had an opportunity to compare them: "Fekete credibly testified that he no longer had possession of the prior photograph because he already submitted it to Mr. Gallagher and it was in the Department's file." See Miller determination, page 15.

Mr. Nation also testified that he never had both sets of photos in his possession at the same time and did not have an opportunity to compare one to the other. This is crucial in that DOB's case depended on Mr. Nation's alleged failure to notice that certain peripheral items in the photographs, such as parked cars, pedestrians, and litter, had not changed from one set of photographs to the next. Nevertheless, Judge Miller missed or merely ignored Mr. Nation's testimony in her determination.

## Conclusion

A prohibition of the kind authorized by Section 26-124 is severe and should rarely be applied. Mr. Nation's practice is reliant upon his ability to perform work in New York City. A father of two, Mr. Nation surely would be financially ruined should his ability to file any applications with your agency be prohibited. The inability to file using the limited review privileges is in itself a severe penalty. To put Mr. Nation out of business for acts of mere negligence, the conditions of which are clearly mitigated by the facts, would be an extreme and unwarranted penalty. Mr. Nation testified that since becoming aware of the allegations, he has changed his practice regarding reviewing photographs not personally taken by him. See May 29, 2007 transcript, page 399.

To my knowledge, this penalty has never before been imposed, even though many engineers and architects have been found guilty of far more egregious acts.[3] Judge Miller found Mr. Nation to have been merely negligent, and none of the disputed issues

---

[2] Mr. Fekete was tried concurrently with Mr. Nation at OATH, Index No. 07-1118, on substantially similar charges arising out of the same applications. Judge Miller recommended that all charges against Mr. Fekete be dismissed.

[3] Certainly you are aware of a number of design professionals who practice in Brooklyn that have been repeatedly named as egregiously violating DOB procedures, and whose conduct has resulted in actual harm to the public, yet they have not been subject to the imposition of 26-124. Further, they are a myriad of plumbers, electricians, and other licensees whose acts directly affected public safety, yet, despite your authority to revoke their licenses, you agreed to impose far less severe penalties. In this context, to impose 26-124 to the negligent acts committed by Mr. Nation appears draconian. In addition, clearly your own plan examination staff negligently either approves or disapproves conditions on a regular basis, yet in my 40 years of working for and against your agency, I am unaware of any plan examiner being disciplined for his or her mere negligence.

Commissioner Patricia Lancaster, FAIA
January 2, 2008
Page 4

involved a threat to public safety.[4]  Both John Gallagher and Cornelius Dennis, a former employee of DOB for over twenty years, admitted that there is no obligation for an engineer to visit a site.  Further, Mr. Gallagher testified that more than 50% of all audits of professionally certified applications result in objections.  If mere negligence is the standard by which the imposition of Section 26-124 will be imposed, dozens, if not hundreds, of design professionals could potentially lose all rights to file applications with your agency[5].

Finally, the imposition of Section 26-124 to the facts of this case would be contrary to public policy.  As admitted by Mr. Gallagher, a BPP is a relatively minor application.  If your agency forces design professionals to visit every site, even for alteration type 2 and 3 applications, and to find every conceivable error or inconsistency in every document or photo not taken or drafted personally by them, a costly burden will be added to each alteration, and construction in New York City will slow to a crawl.

As previously stated, Mr. Nation is the principal of an engineering firm that supports ten families, whose livelihoods will also be affected by your decision. I ask for your consideration in not applying Section 26-124 to Mr. Nation.

Sincerely,

Stuart A. Klein, Esq.

---

[4] I remind you that certificates of occupancy were issued to both buildings after these photos were submitted. Any failure on the part of Mr. Nation would pale in comparison to the failures of the DOB inspectors who performed the CO inspections for the two New Building applications. However, to my knowledge, no inspector has been disciplined for any such failure.

[5] A review of the disciplinary actions taken by the New York State Education Department's Office of Professional Discipline website indicates that design professionals who committed far more egregious acts, some including crimes involving moral turpitude, were allowed to keep their licenses, and, in most cases, received no actual suspension. Mr. Nation, despite having been merely negligent, would uniquely be singled out for this harsh prohibition which would lead to financial ruin.

# EXHIBIT F



Patricia J. Lancaster, FAIA
Commissioner

Executive Offices:
280 Broadway, 7th Floor
New York, NY 10007

212.566.3111
212.566.3784 fax
comm-dob@buildings.nyc.gov

January 15, 2008

Stuart A. Klein, Esq.
99 Madison Avenue, 11th Floor
New York, New York  10016



Dear Mr. Klein:

As you are aware, Office of Administrative Trials and Hearings ("OATH") Administrative Law Judge Kara Miller, in her October 26, 2007 Report and Recommendation, found that Mr. Nation, a licensed professional engineer who had been participating in the Department's professional certification program, had negligently submitted false documents to the Department of Buildings on three separate occasions.   After review of Judge Miller's report, as well as the transcript of the trial held on May 21, 22 and 29 of 2007, I sent a letter to Mr. Nation on December 4, 2007, stating that I was adopting Judge Miller's recommendations and revoking his professional certification privileges.   In that same letter, I allowed a period of 10 days, which was extended at your request, for Mr. Nation to submit in writing any reasons why I should not, pursuant to Administrative Code  § 26-124(c), as recently amended, refuse to accept any application or other document bearing his signature.

I received your letter dated January 2, 2008.   Your letter, while contending that Administrative Code  § 26-124(c) would be unconstitutional in its application to the current case, does not cite any statute or case law that supports your contention.

As Judge Miller found, Mr. Nation was aware or should have been aware that attesting to the accuracy of plans and photographs that he did not prepare, without either visiting the sites involved or taking any other steps to determine the documents' accuracy, was negligent and violated professional standards of conduct.   Your argument that the "borough pavement plan" involved in two of the applications is a "relatively minor application" ignores Mr. Nation's repeated indifference to professional standards of care.   This argument also ignores Judge Miller's finding that Mr. Nation negligently submitted false documents in connection with an Alteration Type 2 application concerning an enlargement of a house.

Stuart A. Klein, Esq.
January 15, 2008
Page Two

In these circumstances, refusing to accept any application or other document bearing the signature of Mr. Nation, pursuant to Administrative Code § 26-124(c), is an appropriate remedial measure to protect the public from the harm associated with his pattern of negligent conduct with respect to submissions to the Department of Buildings. While I have the authority under § 26-124(c) to refuse permanently to accept documents from Mr. Nation, because this remedy was not in place when Mr. Nation committed these acts, I will exercise my discretion to refuse to accept documents bearing Mr. Nation's signature for two years, effective immediately. At the conclusion of this two year period, Mr. Nation will be allowed to submit applications and other documents bearing his signature. However, his ability to file applications and other documents will then be subject to a three year probationary period. If during that probationary period Mr. Nation intentionally or negligently files any other false applications or documents with the Department, I reserve the right to further suspend or revoke his ability to file documents with the Department.

It should be noted, in addition, that when the above-mentioned suspension ends, the revocation of Mr. Nation's professional certification privileges as referenced in the December 4, 2007 letter, will still remain in full force and effect.

Very truly yours,

Patricia J. Lancaster, FAIA
Commissioner

CC: Leon St. Clair Nation